IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 04-1727C (Judge Emily Hewitt) |

ADMINISTRATIVE RECORD

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

May 10, 2007

Attorneys for Defendant

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HAROLD E. SIX,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 04-1727C
(Judge Emily Hewitt)

INDEX TO ADMINISTRATIVE RECORD


| Document | Page(s) |
|---|---|
| Letter to James R. Exnicios dated January 9, 2003 | AR 1-2 |
| Letter requesting VA claim folder dated January 22, 2003 | AR 3 |
| Letter to Plaintiff regarding Application for Correction of Military Record dated May 7, 2003 | AR 4 |
| Action taken in response to Plaintiff's application | AR 5 |
| Letter to Plaintiff regarding application rejection dated August 25, 2003 | AR 6-8 |
| Letter to Plaintiff regarding reconsideration of request dated July 23, 2004 | AR 9-11 |
| Affidavit of Plaintiff in support of Application for Correction of Records | AR 12-19 |
| Application for Correction of Military Record | AR 20-78 |
| Applicant's motion to reopen for newly discovered evidence and motion for reconsideration | AR 79-150 |
| Denial letter to Plaintiff from BCNR dated March 26, 2007 | AR 151-164 |
| Correspondence by the BCNR | AR 165-172 |
| Criminal Background Check of Plaintiff by BCNR | AR 173-177 |

| | |
|---|---|
| Correspondence between BCNR and Plaintiff | AR 178-185 |
| Statements of CAPT Richard Kiepfer, LCDR James Ennes, and Petty Officer Phil Tourney | AR 186-208 |
| USS Liberty Plan of the Day dated June 30, 1967 | AR 209-210 |
| California Department of Corrections letter of January 10, 2007 | AR 211 |
| Statement of Plaintiff | AR 212-225 |
| Plaintiff's authorizations to release information | AR 226-233 |
| Plaintiff's employment information | AR 237-234 |
| Statement of Margaret Six | AR 238-244 |
| Statement of Bryce Lockwood | AR 245-258 |
| Correspondence by Plaintiff to BCNR | AR 259-274 |
| BCNR decisions in similar USS Liberty sailors petitions for correction of their naval record | AR 275-307 |
| Article on Mental and Behavioral Disorders | AR 308-315 |
| Statement of CAPT Richard Kiepfer dated February 15, 1996 | AR 316-317 |
| American Journal of Psychiatry Articles | AR 318-338 |
| Weekly Standard Articles | AR 342-339 |
| Liberty Incident Article with enclosures | AR 377-343 |
| USS Liberty Alliance Correspondence | AR 378-423 |
| Statement of Bryce Lockwood dated November 8, 1995 | AR 424 |
| Plaintiff's Service Record | AR 425-675 |
| Plaintiff's Medical Record | AR 676-805 |

William J. Kenney, Esq.

9915 Empire Woods Ct.
Charlotte, NC 28277
Tel: 704-341-4781
Fax: 704-3414781
email: kenneyffx@aol.com

HART-CA
3325 Wilshire Boulevard, Suite 1025
Los Angeles, CA 90010
Tel :213-251-5737

HART
600 Pennsylvania Ave, SE
Washington, DC 20003
Tel: 202-547-5129

**January 9, 2003**

**Board For Correction of Naval Records**
**Department of the Navy**
**2 Navy Annex**
**Washington, DC 20370-5100**
**Attn: James R. Exnicios, Esq.**
**Head, Disability Section**

**Re: Harold E. Six, Sr.**
**Fmr. CTR1 USN**
**SSN: 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**
**Application For Correction**

**Dear Mr. Exnicios:**
**Enclosed find an original and one copy of an Application For Correction of Naval Records tendered on behalf of my client, Harold E. Six, Sr., former CTR1, U. S. Navy.**

**Please provide an acknowledgment that the Board has received these documents and inform me of the docket number assigned.**

**Thanks for your cooperation.**

**Sincerely,**

WJK

**William J. Kenney**

William J. Kenney, Esq.

