BEFORE THE
BOARD FOR CORRECTION OF NAVAL RECORDS

In Re:
HAROLD E. SIX, FMR CTR1 USN
SSN: 520 46 1848

Application, continued.

8. Correct the records to show that I was transferred to the Disability Retired List effective Feb. 06, 1973, by reason of Post Traumatic Stress Syndrome.

9.

I was discharged in circumstances not allowing re-enlistment, by reason of my loss of control of our family finances and by reason of alcohol abuse. In fact, I was suffering from Post Traumatic Stress Syndrome arising from the injuries and psychological terror suffered aboard the U.S.S. Liberty on June 7, 1967. On that date, I was on duty with a NAVSECGRU unit in the ship's communication spaces, off the coast of Israel. Without warning or provocation, the ship was attacked, first by units of the Israeli Air Force, then by an Israeli motor torpedo boat. In the attack, a torpedo hit the communications space, killing some 26 of my colleagues. I was knocked unconscious, trapped under a dislodged filing cabinet. I was rescued by the heroic efforts of my shipmate, GSGT Bryce Lockwood, a fellow member of the ship's special NAVSECGRU detachment. I am told that I was partially submerged when Lockwood dislodged the cabinet and pulled me to the ladder, then helped me up the ladder to the open deck, where colleagues pulled me through the hatch. Lockwood, himself badly burned and bleeding from the flash burns and from multiple schrapnel wounds, went back down in the flooded compartment to search for more survivors.

Ever since that event, I have experienced numbing nightmares and flashbacks. Invariably, I find myself terrorized with memories of the horrific blast as the torpedo smashed through the ship's side and exploded in our space. I sense first the roar of the explosion. Then, the rush of the water flooding the space and pushing everything before it. I still smell the dust of the explosion. I see the blood of my shipmates spattered through the air. I hear my and their terrifying screams and cries for help. I experience a mixture of terror at the event and guilt at my inability to respond and help. I have frequent memories, daydreams, and nightmares, of the utter fear of dying as I sense and smell the seawater flooding into our spaces, pushing the bulkheads ahead of it.

I have been tortured by a sense of guilt. Guilt that I am the only survivor from my Communications Watch Section; guilt that I have been unable to remember the names of the guys on watch with me that day; Guilt that I did not do enough to help in that disaster. After the Liberty incident, the Navy sent me to Naval Hospital, San Diego, to continue recuperation. I began drinking heavily while at the hospital. In retrospect, I now realize I was drinking to forget the horrible nightmares and to overcome the sense of guilt that plagued me. I couldn't acknowledge either the guilt or the nightmares. That would have detracted from the bravado image we survivors of the Liberty enjoyed, initially. Then, the Navy's Court of Inquiry Report was published. The Report essentially labeled all of us as liars who greatly exacerbated the nature of the attack. Then. We survivors were pushed into the background. For me, that pushed me back into the nightmares and guilt. I volunteered for two tours of duty in Vietnam with NAVSECGRU units . My hope then was that I would be killed in action and redeem myself with my dead shipmate. All I succeeded in doing was to drink even more, and ruin my family and my career.

Since that time, I have had great difficulty concentrating, controlling my anger, and maintaining a focused life. I began drinking heavily to try to ignore these nightmares and flashbacks. This simply added to my paranoia and loss of self-esteem. . For awhile, the respect I earned as a Liberty Survivor carried me through. However, the Navy's official explanation of the Liberty event quickly eroded that respect. The Navy adopted a policy of denying the true facts of the Liberty attack. Our government elected to accept the Israeli explanation that the attack was a case of mistaken identity. They asserted the attack was brief and terminated as soon as the vessel was identified as a US Navy Ship. This was/ is an outrageous lie. In accepting the Israeli explanation, the Navy and Our Government necessarily identified the Liberty Crew as liars, grossly exaggerating the events for self-serving purposes. This gradually destroyed the initial respect we gained. Instead, we were now dismissed as Pro-Arab, Anti-Semites when we attempted to relate the true facts of the incident.

