Continuation sheet

Docket no. 1180-07

Six, Harold E.

"Acute and Delayed Posttraumatic Stress Disorders: A History and Some Issues", American Journal of Psychiatry, volume 161, pp. 1321-1323, August 2004; "Adverse Outcomes Associated With Personality Disorder Not Otherwise Specified in a Community Sample", American Journal of Psychiatry, volume 162, pp.1926-1932, October 2005; "Stressed Out Vets", The Weekly Standard, 21/28 August 2006; "The Liberty Incident, Gag Orders Debunked", with referenced documents, http://thelibertyincident.com/gag-orders-debunked.html, retired Federal District Court Judge A. Jay Cristol; a statement by Bryce Lockwood dated 8 November 1995; correspondence provided by RADM Merlin Staring, Judge Advocate General's Corps, U.S. Navy, Retired, in his capacity as an official of the U.S.S Liberty Alliance; "The Assault on the Liberty: The True Story of the Israeli Attack on an American Intelligence Ship", James M. Ennes, Jr., 1979, information from docket nos. 9117-04, 7638-05.

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

DLK: wma
Docket: 5925-04
July 6, 2006

DEPARTMENT OF VETERANS AFFAIRS
REGIONAL OFFICE
8810 RIO SAN DIEGO DRIVE
SAN DIEGO CA 92108

URGENT
Need file
NLT 1 Aug 06

NAME: SIX, HAROLD E
SSN: 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

Subject veteran has made an application to this Board for correction of his military record. In order to assist the Board in its deliberations, it is requested that his VA claim folder or a copy thereof be provided for review and the following information and/or records be provided to this board.

(1) Copies of VA Rating Decisions
(2) Return of the veteran's original service medical record, or copies thereof
(3) Photographs of all VA medical/compensation examinations, hospital summaries, other medical evaluation reports, VA statements of case, and BVA decisions (VA manual, MP-1, Part II, Chapter 12, paragraphs 17 and 18 refer)

If the veteran does not have a VA Rating Decision or has not applied for VA Compensation, please indicate.

As indicated in the attached DD Form 149, the veteran has authorized this Board to obtain his VA records in order to process his application.

Sincerely,

D L King

D. L. KING
Head, Records Section

Enclosure

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing this application.)*

OMB No. 0704-0003
OMB approval expires
Jun 30, 2009

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Executive Services Directorate (0704-0003). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ORGANIZATION. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.**

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10 US Code 1552, EO 9397.

**PRINCIPAL PURPOSE:** To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

**ROUTINE USE(S):** None.

**DISCLOSURE:** Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected)*

**a. BRANCH OF SERVICE** *(X one)* ☐ ARMY ☐ NAVY ☐ AIR FORCE ☐ MARINE CORPS ☐ COAST GUARD

**b. NAME** *(Print - Last, First, Middle Initial)* | **c. PRESENT OR LAST PAY GRADE** | **d. SERVICE NUMBER** *(If applicable)* | **e. SSN**

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED:** *(Entry required)*

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

**a. DATE OF DISCOVERY** *(YYYYMMDD)*

**b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.**

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)* ☐ YES. THE BOARD WILL DETERMINE IF WARRANTED. ☐ NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*

**b. TELEPHONE** *(Include Area Code)*

**c. E-MAIL ADDRESS**

**d. FAX NUMBER** *(Include Area Code)*

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name** *(print)* **and relationship by marking one box below.**

☐ SPOUSE ☐ WIDOW ☐ WIDOWER ☐ NEXT OF KIN ☐ LEGAL REPRESENTATIVE ☐ OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

**b. TELEPHONE** *(Include Area Code)*

**c. E-MAIL ADDRESS**

**d. FAX NUMBER** *(Include Area Code)*

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**CASE NUMBER** *(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)*

**16. DATE SIGNED** *(YYYYMMDD)*

## INSTRUCTIONS

1. All information should be typed or printed. Complete all applicable items. If the item is not applicable, enter "None."

2. If space is insufficient on the front of the form, use the "Remarks" box below for additional information or attach an additional sheet.

3. List all attachments and enclosures in item 9. Do not send original documents. Send clear, legible copies. Send copies of military documents and orders related to your request, if you have them available. Do not assume that they are all in your military record.

4. The applicant must exhaust all administrative remedies, such as corrective procedures and appeals provided in regulations, before applying to the Board of Corrections.

5. ITEM 5. State the specific correction of record desired. If possible, identify exactly what document or information in your record you believe to be erroneous or unjust and indicate what correction you want made to the document or information.

6. ITEM 6. In order to justify correction of a military record, it is necessary for you to show to the satisfaction of the Board by the evidence that you supply, or it must otherwise satisfactorily appear in the record, that the alleged entry or omission in the record was in error or unjust. Evidence, in addition to documents, may include affidavits or signed testimony of witnesses, executed under oath, and a brief of arguments supporting the application. All evidence not already included in your record must be submitted by you. The responsibility of securing evidence rests with you.

7. ITEM 8. U.S. Code, Title 10, Section 1552b, provides that no correction may be made unless a request is made within three years after the discovery of the error or injustice, but that the Board may excuse failure to file within three years after discovery if it finds it to be in the interest of justice.