9915 Empire Woods Ct.
Charlotte, NC 28277
Tel: 704-341-4781
Fax: 704-3414781
email: kenneyffx@aol.com

HART-CA
3325 Wilshire Boulevard, Suite 1025
Los Angeles, CA 90010
Tel :213-251-5737

HART
600 Pennsylvania Ave, SE
Washington, DC 20003
Tel: 202-547-5129

**January 9, 2003**

**Board For Correction of Naval Records**
**Department of the Navy**
**2 Navy Annex**
**Washington, DC 20370-5100**
**Attn: James R. Exnicios, Esq.**
**Head, Disability Section**

**Re: Harold E. Six, Sr.**
**Fmr. CTR1 USN**
**SSN: 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**
**Application For Correction**

**Dear Mr. Exnicios:**
**Enclosed find an original and one copy of an Application For Correction of Naval Records tendered on behalf of my client, Harold E. Six, Sr., former CTR1, U. S. Navy.**

**Please provide an acknowledgment that the Board has received these documents and inform me of the docket number assigned.**

**Thanks for your cooperation.**

**Sincerely,**

**William J. Kenney**

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

DLK:yfw
Docket No: 483-03
22 January 03

DEPARTMENT OF VETERANS AFFAIRS
VETERANS AFFAIRS REGIONAL OFFICE
1301 CLAY STREET
OAKLAND CA 94612

NAME: SIX, HAROLD E
SSN: 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

Dear Sir:

Subject veteran has made an application to this Board for correction of his military record In order to assist the Board in its deliberations, it is requested that his VA claim folder or a copy thereof be provided for review and the following information and/or records be provided to this board.

(1) Copies of VA Rating Decisions.
(2) Return of the veteran's original service medical record, or copies thereof
(3) Photographs of all VA medical/compensation examinations, hospital summaries, other medical evaluation reports, VA statements of case, and BVA decisions. (VA manual, MP-1, Part II, Chapter 12, paragraphs 17 and 18 refer).

If the veteran does not have a VA Rating Decision or has not applied for VA Compensation, please indicate.

As indicated in the attached DD Form 149, the veteran has authorized this Board to obtain his VA records in order to process his application.

Sincerely,

D. L. KING
Head, Records Section

Enclosure

tracer
4-1-03

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

WDP:yfw
Docket No: 483-03
7 May 2003

MR HAROLD SIX
4080 PEDLEY ROAD SPACE 185
RIVERSIDE CA 92509

Dear Mr Six:

This is in reference to your Application for Correction of Military Record, DD Form 149, dated 20 December 2002.

Your official Veterans Affairs claim folder was ordered from the Department of Veterans Affairs Regional Office, in Oakland, Ca. However, that office has not responded to our **repeated** requests for you claim folder. Please verify the accuracy of your service, social security and VA claim number as written on your DD Form 149. Another request for your claim folder will be made if either of these numbers is incorrect.

You can further assist the board by providing a copy of your VA rating decision, if applicable, and your entire medical record. As soon as this information is received, your case will be assigned to the appropriate examining section of the board and worked in a timely manner.

Your application will be held in abeyance for thirty days from the date of this letter pending receipt of the above requested information. If no response is received within the thirty-day period, your case will be closed without further action by this board.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

****** FOR OFFICIAL USE ONLY - PRIVACY ACT PROTECTED ******

MEMORANDUM TO FILE

Docket No. 00483-03

Examiner: JRE Branch/Status 1 -USN

Subj: Ex-CT1 Six, Harold E., 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

Personal appearance requested: YES Reconsideration:

Action Requested: 6

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records:

- [x] Enlisted/Officer Service Record
- [ ] Examiner's Case Summary
- [ ] NDRB File
- [ ] Record of Court-Martial
- [ ] Copy of Medical Record from VA
- [x] VA Records
- [ ] PEB Record
- [ ] Advisory Opinion
- [x] Other: Material prepared by counsel.

Messrs. Bishop Carlson Schultz

Ms. ______

voted on 21 Aug 03 to:

EXECUTIVE SESSION

- [ ] Grant relief
- [ ] Partial relief
- [x] Deny

- [ ] Grant personal appearance

- [ ] Minority Vote: Mr/Ms ______ voted To ______

Comments: ______

- [ ] That Petitioner's naval record be corrected to show that on 1983/09/12 /or ______.

Petitioner was issued a honorable/general discharge by reason of misconduct/or ______. vice the discharge actually issued on that date.