All of these stressors gradually destroyed my self-confidence and self-respect. I began drinking even more heavily. When I returned from my second tour in Vietnam, my family life was in turmoil. My wife and I were in constant drunken battles, my finances were out of control. My job performance was in the basket. Now that I have some insight as to what I was experiencing, looking back, it is strange, angering, and in fact criminal. I was lectured about my responsibility to pay my bills on time. I was lectured about the fact that the fights my wife and I were having constantly would cause us to lose Navy Housing. I was lectured that my job performance was unacceptable. Nobody ever questioned as to what was going on in my mind. Nobody asked if I was having flashbacks of the torpedo exploding in my compartment, blowing my shipmates to pieces. Nobody cared of

how destructive all this was to me, my wife, or my children. Instead, the Navy acted to revoke my security clearance and transferred me and my family from the Philippines, back to the States for discharge. In processing my discharge, the Navy should have carefully evaluated these circumstances. Instead, they sent me to a psychiatrist to evaluate if I was an "Alcoholic." This evaluation was conducted without my records and was pro-forma step in my separation. I had developed a skill that was growing in importance in the civilian world. Yet, in my loss of self esteem and self confidence, I gravitated to the most menial jobs, avoiding any effort to use my Navy trained skills. I was in fact disabled and should have been medically retired.

10. Evidence in Support of Application

A. My affidavit detailing the events of June 7-8, 1967, the subsequent impact of those events on me, my service performance, my marriage, my family, and, my post-service life.
B. Affidavit of Fmr. GSGT Bryce Lockwood
C. Statement of Richard F. Kiepfer, MD
D. Reports of Medical Care, 9 Jun 67- Jul 10 67
E. Reports of Medical Care 18 Sep 67 – 17 DEC 71
F. Narrative Summary 2-24-72
G. Affidavit of Six's Children
H. Clinical Record, Consultation Sheet 4 AUG 72
I. Affidavit of Mrs. Harold Six, Sr.
J. Report of Neurologic Consult 09-05-02
K. Report of Psychiatry Pharmacist Consult 10-11-02
L. Report of Psychotherapy and Medication Management Consult, Progress Notes dated 10-11-02

11 Alleged Error or Injustice:

In processing what was, in essence, a for cause termination of my Navy career, the Navy well knew that I had been subjected to unique stressors that had the capability of adversely affecting my mental health. This was never explained to me, either at the time of the incident or at the time of my discharge. The Navy well knew that in 1967 I had been subjected to a horrific, life threatening terrorizing experience. The Navy knew that its' and the Government's subsequent policy of denying the true facts of the Liberty Attack necessarily exacerbated the mental stress of the Liberty survivors. At a minimum, the Navy owed a responsibility to those survivors to monitor their careers, carefully, for signs of adverse affect, and to provide appropriate intervention when such signs became evident. Instead, the Navy held us out to dry. We were labeled as liars, grossly

exaggerating the Liberty attack for our personal gains, and, Anti-Semites! Thus, instead of aiding us in dealing with this stress, the Navy in fact imposed greater stress grossly aggravating my already weakened mental health. (*Attachment A , my affidavit)*