8. ITEM 10. Personal appearance before the Board by you and your witnesses or representation by counsel is not required to ensure full and impartial consideration of your application. If the Board determines that a personal appearance is warranted and grants approval, appearance and representation are permitted before the Board at no expense to the government.

9. ITEM 11. Various veterans and service organizations furnish counsel without charge. These organizations prefer that arrangements for representation be made through local posts or chapters.

10. ITEM 12. The person whose record correction is being requested must sign the application. If that person is deceased or incompetent to sign, the application may be signed by a spouse, widow, widower, next of kin (son, daughter, mother, father, brother, or sister), or a legal representative that has been given power of attorney. Other persons may be authorized to sign for the applicant. Proof of death, incompetency, or power of attorney must accompany the application. Former spouses may apply in cases of Survivor Benefit Plan (SBP) issues.

11. For detailed information on application and Board procedures, see: Army Regulation 15-185 and www.arba.army.pentagon.mil; Navy - SECNAVINST 5420.193 and www.hq.navy.mil/bcnr/bcnr.htm; Air Force Instruction 36-2603, Air Force Pamphlet 36-2607, and www.afpc.randolph.af.mil/safmrbr; Coast Guard - Code of Federal Regulations, Title 33, Part 52.

## MAIL COMPLETED APPLICATIONS TO APPROPRIATE ADDRESS BELOW

**ARMY**

**(For Active Duty Personnel)**
Army Board for Correction of Military Records
1901 South Bell Street, 2nd Floor
Arlington, VA 22202-4508

**(For Other than Active Duty Personnel)**
Army Review Boards Agency
Support Division, St. Louis
9700 Page Avenue
St. Louis, MO 63132-5200

**NAVY AND MARINE CORPS**

Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

**AIR FORCE**

Board for Correction of Air Force Records
SAF/MRBR
550-C Street West, Suite 40
Randolph AFB, TX 78150-4742

**COAST GUARD**

Board for Correction of Military Records
of the Coast Guard (C-60) Room 4100
400 7th St., SW
Washington, DC 20590

**17. REMARKS**

DD FORM 149 (BACK), JUL 2006

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 483-03
15 December 2006

WILLIAM J KENNEY ESQ
9915 EMPIRE WOODS COURT
CHARLOTTE NC 28277-2279

Dear Mr. Kenney:

This is in response to your recent undated request for production of records in the case of your client, Harold E. Six. I received your request on 13 December 2006.

The Board is not an investigative body, and will not assist you in obtaining much of the information listed in your request.

Secretary of the Navy Instruction (SECNAVINST) 5420.193, provides, in part, that it is the applicant's responsibility to procure such evidence not contained in the official records of the Department of the Navy as he desires to present in support of his case. Classified or privileged information may be released to applicants only by proper authorities in accordance with applicable regulations. Nothing in SECNAVINST 5420.193 authorizes the furnishing of copies of official records by the Board. Requests for copies of official records should be submitted in accordance with regulations governing the release of information, with which I believe you are familiar.

The Board has possession of, but is not the official custodian of, Mr. Six's Navy health and personnel records. If you want copies of those records, you must request them from their official custodian, the National Personnel Records Center (NPRC). If you submit such a request, I will be required to return the records in question to the NPRC, which may delay the consideration of Mr. Six's application by several months or longer. As I'm sure you know, the Court has directed the Board

to complete its review of this matter no later than 23 April 2007. You could have avoided this delay had you attempted to obtain the information before you submitted Mr. Six's original application in January 2003.

If you would like to review Mr. Six's original records or his Board for Correction of Naval Records file, please contact at 703-614-2133 to schedule an appointment. The Board's offices are in Federal Building 2, which is adjacent to the Air Force Memorial at the intersection of Columbia Pike and South Gate Road in Arlington, Virginia.

Sincerely,

JAMES R. EXNICIOS
Disability Section

P. Rue
Cat Phd #6

JRE

REFERENDUM

Six, Harold E.
*01180-07*

FEB - 7 2007

Subject's Name:

| Six | Harold | E. | |
|---|---|---|---|
| Last | First | MI | Suffix |

☑ REQUEST FOR RECONSIDERATION

☑ Approved: ______________ ______

☐ Disapproved: ______________ ______

[signature] 6 Feb 07

Signature Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved: ______________ ______

Signature Date

COMMENTS: ______________

NOTE: Please deliver to OIS Section with "closed" BCNR file

San Diego

2910667

NEW Docket No.