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 00483-03
25 August 2003

MR HAROLD E SIX
4080 PEDLEY ROAD
SPACE 185
RIVERSIDE CA 92509

Dear Mr. Six:

This is in reference to your application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 21 August 2003. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice.

The Board found that you were honorably discharged from the Navy on 6 February 1983, under an early out program for Sailors within three months of expiration of term of service.

The Board noted that despite the traumatic events you experienced in 1967, you continued to perform your duties in a satisfactory manner for several years thereafter, and were promoted to CT2 in 1967, and to CT1 in 1973. It could not find any indication in the available records that you suffered from the hallmark symptoms of posttraumatic stress disorder during the period from 1967 to 1973. The Board noted, however, that you denied having a history of psychological complaints on 21

October 1971, when you completed a Report of Medical History, and stated that you did not have a history of frequent trouble sleeping, frequent or troubling nightmares, depression or excessive worry, or nervous trouble of any sort. You underwent psychiatric evaluation on 4 August 1972, and were given a diagnosis of an immature personality. The majority of your complaints apparently related to your wife's behavior and the perceived unfairness of your life situation. You indicated that you did not regret your time in the Navy, but that you did not want to remain in the Navy. On 8 August 1972, you spoke to another psychiatrist, who was of the opinion that "claims of alcoholism are unfounded", and that you had "no detectable psychiatric difficulties." The Report of Medical History you presumably completed in connection with your pre-separation physical examination on 6 February 1973 was not available to the Board; however, the results of a clinical evaluation of your psychiatric state conducted on that date were classified as normal, and item 74 of the report of examination, entitled Summary of Defects and Diagnoses, makes no reference to any psychiatric conditions or complaints.

The Board rejected your unsubstantiated contentions to the effect that the Navy treated you with indifference, that your use of alcohol was related to the effects undiagnosed and untreated posttraumatic stress disorder, and that your discharge was improper. The fact that the Department of Veterans Affairs (VA) granted you service connection and a 10% rating for posttraumatic stress disorder on 21 July 1999 was not considered probative of your contentions of error and injustice. In this regard, the Board noted that the military departments assign disability ratings only in those cases where a service member has been found unfit for duty by reason of physical disability, whereas the VA rates all conditions it classifies as "service connected", without regard to the issue of fitness for military duty. As you have not demonstrated that you were suffering from posttraumatic stress disorder at the time of your discharge, and that you were unfit for duty because of that or other conditions that were ratable at or above 30% disabling, the Board was unable to recommend that your request for corrective action be granted. Accordingly, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by

the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

P-Recon

JRE

JUL 22 2004

REFERENDUM

Six, Harold E.

*05925-04*

Subject's Name:

Six | Harold | E |
Last | First | MI | Suffix

☐ REQUEST FOR RECONSIDERATION

JUL 26 2004

☐ Approved:

☑ Disapproved:

Signature 26 Jul 04 Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved:

Signature Date

COMMENTS: See attached letter.

NOTE: Please deliver to OIS Section with "closed" BCNR file

NEW Docket No.

(OIS/11 1Jul86)

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 05925-04
23 July 2004

MR HAROLD E SIX
C/O WILLIAM J KENNEY ESQ
9915 EMPIRE WOODS COURT
CHARLOTTE NC 28277-2279

Dear Mr. Six:

This is in reference to your request for reconsideration of your request for correction of your record to show that you were retired by reason of physical disability. Your attorney submitted a brief in support of your request on 15 July 2004.

Although some of the material submitted in support of your request may be considered new, although it appears that it was reasonably available when you submitted your original application in 2002, it is not considered material, as that term is defined in Secretary of the Navy Instruction 5420.193, enclosure (1) section (9).

I have carefully considered your affidavit and the statement of the psychiatrist who recently evaluated you and opined that you were unfit for duty by reason of physical disability on 6 February 1973, and that the disability was ratable at 70% at that time. I do not consider his statement to be new material evidence because he based his opinion, in large part, on his acceptance of your representations concerning the symptoms of posttraumatic stress disorder you allegedly began to experience in 1967. As you know, the Board rejected those representations on 21 August 2003, when it denied your application. There is nothing in your affidavit or the statement of the psychiatrist that would warrant a change in the Board's rejection of your contentions.

In view of the foregoing, I have determined that further review of your case is not warranted and that your request for reconsideration must be denied.