In the attack, I was knocked unconscious, and, sustained a cerebral concussion, plus multiple mini-fragment facial injuries (*Attachment B , Affidavit of Former GYSGT Lockwood; and, Attachment C , Statement of Richard F. Keipfer ,MD dated Feb. 16, 1996)*, and, fragment (shrapnel) wounds to my right hand, my right leg, and, my right elbow. (*Attachment D, SF 600, 9 Jun 67, 21 Jun 67; SF 502, Clinical Record JUL 10 67).* Thereafter, starting in or about September, 1967, and intermittently thereafter, I began experiencing episodes of indistinct pain. First, this occurred in my right leg, hand and arm. By 1970, I was experiencing severe pain on the right side of my face, under my eye, into the cheek, running under the ear into my neck. The pain was severe, " like a hot poker." These episodes would last from as little as five minutes up to as much as eight hours. They would continue for as little as three days and as long two to three months. They continue to this day. The Navy initially diagnosed these as episodes of "sinusitis." (*Attachment E, Sick Call Entries 18 Sep 67- 17 DEC 71)* In late 1971 I was referred to USNH Subic RPI for evaluation for dental surgery as a possible solution, on the premise that my malocclusion might be causative or contributive to the facial pain. Surgical correction was provided with no significant relief. (*Attachment F, SF 502, Clinical Record , Narrative Summary 24 FEB 72 )*

The Navy stood by with indifference as I turned to Alcohol to relieve the horrendous flashbacks and nightmares, and the severe pain of these facial nerves. It stood by with indifference as these combined to destroy my marriage and my family. ( *Attachment G, Affidavit of my children)* My job performance progressively deteriorated. The Navy well knew I was undergoing dramatic changes in my personality and character. In addition, the Navy well knew that I was responding to these stressors with self destructive anti-social behavior. Instead of providing me the medical care and guidance I needed, the Navy labeled me a Drunk and a Security Risk, and threw me out. This effectively destroyed any opportunity I otherwise had for post-discharge employment in my field of expertise. This destroyed what little self-esteem I had left.

In processing me for discharge, then Navy policy obviously recognized the possibility that the anti-social behavior prompting the action could very well reflect a more deep seated psychiatric problem. They required that individuals subject to that discharge program undergo psychiatric

evaluation. In my processing, that evaluation was the utmost of a pro-forma action. The psychiatrist did not have and did not seek my medical or personnel file for review. His sole inquiry was directed to how much I was drinking. (*Attachment H, Clinical Record, Consultation Sheet, 4 AUG 72)* It is to be noted, the psychiatrist, LCDR Cain, specifically noted my marital difficulties and my paranoid perception of those difficulties. He did not address in any way the Liberty incident, electing instead, to adopt a diagnosis of "Immature personality" that did "not require further medical psychiatric management." I wonder now, how one would evaluate the maturity of Dr. Cain's diagnosis.

I should have been referred for a full and complete psychiatric evaluation. I was in fact then severely disabled by the indistinct but severe facial pain, and, traumatized by the recurrent flashbacks and nightmares I was, and continue tc experience. (*Attachment I, Affidavit of my wife)*

11 a. Date of Discovery.

I first came to recognize, on one level of consciousness, that the circumstance of my discharge was an injustice arising from errors in my medical evaluation at the time of my separation, in or about 1995 when I first learned of the concept of PostTraumatic Stress Syndrome through my participation in the USS Liberty Alumni Association. Even then, I did not understand how that related to my actions resulting in my discharge.

11 b. I have not had an adequate understanding of PostTraumatic Stress Syndrome, and had a built in reluctance to acknowledge any psychiatric overtones to my disabilities. My initial understanding at the time of my discharge, conveyed by the Navy Officials processing my administrative discharge, was that I was thereby ineligible for re-enlistment in the Armed Forces and ineligible for VA or other benefits former military members are entitled to. I initiated a claim before the VA in response to some community program that my children had accessed through their school, but was discouraged by the seeming lack of sympathy or concern from the VA personnel I first encountered. This reinforced my deep seated sense of guilt and self blame. I did not pursue my initial efforts before the VA. Gradually, my colleagues in the Liberty Association have helped me overcome that reluctance and assisted me in understanding my entitlement under the VA laws. I consulted My current attorney when my first efforts before the VA proved too frustrating. The VA ultimately established a diagnosis of PostTraumatic Stress syndrome.At that point, in approximately April, 2000, Mr. Kenney suggested that that disorder

must have been present when I was discharged, and, we began assembling the pertinent records since that date. The recent VA diagnosis is the first time a health care provider has identified my active duty trauma as the cause of my PTSD.