1180-07

(OIS/11 1Jul86)

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION
CLARKSBURG, WV 26306

ɔCUSNBC0Z ICN ISIS0002000005078648
ʔART 2

- FBI IDENTIFICATION RECORD - FBI NO-758898P9

1-ARRESTED OR RECEIVED 1976/04/07
AGENCY-SHERIFF'S OFFICE NORWALK (CA0190000)
AGENCY CASE-3852705
CHARGE 1-MISD DRUNK DRIVING ON HWY

COURT-
1976/05/18 DISPOSITION-CHARGE DISMISSED-
CHARGE-MISD DRUNK DRIVING ON HWY
SENTENCE-
1976/05/18 DISPOSITION-CONVICTED-
CHARGE-PLED GUILTY TO 23103 A VC
SENTENCE-2Y CONFINEMENT, $290 FINE

2-ARRESTED OR RECEIVED 1988/09/29 SID- CA05735793
AGENCY-SHERIFF'S OFFICE RIVERSIDE (CA0330000)
AGENCY CASE-H88838 NAME USED-SIX,HAROLD
CHARGE 1-001 COUNT OF FRAUD TO OBTAIN AID -$400

RECORD UPDATED 2001/03/27

ALL ARREST ENTRIES CONTAINED IN THIS FBI RECORD ARE BASED ON FINGERPRINT COMPARISONS AND PERTAIN TO THE SAME INDIVIDUAL.

THE USE OF THIS RECORD IS REGULATED BY LAW. IT IS PROVIDED FOR OFFICIAL USE ONLY AND MAY BE USED ONLY FOR THE PURPOSE REQUESTED.

FD-448
Revised
10-27-2004

FEDERAL BUREAU OF INVESTIGA. .N

# FACSIMILE COVER SHEET

**PRECEDENCE**

( ) Immediate ( ) Priority (•) Routine

**CLASSIFICATION**

( ) Top Secret ( ) Secret ( ) Confidential ( ) Sensitive (•) Unclassified

**TO**

| Name of Office: | Facsimile Number: | Date: |
|---|---|---|
| **NAVY BOARD OF CORRECTIONS** | **703-614-9857** | **02/07/2007** |

| Attn: | Room: | Telephone Number: |
|---|---|---|
| **MR. TOM GREER** | | **703-614-9837** |

**FROM**

| Name of Office: | | Number of Pages: (including cover) |
|---|---|---|
| **Expedite Services Unit** | | **5** |
| Originator's Name: | Originator's Telephone Number: | Originator's Facsimile Number: |
| **Jimmy** | **304-625-4725** | **304-625-5587** |

Approved:
**TEB/jeo**

**DETAILS**

Subject:

Special Handling Instructions:

Brief Description of Communication Faxed:
**COPY OF CRIMINAL HISTORY RECORD AS REQUESTED. THANK YOU, JIMMY**

**WARNING**

Information attached to the cover sheet is U.S. Government Property. If you are not the intended recipient of this information disclosure, reproduction, distribution, or use of this information is prohibited (18.USC, § 641). Please notify the originator or local FBI Office immediately to arrange for proper disposition.

AR 174

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION
CLARKSBURG, WV 26306

DCUSNBC0Z ICN ISIS0002000005078648

DCUSNBC0Z
NAVY BOARD OF CORRECTIONS
NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON,DC 20370-5100

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION
CLARKSBURG, WV 26306

)CUSNBC0Z ICN ISIS0002000005078648

'HE FOLLOWING FBI IDENTIFICATION RECORD FOR 758898P9 IS FURNISHED FOR )FFICIAL USE ONLY. THIS RECORD IS BEING FURNISHED UPON THE )ESCRIPTIVE INFORMATION IN YOUR REQUEST AND NOT AS THE RESULT OF A 'INGERPRINT COMPARISON. CONSEQUENTLY, THE FBI CANNOT GUARANTEE THAT 'HIS RECORD CONCERNS THE PERSON IN WHOM YOU ARE INTERESTED.

DESCRIPTORS ON FILE ARE AS FOLLOWS:

JAME SIX,HAROLD E

| SEX | RACE | BIRTH DATE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| M | W | 1946/04/27 | 601 | 155 | BROWN | BROWN |

| BIRTH CITY | BIRTH PLACE |
|---|---|
| UNREPORTED | WYOMING |

PATTERN CLASS
RS WU RS WU WU WU LS LS WU WU
WU RS WU

| OTHER BIRTH DATES | SCARS-MARKS-TATTOOS | SOCIAL SECURITY | MISC NUMBERS |
|---|---|---|---|
| NONE | NONE | 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 | NONE |

ALIAS NAME(S)
SIX,HAROLD SIX,HAROLD EUGENE-SR

END OF COVER SHEET

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION
CLARKSBURG, WV 26306

DCUSNBC0Z ICN ISIS0002000005078648

BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.