Sincerely,

W. DEAN PFEIFFER
Executive Director

BEFORE THE
BOARD FOR CORRECTION OF NAVAL RECORDS

In Re:
HAROLD E. SIX, FMR CTR1 USN
SSN: 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

Affidavit of HAROLD E. SIX, SR.
In Support of Application for Correction of Records

SS: City/Town of Riverside
County of
State of California

Harold E. Six, Sr., being duly sworn, depose and say as follows:

1. I am Harold E. Six, Sr., social security number 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, service number 777-58-53, former CTR1, USN. I make this affidavit to establish facts of my personal knowledge and experience in support of my application for correction of my Naval Records

2. I was born in 1962 in Torrington, Wyoming. I saw my father twice; once he gave me a nickel; the next time I saw him was at his funeral. My mother raised my sister, my brother and I as a single mother. When she lost her job with the telephone company, we moved to California, where I attended school through high school. I loved music, and would apply myself as long as I could advance in my music. When I had trouble with Algebra in high school and they would not let me continue in the Band, I quit school.

3. I joined the Navy, reporting for recruit training at U.S. Naval Training Center on May 8, 1964. I quickly joined the Drum and Bugle Corps and came to enjoy boot camp. On graduation, I was selected for Naval Communications School, Pensacola, FLA, graduating in March, 1965 with a GPA of 92.70. I was assigned duty at Bremerhaven, Germany. I was then transferred to NAVCOMSTA, Washington, at Cheltenham, MD, thru May, 1966, when I was transferred to the U.S.S. Liberty (AGTR-5) as part of the NAVSECGRU assigned to the Liberty.

4. I was aboard the U.S.S. Liberty on June 7, 1967. On that date, I was on duty with the NAVSECGRU detachment in the ship's communication spaces, off the coast of Israel's Gaza Strip. Without warning or provocation, the ship was attacked, first by units of the Israeli Air Force, then by an Israeli motor torpedo boat. In the attack, a torpedo hit the communications space, killing some 26 of

my colleagues. I was knocked unconscious, trapped under a dislodged filing cabinet.

5. I was rescued by the heroic efforts of my shipmate, GYSGT Bryce Lockwood, USMC, a fellow member of the ship's special NAVSECGRU detachment. I am told that I was unconscious and partially submerged when Lockwood dislodged the cabinet and pulled me to the ladder, then helped me up the ladder. Unfortunately, the ship had set conditions requiring all hatches to be secured, and someone had secured the hatch after Lockwood came back down into the space to rescue any survivors. As he carried me up the ladder and found the hatch secured, he accidentally dropped me back down into the flooded space in his efforts to force the hatch open. When he finally got the hatch open he came back into the flooded compartment and carried me up to the open deck, where colleagues pulled me through the hatch. Lockwood, himself badly burned and bleeding from the flash burns and from multiple shrapnel wounds, went back down in the flooded compartment to search for more survivors.

6. In the attack, I was knocked unconscious, and, sustained a cerebral concussion, plus multiple mini-fragment facial injuries, and, fragment (shrapnel) wounds to my right hand, right leg, and, right elbow. These physical injuries were insignificant compared to the total terror the attack produced. Fear of close spaces. Fear of close personal relationships. Anger, frustration, and, the horrible feeling of guilt. Guilt that I should have and could have done more to help my deceased shipmates. None of this was based in reality, but the Navy did nothing to help me, or my colleagues deal with these emotions.

7. Shortly after the Liberty incident, I began experiencing indistinct problems of *pain throughout my body, my legs, hands, arms, neck and face. This first* occurred in my right leg, arm and hand. By 1970, I was experiencing severe pain on the right side of my face, under my eye , into the cheek, running under the ear into my neck. The pain was severe, "like a hot poker." The episodes last from as little as five minutes up to as much as eight hours, and continue for as little as three days and as long as two to three months. They continue to this day.

8. The Navy initially diagnosed these as episodes of "sinusitis." In late 1971 I was referred to USNH Subic RPI for evaluation for dental surgery as a possible solution, on the premise that my malocclusion might be causative or contributive to the facial pain. Surgical correction was provided with no significant relief.