Harold E. Six, Fmr CT1 USN 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

**Richard F. Kiepfer, M. D.**
**CAPT (MC), USNR**
**208 Wollschlaeger Drive**
**Boerne, TX 78006-5929**

Tel: (830)-249-8390

August 20, 1997

Dear Mr. Six,

It appears that you are entrapped in a bureaucratic game, namely, "If we don't know what it is, it doesn't exist."

I am not sure what I can add to the record, except for clarification of my last. In simplest form:

1) Were you injured, while serving in the U.S. Navy, on June 8, 1967? Yes!
2) Were you treated for those injuries? Yes! By me!
3) Could those injuries be the cause of your present condition? Yes!
4) What is your present condition? Nerve pain.
5) What injury, suffered on June 8, 1967 could have led to your present condition? Flash and small fragment injuries, caused by a torpedo explosion.
6) How would I describe the liklihood that an oral, dental, or sinus condition is the cause of the pain? Fabricated, at best. You were treated for those described conditions, without relief of the pain.
7) Could "Post Traumatic Stress disorder" contribute to or cause your pain? Yes!
8) What is the most likely cause of such a stress disorder? Your Naval service, including but not limited to June 8, 1967.

I base these opinions on good medical probability, and my experience as a physician.

If any additional information is required, please contact me.

Richard F. Kiepfer, M.D.

**RICHARD F. KIEPFER, M.D., P.A.**
208 WOLLSCHLAEGER DRIVE
BOERNE, TEXAS 78006

(210) 698-2387

February 15, 1996

TO WHOM IT MAY CONCERN:

On June 8, 1967 I was Medical Officer of the United States of the USS Liberty (AGTR-5).

Harold Six was serving as a Naval Petty Officer on the USS Liberty on that date.

When the USS Liberty was torpedoed, Mr. Six was in a compartment below the water level, which was struck by the torpedo. He suffered a cerebral concussion, multiple mini-fragment facial injuries. When he regained consciousness, he found himself pinned under debris, and as the water level rose he again lost consciousness.

He was pulled from the debris by other members of the crew.

I understand that Mr. Six has suffered "Post Traumatic" neurologic syndrome. I also understand that he has been treated for excess ethanol consumption.

Mr. Six has described the pain syndrome from which he has suffered for many years. The description is, in my opinion, consistent with Trigeminal Neuralgia, which, in good medical probability is a late complication of facial injuries suffered as a result of the June 8, 1967 trauma.

His symptoms may be at least partially central, resulting from the cerebral concussion/contusion, and anoxic unconsciousness described above.

If I can provide further information, do not hesitate to call me.

Sincerely,

Richard F. Kiepfer, MD
CAPT.(MC) USNR
President of Alamo NeuroDiagnostic

Standard Form 600
Promulgated Nov. 1952
By Bureau of the Budget
Circular A—32

HEALTH RECORD

# CHRONOLOGICAL RECORD OF MEDICAL CARE

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| | USS AMERICA (CVA -66) FPO, N.Y. 09501 |
| 9 Jun 67 | DIAGNOSES: 1. Laceration of the dorsum of the third digit of the right hand with slight exposure of the extensor tendon.<br>2. Superficial shrapnel wound over the anterior surface of the right leg.<br>3. Small shrapnel wound over the right elbow. |
| | This 21 year old CT3 was admitted with the chief complaint of a painful right elbow and arm. |
| | Physical examination revealed a laceration of the dorsum of the third ~~fi~~ finger of right hand with slight exposure of the extensor tendon. There was a wound on the anterior aspect of the right leg. |
| | LABORATORY: X-rays do not reveal any fracture or shrapnel in the right hand. A fragment of shrapnel was noted in the right elbow superficial to the olecranion process. No fracture was noted. Urinalysis was WNL. WBC 8,300; N 71; bands 1; lymph 25; Hct 45. |
| | HOSPITAL COURSE: The patient was placed on streptomycin 0.5gm IM q 12 h for 5 days and then on procaine penicillin 600,000 units IM q 12 h. His wounds were debrided and then he was placed on wet-to-dry dressings. In view of the fact that he has an exposed extensor tendon of the 3rd |
| 16 June 1967 | digit, he is ~~being~~ transferred to StaHosp, Naples for further treatment. |
| | George A. Lussier<br>GEORGE A. LUSSIER<br>LT MC USN |
| | Approved:<br>J.J. GORDON<br>CDR MC USN |