THIS RECORD IS SUBJECT TO THE
FOLLOWING USE AND DISSEMINATION RESTRICTIONS

UNDER PROVISIONS SET FORTH IN TITLE 28, CODE OF FEDERAL REGULATIONS (CFR), SECTION 50.12, BOTH GOVERNMENTAL AND NONGOVERNMENTAL ENTITIES AUTHORIZED TO SUBMIT FINGERPRINTS AND RECEIVE FBI IDENTIFICATION RECORDS MUST NOTIFY THE INDIVIDUALS FINGERPRINTED THAT THE FINGERPRINTS WILL BE USED TO CHECK THE CRIMINAL HISTORY RECORDS OF THE FBI. IDENTIFICATION RECORDS OBTAINED FROM THE FBI MAY BE USED SOLELY FOR THE PURPOSE REQUESTED AND MAY NOT BE DISSEMINATED OUTSIDE THE RECEIVING DEPARTMENT, RELATED AGENCY OR OTHER AUTHORIZED ENTITY. IF THE INFORMATION ON THE RECORD IS USED TO DISQUALIFY AN APPLICANT, THE OFFICIAL MAKING THE DETERMINATION OF SUITABILITY FOR LICENSING OR EMPLOYMENT SHALL PROVIDE THE APPLICANT THE OPPORTUNITY TO COMPLETE, OR CHALLENGE THE ACCURACY OF, THE INFORMATION CONTAINED IN THE FBI IDENTIFICATION RECORD. THE DECIDING OFFICIAL SHOULD NOT DENY THE LICENSE OR EMPLOYMENT BASED ON THE INFORMATION IN THE RECORD UNTIL THE APPLICANT HAS BEEN AFFORDED A REASONABLE TIME TO CORRECT OR COMPLETE THE INFORMATION, OR HAS DECLINED TO DO SO. AN INDIVIDUAL SHOULD BE PRESUMED NOT GUILTY OF ANY CHARGE/ARREST FOR WHICH THERE IS NO FINAL DISPOSITION STATED ON THE RECORD OR OTHERWISE DETERMINED. IF THE APPLICANT WISHES TO CORRECT THE RECORD AS IT APPEARS IN THE FBI'S CJIS DIVISION RECORDS SYSTEM, THE APPLICANT SHOULD BE ADVISED THAT THE PROCEDURES TO CHANGE, CORRECT OR UPDATE THE RECORD ARE SET FORTH IN TITLE 28, CFR, SECTION 16.34.

- FBI IDENTIFICATION RECORD -

WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE DIRECTLY WITH THE AGENCY THAT FURNISHED THE DATA TO THE FBI.

| NAME | FBI NO. | DATE REQUESTED |
|---|---|---|
| SIX,HAROLD E | 758898P9 | 2007/02/07 |

| SEX | RACE | BIRTH DATE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| M | W | 1946/04/27 | 601 | 155 | BRO | BRO |

BIRTH PLACE
WYOMING

FINGERPRINT CLASS PATTERN CLASS
17 PO 18 PO CO RS WU RS WU WU WU LS LS WU WU
PI 16 19 PI PI WU RS WU

END OF PART 1 - PART 2 TO FOLLOW

**William J. Kenney, Esq.**

9915 Empire Woods Court
Charlotte, NC 28277 *
Tel: 704-341-4781
Fax: 704-341-4781
email: kenneyffx@aol.com
* Not admitted in North Carolina or California

% HART/HTC-CA
Wilshire Boulevard, Suite 420
Los Angeles, CA 90010 *
Tel :213-251-5737

% HART/HTC
600 Penn. Ave, SE, Ste 105
Washington, DC 20003
Tel: 202-547-5129

October 17, 2006

W. Dean Pfeiffer, Executive Director
Board For Correction Of Naval Records
Department of the Navy
2 Navy Annex
Washington, DC 20370 - 5100

Re: Harold E. Six, Sr., Docket No. 483-03

Dear Mr. Pfeiffer:

This will respond, on an interim basis, to the Board's letter of 24 August 2006 in the above proceeding. Please accept my apologies for the delay in responding. Your letter arrived during my absence on vacation. Thereafter difficulties in contacting my client, Mr. Six, and certain personal family matters distracted me from a more timely response.

I appreciate that this delay will adversely impact the Board's ability to comply with the procedural dates directed by the Court. With the government's concurrence, I will move for an extension of those dates to a date mutually acceptable to both my client and the government.

Responding to the issues presented by the Board's letter, please be advised as follows:

1. I have prepared and forwarded to Mr. Six affidavits directing the VA to release his service record to the Board. In addition, I have prepared affidavits directing release of all records from the LAPD and the California Department of Corrections. As soon as I receive those documents, I will forward them to the Board, and, personally present them to the respective agencies.

2. I enclose my declaration regarding the " missing" Lockwood affidavit. I have also reviewed this with Mr. Lockwood and prepared a declaration for his review and approval. Mr. Lockwood requested various changes to the draft

presented him. Those have been made. As soon as I receive Mr. Lockwood's signed declaration, I will forward it to the Board.

3. Regarding records of Mr. Six's medical, psychological, and/or psychiatric consultations, etc. during the period 7 February 1973-6 February 1978, Mr. Six advises that to the best oof his present recollection there were no such consultations, etc. during that period. He also informs me he has no recollection of undergoing any psychological evaluation incident to his application for employment with the California Department of Corrections. I have prepared an affidavit for Mr. Six's review, editing and approval regarding these issues ( and other pertinent matters). As soon as Mr. Six is comfortable with the wording of that affidavit, I will submit it to the Board.

4. The Board asks that I provide a detailed statement of the basis of ***my*** belief that Mr. Six was entitled to a disability rating of 70 per cent, together with an explanation of the discrepancy between that rating and the 10 per cent awarded by the VA. I will address that issue in an attachment.