9. I was hospitalized following the attack. In the comfort of the hospital, I felt no danger. My wounds were diagnosed and treated, and, we were treated as *heroes. Then the Navy's Court of Inquiry Report was published. The Liberty*

Crew's report of the attack was ignored. Suddenly, we were no longer given the same respect. In this period, my nightmares, flashbacks and haunting fears began to emerge. I did not dare share them with anyone. I had no idea where I could turn.

10. Ever since that event, I have experienced numbing nightmares and flashbacks. Invariably, I find myself terrorized with memories of the horrific blast as the torpedo smashed through the ship's side and exploded in our space. I sense first the roar of the explosion. Then, the rush of the water flooding the space and pushing everything before it. I still smell the dust of the explosion. I see the blood of my shipmates spattered through the air. I hear my and their terrifying screams and cries for help. I experience a mixture of terror at the event and guilt at my inability to respond and help. I have frequent memories, daydreams, and nightmares, of the utter fear of dying as I sense and smell the seawater flooding into our spaces, pushing the bulkheads ahead of it.

11. I have been tortured by a sense of guilt. Guilt that I am the only survivor from my Communications Watch Section; guilt that I have been unable to remember the names of the guys on watch with me that day; Guilt that I did not do enough to help in that disaster.

12. While at Naval Hospital, San Diego, to continue recuperation. I began drinking heavily. In retrospect, I realize I was drinking to forget the horrible nightmares and to overcome the sense of guilt that plagued me. I couldn't acknowledge either the guilt or the nightmares. That would have detracted from the bravado image we survivors of the Liberty enjoyed, initially. Then, the Navy's Court of Inquiry Report was published. The Report essentially labeled all of us as liars who greatly exacerbated the nature of the attack. Then, we survivors were pushed into the background. For me, that pushed me back into the nightmares and guilt. I volunteered for two tours of duty in Vietnam with NAVSECGRU units. My hope then was that I would be killed in action and redeem myself with my dead shipmates. All I succeeded in doing was to drink even more, and ruin my family and my career.

13. All of these stressors gradually destroyed my self-confidence and self-respect. I began drinking even more heavily. My family life was in turmoil. I developed a paranoid suspicion of my wife's infidelity while I was TAD to Vietnam. I developed an uncontrollable rage like anger directed at my wife. My drinking was draining the family's finances, but I blamed her and her alone for my inability to control our family finances. The more paranoid I became, the more uncontrollable my rage became. The more enraged I became, the more I drank.

14. My then wife and I married shortly prior to my assignment to the Philippines. She had two small children, both girls, by her previous marriage. I gladly accepted them as my own. I relished the sense of love they conveyed to me. But, as my nightmares and flashbacks became more intense, I began drinking more and more. This led to bitter arguments with my wife. She , too, began drinking heavily. Our family life was in turmoil. I was becoming more and more angry. I was losing my ability to control my anger. I recall one incident, no doubt among many, when I came home from duty. I began my routine of drinking. My step daughter, Tammy, then perhaps 4 or 5 years old, came in to get some attention from me. Tammy was/is the sweetest little girl you could imagine. She had more maturity and sense of responsibility than either my wife or I had. I reacted in anger and slapped her face. I still remember the look of shock and hurt on her face! My reaction was simply to drink even more.

15 Our home became an embarrassment. Our fights became the subject of SP visits. In turn, I was called in by my Company Officer and cautioned that such conduct would result in our being evicted from Base Housing. I believe this warning came shortly before I was shipped back to the states.

16. Obviously, this affected my job performance. In time, we became targets of bill collectors. In time, the bill collectors began writing my command. This added to my anger and my drinking. The Command first informed me of the Navy's policy of financial responsibility. They cautioned me it would affect my security clearance. This too became an excuse for anger and drinking. Ultimately, the Command terminated my security clearance and my assignment to NAVCOMSTA, Philippines. I was transferred to the NAVSTA San Fran for discharge.

17. In processing my discharge, the Navy should have carefully evaluated the circumstances of my experience aboard the Liberty and its impact on my mental health, plus the history of indistinct pain, the cerebral concussion, my obvious depression. Instead, they sent me to a psychiatrist to evaluate if I was an "Alcoholic." This evaluation was conducted without my records and was pro-forma step in my separation. At no time in my discharge process did anyone inquire of my Liberty experience and its probable effect on my then situation.