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|
| Male | Cauc | CT3 | Agtr*5 | USN | DOD |

| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO. |
|---|---|---|
| SIX, Harold | 27 Apr 46 | 777 58 53 |

CHRONOLOGICAL RECORD OF MEDICAL CARE

Standard Form 600
Promulgated Nov. 1952
By Bureau of the Budget
Circular A—32

IA 0109-201-6900

**HEALTH RECORD**

**CHRONOLOGICAL RECORD OF MEDICAL CARE**

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (*Sign each entry*) |
|---|---|
| | U. S. NAVAL [illegible] HOSPITAL [illegible] FPO N.Y. 09521 |
| | In Line of Duty. |
| [illegible]:17 Jun 67 | Addendum to the Narrative Summary of 9 Jun 67: |
| | This patient arrived on Air Evacuation from the USS AMERICA on 17 Jun 67. He was in good condition and his wounds of the leg and right hand were cleaned up nicely. He was taken to surgery on [illegible] Jun 67 and the wounds of the right thigh was closed. The skin defect was closed on the tarsum of the 3rd digit of the right hand. The wounds were dressed postoperatively and the patient is now able |
| T:21 Jun 67 | to continue his Air Evacuation to CONUS. |
| | [illegible] E. [illegible] CAPT<br>[illegible] MC, USN |
| | APPROVED: [illegible] JR., CAPT, MC, USN |
| 7 APR 71 | NAVCOMMSTA FPO S.F. 96656 |
| | Film dtd. 24 NOV 70 L knee #1353-70 |
| | Results; Technically unable to read. What is present looks normal. |
| | J.R. FRESHMAN /er<br>LT MC USNR |

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|
| M | | [illegible] | | USN | |

| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | DATE OF BIRTH (DAY—MONTH—YEAR) | IDENTIFICATION NO. |
|---|---|---|
| [illegible], Harold E. | | 777 58 53 |

Standard Form 502
Rev. August 1954
Bureau of the Budget
Circular A—32

| CLINICAL RECORD | NARRATIVE SUMMARY | |
|---|---|---|
| DATE OF ADMISSION<br>30 June 1967 | DATE OF DISCHARGE<br>JUL 10 1967 | NUMBER OF DAYS HOSPITALIZED |

(Sign and date at end of narrative)

Dg. 1: Laceration dorsum, right hand.
In line of duty. Not due to own misconduct.

1. Within command at work. HOSTILE ACTION.
2. On June 8, 1967 at approx. 1400 patient sustained his injury from shrapnel.

This 21 year old CT3, USN received metal fragment wounds to the right hand, right elbow and right leg on 8 June 1967 while aboard the USS LIBERTY. These wounds were closed secondarily. The right finger showed exposure of extensor tendon with apparently no separation. Skin repair 18 June 1967. Right leg showed a small ulcerating wound also repaired 18 June 1967 but with separation of the wound.

Elbow showed only small scar but on x-ray showed a small metal fragment in the soft tissue. Patient was otherwise within normal limits to examination, and on dressings the small leg wound measured approximately 1x2 cm and was closing. He was gaining increased flexion of the right middle finger of active exercise.

The patient is to be discharged to duty status which allows avoiding long standing.

Rev. Dg.2: Metal fragment wounds, right hand, right elbow and right leg.
In line of duty. Not due to own misconduct. Injury as above. HOSTILE ACTION.