5. The Board requests an explanation for Mr. Six's failure to mention the Silencing Order in his initial application. Candidly, the failure to mention the Silencing Order in the initial application is my responsibility, not Mr. Six's. In preparing the initial application, I was flooded with multiple facts, some of which seemed of obscure relevance. I construed the discussions of the Silencing Order that occurred in my interviewing other crew members as a part of their anger and frustration at the Navy for promulgating the false report of the attack. And, these facts were often presented in a haze of profound anger and frustration, coupled with explanations of how badly these individual's lives, and the lives of their families had been affected by their experiences in the attack on the Liberty, and the subsequent lies by our government concerning the facts of that sneak attack. Mr. Six himself had great difficulty in discussing the events of the attack. I attributed this to the understandable confusion aboard the Liberty at the time of the attack, and the fact he had obviously sustained a severe concussion when the torpedo exploded into his work station in the compartment. In preparing the initial application, I attempted to focus on the fact of Six's injuries and the unique circumstances of those injuries. Naively, I felt confident the Board would well recognize the enormous injustice the Navy and our government inflicted on Six and his fellow Liberty survivors. It was not until sometime latter that I began to perceive the affect that Order had on Mr. Six (and other crew members), and undertook additional inquiries to verify the fact that the

Silencing Order had in fact been issued, and, the scope of the crew's understanding of its reach.

6. The Board has asked for response as to questions relating to the various medals awarded to Mr. Six as a result of his service aboard the Liberty; questions relating to comments by Six's Commanding Officer concerning Six's service, and questions relating to Six's participation in reunions of the Liberty crew. Mr. Six will respond to these issues in his supplemental affidavit.

7. The Board asks which of the numerous affidavits and declarations presented in support of Six's application were prepared by the affiants or declarents, and which were prepared by me. I respectfully submit that the affidavits and declarations speak for themselves. To the extent the Board challenges the authenticity of any of these documents, or challenges any fact presented in any of the aforesaid affidavits and declarations, the Board owes a duty to Mr. Six to identify, with specificity, each such fact or section of any challenged document. Mr. Six requested a personal hearing before the Board. The Board chose to ignore that request. It still has the power to conduct such a personal hearing, and, to subpoena, at its expense, any witness whose testimony has been presented, if the Board wishes to challenge the authenticity or credibility of the facts presented in any such affidavit or declaration.

8. Notwithstanding the foregoing, and, without waiving any attorney client privilidges that may otherwise be involved. The Board is informed that I, personally prepared the affidavits and declarations presented by the following witnesses:

A. Mr. Six
B. Mrs. Margaret Six
C. The Six Children, Cindy Valles, Tammy Rievley, and Harold Six, Jr.
D. Bryce Lockwood. As noted, I represent Mr. Lockwood in a related application presented to the Board
E. CAPT Richard Keipfer, MC USN, Ret. Dr. Keipfer has presented a similar affidavit to that presented in this proceeding in the Lockwood proceeding.
F. Joe Binkert

In addition. I reviewed and suggested certain language changes in the Psychiatric Report prepared and presented by Dr. Estrov. Dr. Estrov adopted some of my recommendations, and rejected others.

9. In each instance, prior to preparing a draft affidavit or declaration, I interviewed the witness, by phone, exploring the witness's personal knowledge of the facts I sought to establish. In the case of the Six children, I asked each to confirm that Mr. Six Senior, the applicant, was neither present in the room, or in the house when they spoke with me. I spoke with Cindy on at least 3 occasions, first for the interview, then to confirm she was comfortable with the language used in the draft presented The Board will note Harold, Jr. left the area before signing his statement. I talked to Junior at least 3 times, first to interview him, and, thereafter to confirm that he was comfortable with the draft presented for his consideration, and, finally, to ask him to take it to a notary and mail it to me. In Tammy's case, I spoke with her on at least 3 occasions. First at Harold's home, then on two other occasions at her home in Arizona. She was very angry at the applicant and very reluctant to open up old wounds from her childhood.
I have followed the same standard with respect to each affidavit or declaration, interviewing the witness, by phone, first, then drafting a proposed statement for the witness' consideration, then revising and editing the final statement to conform to the witness' directions. And, finally, to confirm that the final statement has been received and accurately reflects their thoughts and knowledge of the facts at issue. In each discussion, I identify myself, explain the purpose of the call, and the intention to take a statement for use in this proceeding. Each is reminded of the need to be truthful, and, the consequences of false statements in federal government matters, and each urged to use their own discretion, and t make any and all changes, corrections, deletions or additions they feel necessary. The determination to use a declaration in lieu of an affidavit was dictated by the convenience of the witness and his convenient access to a notary. It is our intention to file at least two additional declarations form other Liberty survivors, one from LCDR Ennes, USN, Ret.; the other from MCPO White, USN, Ret., each of whom have made statements regarding Six's rescue in the related Lockwood proceeding.