18. I had developed a skill that was growing in importance in the civilian world. But, most available jobs in that skill category required security clearance, and the Navy had revoked that .In my loss of self-esteem and self-confidence, I gravitated to the most menial jobs, avoiding any effort to use my Navy trained skills.

19. I spent most of the first year unemployed and drinking. I had no sense of responsibility for my family. By this time, my wife and I had a child, Harold , junior. Although I was very proud of Harold and loved all the children, I had no energy to seek meaningful employment. After about a year, I applied to the LA Police Force, and was hired. I lasted about six months and was fired for drinking. In the ensuing four years, I had 2 other jobs, first as a security officer at a department store. I was fired about three months into the work for drinking. Next, I tried driving a truck. This lasted some three months and I was fired for drinking. The truth is that throughout this time, I was plagued with nightmares and flashbacks of the Liberty attack, feelings of guilt and worthlessness at the fact I had been unable to help my shipmates during the attack, coupled with a sense of worthlessness from my having been thrown out of the Navy and from the total wreck I had made of our marriage.

20. I was in fact disabled and should have been provided competent psychiatric diagnosis and care. Perhaps ultimately I could have been returned to active duty following appropriate treatment, or, I should have been medically retired. It seems likely that had I been provided competent treatment and care, my career and my marriage could have been salvaged. My family and I could have been spared the years of abuse, discord and disgrace, and, my children could have been spared the horrible injuries all this has inflicted on them. However, ignorant of my needs and my rights, My family and I were abandoned at the NAVSTA,San Francisco gates. I could not function as a human being. In fact, I could not involve myself in situations that required interacting with other people. I became a loner, isolated from the rest of people; living with, but abusing and isolated from even my family.

21. In processing me for what was, in essence, a for cause termination of my Navy career, the Navy well knew that I had been subjected to unique stresses that had the capability of adversely affecting an individual's mental health. The Navy well knew that in 1967 I had been subjected to a horrific, terrorizing experience. The Navy knew that its', and, the Government's subsequent policy of denying the true facts of the Liberty Attack necessarily exacerbated the mental stress of the Liberty survivors.

22. At a minimum, the Navy had a responsibility to we survivors to forewarn us of the consequences of this experience, The Navy should have monitored us, carefully, for signs of adverse impact, and provided appropriate intervention when such signs became evident. Instead, the Navy held us out to dry. They labeled us liars; individuals grossly exaggerating the Liberty attack for our personal gain, and, Anti-Semites! Instead of aiding us in dealing with this stress, the Navy in

fact imposed greater stress grossly aggravating my already weakened mental health.

23. The Navy stood by with indifference as I turned to Alcohol to relieve the horrendous flashbacks and nightmares, and the severe pain of these facial nerves. They never cautioned me that the stress I experienced in the Liberty attack could cause me to experience disabling mental health problems. They never cautioned me as to tell tale signs of danger, or where to turn in the event problems arose.

24. The Navy stood by with indifference as these combined to destroy my marriage and my family, and as my job performance progressively deteriorated. The Navy well knew I was undergoing dramatic changes in my personality and character. In addition, the Navy well knew that I was responding to these stressors, with self destructive, anti-social behavior. Instead of providing me the medical care and guidance I needed, the Navy labeled me a Drunk and a Security Risk, and threw me out. This effectively destroyed any opportunity I otherwise had for post-discharge employment in my field of expertise. This destroyed what little self-esteem I had left.

25. In processing me for discharge, then Navy policy obviously recognized the possibility that the anti-social behavior prompting the action could very well reflect a more deep seated psychiatric problem. They required that individuals subject to that discharge program undergo psychiatric evaluation. In my processing, that evaluation was the utmost of pro-forma action. The psychiatrist did not have and did not seek my medical or personnel file for review. His sole inquiry was directed to how much I was drinking. It is to be noted, the psychiatrist, LCDR Cain, specifically noted my marital difficulties and my paranoid perception of those difficulties. He did not address in any way the Liberty incident, electing instead, to adopt a diagnosis of "Immature personality" that did not "require further medical psychiatric management." In the factual circumstance, this evaluation was grossly negligent and incompetent.

26. I realize now, I should have been referred for a full and complete psychiatric evaluation and treatment. I was in fact then severely depressed, disabled by the indistinct but severe facial pain, and, traumatized by the recurrent flashbacks and nightmares. I was experiencing social withdrawal, with paranoid feelings towards my then wife. I was venting my uncontrollable anger and frustration on my family.