Operation: None.

(Use additional sheets of this form (Standard Form 502) if more space is required)

| SIGNATURE OF PHYSICIAN | DATE | IDENTIFICATION NO. | ORGANIZATION |
|---|---|---|---|
| A. G. MIDDLETON, LCDR MC USNR | DOB:4-28-46 | 777 58 53 | CT3, USN |

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; date; hospital or medical facility) REGISTER NO. 672601 WARD NO.

SIX, HAROLD E.
NAVHOSP, SAN DIEGO, CALIF.
fk

APPROVED:
W. T. LINEBERRY, JR.
CAPT MC USN
CHIEF OF SURGERY

NARRATIVE SUMMARY
Standard Form 502
502-108

SS#520-11-

SICK CALL TREATMENT RECORD
NAVMED 10 (REV. 3-58) FRONT

CT3 / N E Smith

(TYPE OR PRINT BELOW IDENTIFICATION DATA)

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | FILE/SERVICE NUMBER | DATE OF BIRTH | ☑ USN ☐ USMC |
|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND RANK/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| 18 SEP 1967 | Medical Department U. S. N. A. B. Coronado, California. C/o Rt hand - (M) finger - Minimal scar adhesion of clerical tendon of 3rd index finger. Mild limitation of flexion. Gripping Exercise. Exercises. [signature] |
| 24 OCT 1967 | Medical Department U. S. N. A. B. Coronado, California. Rech Rt (M) finger [illegible]. To Balboa. [signature] |
| 29 JUN 1970 | US NAVCOMMSTA 96656 C/c of headache, stuffy feeling, denies chills & fever. T-98.6 Imp: Sinusitis Rx ① Actifed ② Zactrim. J Moreland HM2/USN |

(Over)

SS# 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

NAVMED 10 (REV. 3-58) BACK

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND RANK/RATE OF PERSON ADMINISTERING TREATMENT |
| --- | --- |
| 10 JUL 1970 | US NAVCOMMSTA 9665 C/o of Sinusitis |
| | Rx (1) ASA for pain |
| | (2) Fuss Ornade |
| | J Moreland |
| 15 JUL 1970 | US NAVCOMMSTA 9665 Same as above - Pain |
| | on (R) side of Face |
| | (1) Darvon Compd 6.5 |
| | J Moreland HM2 |
| 16 JUL 1970 | US NAVCOMMSTA 9665 CMO per above entries |
| | Prob mild sinusitis – |
| | (1) Ornade |
| | (2) Tetracycline |
| | Stone |

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

SICK CALL TREATMENT RECORD
NAVMED 6150/3 (REV. 12-67) FRONT
(Formerly NAVMED 10) S/N-0105-209-5030

(TYPE OR PRINT BELOW IDENTIFICATION DATA)

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | SERVICE/SOCIAL SECURITY NO. | DATE OF BIRTH | | |
|---|---|---|---|---|---|---|
| SIX | HAROLD | EUGENE | 7775853 | 27 APR 46 | [X] USN | [ ] USMC |

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND GRADE/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| | NKA |
| 21 AUG 1970 | US NAVCOMMSTA Recurring sinusitis treated c̄ Ornade & Tetracycline X 2 weeks starting 16 July c̄ good results. Now lives off base s̄ airconditioning states area around nose is painful. P.E. V/O Dr. Stone Rx ① Ornade ② Tetracycline JR Moreland |
| 23 SEP 1970 | US NAVCOMMSTA Start CTM Tab BID for sinus problem J Moreland HM1 |
| 11/3/70 | NCSP 96656 c/c Sore on R radial wrist. c-s. Bacitracin oint. [signature] |
| 29 NOV 70 | 0500 NCSP 91656 C/C pain tenderness Ⓛ knee. Pt cannot recall any trauma. Wife states he went for a walk & returned with problem. Exam limited ROM & weight bearing. Can walk on leg c̄ slight apparent pain because of wincing of face noted by this writer. However pt kept over & over denying any |