10. Regarding the Statement of RADM Staring, and the Declaration of CAPT. Boston, as stated in our pleading to the Court, these documents have been extracted from a Report submitted to the Secretary of the Army as Executive Agent for the Secretary of Defense, asserting war crimes were committed against the Liberty crew by Israeli air and naval forces. I have personally verified the authenticity of the Staring statement in discussions with RADM Staring. I have had no discussion with CAPT Boston, but the authenticity of his

declaration was confirmed to me by RADM Staring, and, in addition. I have personally seen news clips of CAPT. Boston acknowledging his role in the preparation of the false report, and, the fact that the Silencing Order was issued by RADM Kidd, and their seniors.

Respectfully submitted,

William J. Kenney
D.C. BAR No. 99267
Attorney for the Applicant,
Harold E. Six, Sr.

% HART/HTC
600 Pennsylvania Avenue, SE, Suite 105
Washington, DC 20003
Tel: 202-547-5129
Fax: 202 547- 8311

9915 Empire Woods Court
Charlotte, NC 28277
Tel/Fax: 704-341-4781

**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 483-03
24 August 2006

WILLIAM J KENNEY ESQ
9915 EMPIRE WOODS COURT
CHARLOTTE NC 28277-2279

Dear Mr. Kenney:

This is in reference to the application for correction of naval record in the case of your client, Harold E. Six, which was remanded to the Board on 30 June 2006 by the U.S. Court of Federal Claims. The Board received a copy of the Order and Opinion of the Court on 20 July 2006. His Board for Correction of Naval Records file was returned to the Board on 24 August 2006.

Please provide the following information and documents to the Board at no cost to the government of the United States:

a. A signed affidavit from Mr. Six authorizing and directing the Department of Veterans Affairs to forward his original service medical records to the Board.

b. A copy of the affidavit of Bryce Lockwood described in the Opinion.

c. A copy of all records of medical, psychological, and/or psychiatric consultation, evaluation and/or treatment Mr. Six underwent during the period 7 February 1973-6 February 1978, to include the report of psychiatric or psychological evaluation he underwent when he was an applicant for employment as a police officer in 1973 or 1974. In addition, please provide a copy of the psychological evaluation completed in 1985 when he applied for a position as a peace officer with the California State Department of Corrections.

d. A detailed statement of the basis of your belief that Mr. Six was entitled to a disability rating of 70 percent on 7 February 1973 and 7 February 1978. Please explain the discrepancy between that rating and the rating of 10 percent awarded by the Department of Veterans Affairs more than twenty years after his discharge from the Navy.

e. An explanation of Mr. Six's failure to mention the alleged "silencing order" in his initial application.

f. On 26 May 1970, Mr. Six requested that he be awarded the Combat Action Ribbon for his participation in the Liberty incident. Did his request violate the silencing order? If he was trying to forget the incident, why did he request that award? Did he wear that award and his Liberty-related Purple Heart and Presidential Unit Citation ribbons on his uniform? If so, how did he avoid violating the silencing order when he responded to questions concerning how he had earned those awards?

g. Mr. Six was promoted on two occasions after the Liberty incident. In your opinion, would he have been promoted if his service had not been satisfactory prior to the promotions?

h. On 12 January 1973 Mr. Six's commanding officer advised the Chief of Naval personnel, in part, as follows: "SUBJ MILITARY RECORD REFLECTS EIGHT YEARS EIGHT MONTHS EXCEPTIONALLY MERITORIOUS SERVICE. WHILE ATTACHED THIS COMMAND HAS SERVED IN PROFESSIOAL MANNER CONSISTENTLY DEMONSTRATING HIGH SENSE OF PERSONAL RESPONSIBILITY FOR QUALILTY OF HIS WORK". Is that an inaccurate assessment of Mr. Six's service?

j. Mr. Six has submitted numerous affidavits in support of his request. Please specify which affidavits were prepared by the affiants, and which were prepared by you. In addition, please identify each affidavit that was prepared for the use of other individuals you may have represented before the Board.

k. On how many occasions has Mr. Six participated in reunions of the Liberty crew? Was the silencing order discussed on any of those occasions? If so, was the first occasion before or after Mr. Six submitted his initial application to the Board?

l. A copy of Mr. Six's Social Security Earnings Record for the 1973-1994 period.

m. A Standard Form 507, Clinical Record, which is a continuation of the Standard Form 88, Report of Medical History Mr. Six completed in 1971 in connection with a physical examination, contains, in part, the following: "Patient received scrapnel [sic] wound to right leg + rt hand Meditterian [sic] Area, combat injury. Flesh wound only. 1967. Hospitalized USS America 8 days. Transferred to Naples, Italy = was hospitalized 14 days. Transferred again to Balboa Naval Hosp. San Diego Cali for approx 10 days good recovery." Did his disclosure of that information to the physician who conducted the examination violate the silencing order? On 24 October 1967 Mr. Six sought medical care for decreased range of motion in a finger that resulted from an injury during June 1967. Did that disclosure violate the silencing order?

As time is of the essence, please submit the above information and documents no later than 1 October 2006. I realize that it may be difficult for you and Mr. Six to obtain some of the requested information. That difficulty would not have existed had he not waited almost thirty years from the date of his discharge to file his application. The requested materials/responses should be sent to my attention at the address listed above.

You are reminded of the provisions of SECNAVINST 5420.193, enclosure (1), section 6, paragraph a (2), the Board may require the applicant to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues.