27. The only questions the Navy had were "How much are you drinking?" In the meantime, I was left in isolation. I doubt the Board members can appreciate the

peculiar isolation a person experiences when transferred to a new command, for administrative discharge. The receiving Command wants nothing to do with you. You are assigned the most menial, degrading, make work assignments. Prudent members of the command avoid you. To a person undergoing severe psychological shock, it greatly exacerbates your ordeal. It totally destroys your self-esteem.

28. The net result of this processing is to reduce you to a non-person. It aggravates your paranoia. You lose all sense of self respect. You begin to accept the judgements of your worthlessness. You are totally embarrassed as an individual.

29. When you are discharged in such circumstances, you have already adopted a life style of acceptance that you are worthless. You lose all faith in society. You turn even more inward. I felt powerless to pursue anything but the most marginal, menial jobs I could locate. All the while, the indistinct pain, the flashbacks, the nightmares, the guilt continued, without relief. When it got unbearable, I would seek emergency room care for pain relief. I was in deep depression.

30. All this is angering and frustrating to me now that I have some recognition of what was happening to me, and why. Without professional help, I turned to booze to handle my loss of self confidence and self respect.. Deep down, I preferred to have people view me as a drunk, then to have them know the pain and despair I was actually suffering, I feared any acknowledgment of my nightmares, flashbacks and guilt reinforced the government's lies about the Liberty. So, I continued drinking. On return from my second tour in Vietnam, my family life was in turmoil. My wife and I were in constant drunken battles, my finances were out of control. My job performance was in the basket.

31. The Navy's actions are, looking back, strange, angering, and, in fact criminally and medically irresponsible. I was lectured about my responsibility to pay my bills on time; cautioned that the fights my wife and I were having constantly would cause us to lose Navy Housing; lectured that my job performance was unacceptable. Never once was I questioned as to what was going on in my mind. Nobody asked if I was having flashbacks of the torpedo exploding in my compartment, blowing my shipmates to pieces. Nobody cared of how destructive all this was to me, my wife, or my children. Nobody directed us to the psychiatric care we desperately needed. Given the History of the Liberty incident, the need for such care was self evident. Instead, the Navy hung me out to dry. They even led me to believe that the circumstances of my discharge deprived me of any

right to benefits I otherwise would have earned, whether from the Navy or the VA.

Harold E. Six, FMR CT1 USN 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

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing application.)*

Form Approved
OMB No. 0704-0003
Expires Sep 30, 2003

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to: Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

PRIVACY ACT STATEMENT

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

Six, Harold E.

*00483-03*

dentifying The proper

## 1. APPLICANT DATA

a. BRANCH OF SERVICE (X one): [ ] ARMY [X] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAY GRADE | d. SERVICE NUMBER (If applicable) | e. SSN |
|---|---|---|---|
| Six, Harold E. | Fmr. CT I | 777-58-53 | 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 |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court) | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY (YYYYMMDD) |
|---|---|---|
| Honorable - Admin. | Discharged | 02-06-73 |

5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD: Nav Sta, San Francisco, California

6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. (No expense to the Government) (X one): [X] YES [ ] NO

7. COUNSEL (If any)

a. NAME (Last, First, Middle Initial): Kenney, William J.

b. ADDRESS (Street, Apartment Number, City, State and ZIP Code): 9915 Empire Woods Court, Charlotte, N.C. 28277 Tel: 704-341-4781 E-mail: KenneyEEX@AOL.Com

8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:

See attached.

9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

See attached.

WEb

10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

See attached

11. ALLEGED ERROR OR INJUSTICE

a. DATE OF DISCOVERY (YYYYMMDD): 03-16-01

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

See attached.

12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER (Specify)

13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)*: 4080 Pedley Road, Space 185, Riverside, CA 92509

b. TELEPHONE NUMBER (Include Area Code): 909-685-4707

DOCUMENT NUMBER (Do not write in this space.)

15. DATE SIGNED (YYYYMMDD): 12-20-2002

16. SIGNATURE (Applicant must sign here.): [signature]

DD FORM 149, SEP 2000 PREVIOUS EDITION IS OBSOLETE.