(Over)

SS# 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

NAVMED 6150/3 (REV. 12-67) BACK

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND GRADE/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| 29 Nov 70 | NCSP 96656 type of pain. Pt had been drinking, drinking @ home when amb arrived but it is not considered by this writer that pt. was inebriated. X-Ray WNL on ~~normal~~ initial reading. Rx with ace wrap, ice + elevation + Darvon cmpd 65. On returning pt home was informed by wife that she watched husband walking up street for appx 1 block + was walking normally. Once inside home pt started limping. J Moreland HM1 |
| 30AUG71 | NCSP 96656 c/o SORE THROAT c̄ NASAL CONGESTION + INTERMITTENT PRODUCTIVE COUGH - X 1 DAY. THROAT CLEAR SWOLLEN (L) SUP ANT CERVICAL NODE. SMOKES 1 PPD PALL MALL (R) TM SLIGHTLY BULGING T-98.8 CHEST CLEAR. IMP: URI TC-pencil flu Rx: APA c̄ LIDOCAINE ASA ROBITUSSIN ACTIFED M W Day HM3 |
| 6 Dec 71 | NCSP - C/O sinus pain + congestion Rx actifed Zactrin Kuhlbusch HM3 |

SICK CALL TREATMENT RECORD
NAVMED 10 (REV. 3-58) FRONT

CT3 / N E[illegible]

(TYPE OR PRINT BELOW IDENTIFICATION DATA)

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | FILE-SERVICE NUMBER | DATE OF BIRTH | ☐ USN ☐ USMC |
|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND RANK/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| 18 SEP 1967 | Medical Department U. S. N. A. B. Coronado, California — Chi Rt hand - [illegible] |
| | Minimal scar adhesion of clinical tendon of 3rd [illegible] flexor. Mild [illegible] of flexion gripping exercise. [illegible] |
| | [signature] |
| 24 OCT 1967 | Medical Department U. S. N. A. B. Coronado, California — Rech Rt [illegible] |
| | To [illegible] |
| | [signature] |
| 29 JUN 1970 | US NAVCOMMSTA 96656 C/c of headache, stuffy feeling, denies chills & fever. T-98[illegible] |
| | Imp: Sinusitis |
| | Rx ① Actifed |
| | ② Tactrin |
| | J Moreland HM2/USN |

(Over)

SS# 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

NAVMED 10 (REV. 3-58) BACK

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND RANK/RATE OF PERSON ADMINISTERING TREATMENT |
| --- | --- |
| 10 JUL 1970 | US NAVCOMMSTA 9665 C/o of Sinusitis<br>Rx (1) ASA for pain<br>(2) Tuss Ornade<br>J Moreland |
| 15 JUL 1970 | US NAVCOMMSTA 9665 Same as above - Pain on (R) side of Face<br>(1) Darvon Cmpd 6.5<br>J Moreland HM2 |
| 16 JUL 1970 | US NAVCOMMSTA 9665 CMO per above entries<br>Prob mild sinusitis —<br>(1) Ornade<br>(2) Tetracycline<br>Stone |

SICK CALL TREATMENT RECORD
NAVMED 6150/3 (REV. 12-67) FRONT
(Formerly NAVMED 10) S/N-0105-209.5030

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

(TYPE OR PRINT BELOW IDENTIFICATION DATA)

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | SERVICE/SOCIAL SECURITY NO. | DATE OF BIRTH | |
|---|---|---|---|---|---|
| SIX | HAROLD | EUGENE | 7775853 | 27 APR 41 | [X] USN [ ] USMC |