Sincerely,

W. DEAN PFEIFFER
Executive Director

**William J. Kenney, Esq.**

9915 Empire Woods Court
Charlotte, NC 28277 *
Tel: 704-341-4781
Fax: 704-341-4781
email: kenneyffx@aol.com
* Not admitted in North Carolina or California

% HART/HTC-CA
Wilshire Boulevard, Suite 420
Los Angeles, CA 90010 *
Tel :213-251-5737

% HART/HTC
600 Penn. Ave, SE, Ste 105
Washington, DC 20003
Tel: 202-547-5129

January 29, 2007

W. Dean Pfeiffer, Executive Director
Board For Correction Of Naval Records
Department of the Navy
2 Navy Annex
Washington, DC 20370 - 5100

Re: Harold E. Six, Sr., Docket No. 483-03

Dear Mr. Pfeiffer:

This in further response to your letter of 24 August 2006 in the above remanded proceeding. Attached please find the following documents. We move their admission in this proceeding:

1. Supplemental Declaration of CAPT Richard F. Kiepfer, MC, USN, Retired.
2. Declaration of LCDR James M. Ennes, Jr., USN Retired.
3. Declaration of Phil Tourney, Former Shipfitter-Pipe Fitter Third Class, U.S. Navy.
4. Copy, USS Liberty (AGTR 5) Plan Of The Day, Friday 30 June 1967.
5. Human Resources, Department of Corrections And Rehabilitation, State of California., letter dated January 10, 2007, over signature of Nancy Bither, Deputy Director.

I invite the Board's attention to Dr. Kiepfer's Declaration, wherein he acknowledges the Navy's failure "in the diagnosis and treatment of the psychiatric and psychologic injuries" suffered by the Liberty crew, including Mr.

Six. ( Kiepfer Supplemental, p2.) Dr. Kiepfer states that "It is my professional opinion as a matter of medical certainty that the Silencing Order definitely impeded the ability of the survivors to seek professional help for their evolving symptoms of mental health disorders, including, especially symptoms of Post Traumatic Stress."(Id.) He declares, of personal knowledge and experience that "Every member of the crew had drilled into them the special National Security interest the ship served, and their personal responsibility not to discuss or disclose the mission of the ship or its special equipment. And, that .... was even more ingrained into the members of the ship's Naval Security Activities Group aboard the ship, like Mr. Six ... Thus, when a special group of officers including an Admiral, came aboard and issued new special orders, warning them not disclose what they had observed in that attack, it had a deep impact on everyone. When the word began to circulate that the Navy was sending officers out to the crew that had been transferred of for medical treatment and conveying that message to them, it had a very chilling effect."(P.3)

Citing Dr. Hoge's NEMJ article "Combat Duty In Iraq and Afghanistan, Mental Health Problems , and Barriers to Care", NEMJ Vol;. 351:13-22 July 1, 2004 included in Dr. Kiepfer's initial declaration, Dr. Kiepfer focused on the recommendations of Dr. Hoge's Report that efforts should be taken to address the problem of stigma and other barriers , and should include programs for outreach, education and provisions for confidential counseling. (P3-4.) Dr. Kiepfer declared "That research reinforces my confidence that the "Silencing Orders" affirmatively interfered with Mr. Six's ability to obtain the care he needed for his evolving symptoms of PTSD when they first evidenced ...Dr. Hoge's research identifies the fact that combat vets are fearful ...if they report symptoms... That fear is greatly compounded when the individual is threatened with Courts Martial if he discusses the events with anyone. The Order exaggerated the constraints of the so called "natural" reluctance to acknowledge symptoms of mental health disorders."

Dr. Kiepfer notes that in Six's case, that barrier was "dramatically increased" to "unscalable heights" by the false report of the Court of Inquiry. "Those lies claimed the attack was brief, inferring it was an insignificant event. Thus, individuals experiencing PTSD symptoms were denied the opportunity to disclose the event; their symptoms could not be understood for what they were without such disclosure, and, the individual presents, in military circumstances, as a malingerer"

Dr Kiepfer states "This is evident in Mr. Six's records when he presents himself for medical attention following a knife wound, and it is treated as a cut, without further inquiry. And, again, he presented for medical care following a drunken street brawl, and no inquiry is made. The affidavits from his step children also attest to this. They relate SP's being called to the home to deal with drunken fights between Mr. Six and his then wife; even his being taken into custody while assaulting his wife at the base PX, all without inquiry. And, of course, throughout all these incidents, even when faced with discharge, Mr. Six maintained silence as to his evolving PTSD, for fear of violating the Silencing Order."(5-6.) Dr. Kiepfer concludes: " It is my professional opinion , to a medical certainty, that the silencing orders blocked Mr. Six's ... f rom getting timely treatment for ... evolving symptoms of PTSD," and restates his opinion that Mr. Six was disabled from his PTSD and was properly ratable at 70% at the time of his discharge.(7.)