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND GRADE/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| | NKA |
| 21 AUG 1970 | US NAVCOMMSTA Recurring sinusitis treated c Ornade + Tetracycline X 2 weeks starting 16 July c good results. Now lives off base s airconditioning states area around nose is painful P.er V/O Dr. Stone Rx (1) Ornade (2) Tetracycline J R Moreland |
| 23 SEP 1970 | US NAVCOMMSTA Start CTM T tab BID for sinus problem J Moreland HM1 |
| 11/3/70 | NCSP 96656 c/c Sore on R radial wrist. c-s Bacitracin oint [signature] |
| 29 NOV 70 | 0500 NCSP 91656 C/C pain tenderness (L) knee. Pt cannot recall any trauma. Wife states he went for a walk + returned with problem. Exam limited ROM + weight bearing. Can walk on leg c slight apparent pain becau. of wincing of face noted by this writer however pt kept over + over denying any |

(Over)

SS# 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

SICK CALL TREATMENT RECORD
NAVMED 6150/3 (REV. 12-67) FRONT
(Formerly NAVMED 10) S/N-0105-209-5030

(TYPE OR PRINT BELOW IDENTIFICATION DATA)

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | SERVICE/SOCIAL SECURITY NO. | DATE OF BIRTH | | |
|---|---|---|---|---|---|---|
| SIX | Harold | Eugene | 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 | 27 Apr 46 | [X] USN | [ ] USMC |

| DATE | NAME OF TREATING FACILITY, COMPLAINT, TREATMENT ADMINISTERED, SIGNATURE AND GRADE/RATE OF PERSON ADMINISTERING TREATMENT |
|---|---|
| 16 DEC 1971 | NCSP, 96656 |
| 2030 | cc: Chills started 5 o'clock T=100.6 F |
| Emergency | RX 1) Bed rest |
| Visit | 2) liquid intake |
| | 3) ASA tabs II q4h |
| | [signature] HM2 |
| 17 DEC 1971 | NCSP 96656 - Chills persist states |
| | no fever since this AM - Ant Cerv |
| | lymph nodes swollen painful |
| | Throat: inflamed c exudate |
| | Temp: 101.2 |
| | TC = |
| | Advise Gargle salt H2O |
| | Tylenol |
| | Actifed |
| | 48 Hours no duty [signature] HM3 |
| 26MAY72 | NCSP 96656 c/o 1" LACERATION (L) THUMB. WAS CUT |
| | WHILE CUTTING AN ONION. R: POLYSPORIN + TUBEX |
| | DRESSING, TT 0.5 cc IM STAT |
| | [signature] HM2 |

(Over)

Standard Form 513
Rev. August 1954
Bureau of the Budget
Circular A—32

U. S. GOVERNMENT PRINTING OFFICE: 1966—230-846

CLINICAL RECORD | CONSULTATION SHEET

REQUEST

TO: Ortho Cl. Balboa
FROM: (Requesting ward, unit, or activity) Amb. Dispensary
DATE OF REQUEST: 10/24/67

REASON FOR REQUEST (Complaints and findings)

21 y old wm CT3 c ↓ Rom (R) 3rd digit of hand 2° to scar formation from injury sustained in June 1967. 1½ months of gripping exercises and massage has not ↑ Rom. Could you

PROVISIONAL DIAGNOSIS

DOCTOR'S SIGNATURE: [signature]
APPROVED
PLACE OF CONSULTATION ☐ BEDSIDE ☐ ON CALL
☐ EMERGENCY ☐ ROUTINE

CONSULTATION REPORT

please evaluate (would ultrasound to the scar help this patient) [signature]

11.2.67

Hx reviewed —

Exam of hand reveals 5° limitation of flexion of P.I.P. joint long finger Rt hand. Limited by scar. No disability

Disp: No Rx indicated

(Continued on reverse side)

SIGNATURE AND TITLE: [signature]
DATE: 11.2.67
IDENTIFICATION NO.
ORGANIZATION

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; date; hospital or medical facility)
REGISTER NO.
WARD NO.

Six, Harald, Eugene
777 58 53
CT3 [illegible]

CONSULTATION SHEET
Standard Form 513
513—104—02