I further invite the Board's attention to the declaration of LCDR James M. Ennes, USN Retired. Mr. Ennes was the Liberty's Electronic Material Officer at the time of the attack. Commander Ennes states his personal knowledge of the Silencing Order and notes that the Liberty's Plan of the Day for 30 June 1967 cautioned the crew that they are authorized to discuss only what is contained in the news release and no more. LCDR Ennes then relates how he was personally visited by a Navy Captain while under treatment at U.S. Naval Hospital, Portsmouth, VA. in late June or early July, 1967. "After the normal pleasantries, this officer proceeded to caution me that I was not to discuss the events aboard the USS Liberty with anyone, "not even your wife" without his permission or the permission of my Commanding Officer from the Liberty. I was warned that if I violated that Order I could face disciplinary action, including Courts Martial. I responded to the effect that as a member of the Naval Security Group Activity I did not need such an Order. I well understood my duties in handling National Security information. His response was to the effect , this was recognized, but these orders came form the top and were very serious." (P.2.)
"I have been asked if I interpreted this order as prohibiting me from discussing aspects of the attack with my health care providers. I certainly did. Why else would the Navy feel it necessary to convey that order to me in the hospital, and why have a superior officer convey both the Order and threats to me personally."

Referring to the special national security responsibilities of the Naval Security Group Activity units, he states "Thus, when a special order of secrecy is issued, members of our group take it to heart. When that order is reinforced with threats of Courts Martial, it is scrupulously complied with. You don't ask questions; you don't seek clarification; when in doubt, you comply."

Commander Ennes reports on the horrible consequences the combination of the sneak attack itself, the willfully false report of the Court of Inquiry, and, the continuing efforts of both the US and Israeli governments denying the true facts of the attack have had on the Liberty survivors and their families. "I look back on this, especially in light of the knowledge I have since obtained that these men were drinking heavily and experiencing serious family discord. I wonder what I would have done with this information as their division officer. Normally, in those days, if one of your crew was having recurrent nightmares and difficulty sleeping and it was affecting his job performance, you would most likely suggest he go talk to the chaplain , or, talk to a doctor. The one thing I well understood, as did they, this they could not do. There is no way you could discuss your symptoms without going into the true facts of the attacks and the conspiracy to cover it up. That was clearly prohibited by the Silencing Order".

Mr. Ennes further notes that Mr. Six states he never again served with any other Liberty survivors. "His experiences aboard the Liberty had to be especially terrifying. To have been denied any opportunity of venting his experiences and his anger and frustration with the way the Navy and our government has treated us must necessarily exacerbate any mental injuries he suffered incident to the attack."

Phil Tourney, former Shipfitter - Pipe Fitter Third Class, U.S. Navy in his declaration states that " the horror of the attack, and, the recognition that we had been abandoned by our government throughout the attack, has been burned deep in my mind, and has haunted me throughout the rest of my life." Mr. Tourney relates that he received shrapnel wounds and burns from napalm attacks in the attack, but that he remained aboard the Liberty as it steamed back to Malta. He relates that at one point, he and three or four other crew members were visited in the sick bay compartment by Admiral Kidd. "He introduced himself, took off his stars off his collars, and said something to the effect that he wanted to talk to us, "Sailor to Sailor," and wanted us to tell him what we had observed . We related what each of us had observed. When we were finished

Admiral Kidd put his stars back on his collars and stated: "Now I want each of you to understand. You are never again to discuss anything you observed during the attack, or our discussion here today, with anyone. Not your mother, not your wife, Anyone. If you do, you will be Courts Martialed and put in jail or worse." " I attempted to bury the attack deep in my memory....I lived in fear of Courts Martial while I began experiencing flashbacks and nightmares about the attack. But for fifteen years, I did not dare discuss what I was experiencing. With anyone.

He continues: " I have no doubt that Admiral Kidd's Order prevented me from getting the care I needed......I'm told that the Navy is suggesting that we were free to discuss the fact the ship was attacked. That may have been the intent, but it surely wasn't the way it was conveyed.... I readily acknowledge that when he told me I couldn't discuss this with anyone, I took it to heart. He didn't offer any exceptions, and I didn't dare ask any questions. He meant to intimidate us, and he surely intimidate me. **** If the Navy truly felt the Order was misunderstood, it would have tried to convey that fact to the Liberty survivors. Instead it apparently seeks to deny such orders were issued... "

The Liberty's June 30, 1967 Plan of the Day, informed the crew that Sec Def has released to the press portions of the unclassified information obtained by the Court of Inquiry. It states: "Ship members are authorized to discuss with others only what is contained in the news release and no more. In other words you can say no more than exactly what the news release says. It is highly recommended that all hands refrain from discussing the incident with others, particularly news media representatives."

We also tender the January 10, 2007 letter from CAL Corrections reporting that the Department no longer retains any records relating to Mr. Six.

I note Mr. Exnicios' letter of 15 December 2006 declaring that "the Board is not an investigative body and will not assist you in obtaining much of the information listed in your request." Strangely, Mr. Exnicios cites SECNAVINST5420.193 as stating it is the applicant's responsibility to procure such evidence not contained in the official records of the Department of the Navy, and yet declines to use the Board's inherent power to obtain the requested documents, including those official navy department records. It is difficult to