based on the mere existence of a "service connected" condition, and that the award of a VA rating does not, in fact or by implication, permit the conclusion that an individual is unfit to perform military service. The Surgeon General advised Congressman Eshleman further that if you felt that an injustice had occurred in your case, you could petition the Board for Correction of Naval Records. You waited more than thirty-five years to do so. The Board substantially concurred with the opinion of the Surgeon General as expressed in his letter of 24 February 1969, a copy of which is attached. The Board was unable to conclude that you were unfit for duty on 19 October 1967, when you were released from active duty. As you know, you were examined and found fit for separation notwithstaning the residual effect of injuries to your non-dominant arm, abdominal muscles and intestines. The Board noted that you were able to work as a mechanic for several decades thereafter despite those residual effects.

The issue of entitlement to disability compensation for increases in the severity of a condition which occurs following a service member's release from active duty is a matter solely within the purview of the VA, which may raise or lower disability ratings throughout a veteran's lifetime. Fitness for duty and disability rating determinations made by the military departments in cases such as yours, however, are fixed as of the date of the service member's release from active duty. The fact that you were found not physically qualified for service in the Naval Reserve approximately four years after your release from active duty did not establish that you were unfit for duty in 1967, or create an entitlement to disability retirement or separation.

In view of the foregoing, your application has been denied.
You may request reconsideration of this decision. Your request must include newly discovered relevant evidence which was not reasonably available to you when you submitted your application. The evidence may pertain to the timeliness of your application or

to its merits. Absent such additional evidence, further review of your application is not possible.

It is regretted that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosure

BUMED:331:RMB:gjb (A)
[redacted]

24 FEB 1969

Honorable Edwin D. Eshleman
House of Representatives
Washington, D. C. 20515

Dear Mr. Eshleman:

This is in further reply to your inquiry concerning Mr. [redacted] a former member of the Naval Service.

Mr. Weaver's service medical record and clinical records of hospitalization have been reviewed. These records show that Mr. [redacted] sustained multiple fragment wounds to the right arm and abdomen on 8 June 1967 in the Mediterranean when his ship came under attack. He underwent exploratory abdominal surgery for repair of injuries to the colon and was subsequently transferred to the Naval Hospital, Philadelphia, Pennsylvania, for further treatment. Surgical repair was performed on the abdomen in mid-August and approximately two weeks later, he underwent a second exploratory surgical procedure. By 11 October 1967, he had regained almost complete functional use of his right hand, his abdominal wounds were well healed, and he was released from the hospital.

In order to establish an individual's eligibility for disability retirement benefits, under laws administered by the Naval Service, it must be determined that the member was unfit for the performance of military duty. Physical fitness for military duty should not be equated with the assignment of a disability rating by the Veterans Administration, since disability ratings may be awarded by that agency on the basis of the mere existence of a "service connected" condition. The receipt of disability compensation from the Veterans Administration does not, in fact, or by implication, permit the conclusion that an individual is unfit to perform military service. While the records established that Mr. [redacted] was hospitalized and treated for wounds received while serving aboard the USS LIBERTY, at the time of his discharge he was fit for duty.

BUMED [illegible]
[redacted]
[illegible]

If Mr. Weaver feels that an injustice has been done, he may petition the Board for Correction of Naval Records on the enclosed form.

Thank you for your continued interest in this matter.

Sincerely,

G. M. DAVIS
Vice Admiral, MC, USN
Surgeon General

Encl: (1) DD Form 149

Copy to:
OLA
BuMed-4511 1&2 #89-69
BuMed-33

RECEIVED
SEP 14 1994
VAPCC-MAUI

DEPARTMENT OF VETERANS AFFAIRS
[redacted]

## PSYCHOLOGICAL EVALUATION

**Re:** [redacted]
**SSN:** [redacted]
**Age:** [redacted]

**Referred by:** R. Morton, [redacted] and Bill Staton, State Veterans Service Officer [redacted]
**Dates of Evaluation:** June 6 and July 25, 1994
**Evaluation Procedures:** Clinical Interview; Mississippi Scale for Combat-Related PTSD; MMPI2

**Reason for Referral:** To assess current psychological status as related to depression and diagnosis of post traumatic stress disorder (PTSD).

**Background Information:** The following information was obtained in a clinical interview with Mr. [redacted] No military records nor prior medical records were available to this examiner at the time of the evaluation. Mr. [redacted] is here for this evaluation at the recommendation of Mr. Staton, so that, in his words, he can be "evaluated fairly." He has previously been evaluated in [redacted] but does not feel that he has had a "complete evaluation of all wounds."

Mr. [redacted] indicates that on June 8, 1967 he was in the fantail area aboard the USS Liberty during the Israeli six day war, and that the ship was in the combat zone but this has not been officially acknowledged by the US government. Mr. [redacted] reports that he suffered a number of life-threatening injuries when injured as the ship was under attack from Israeli torpedo gun boats. He states that he was told he would go to prison if he told anyone, since the ship reportedly was on an intelligence-gathering mission. He reports being aboard the ship for 6 weeks prior to the injury. He indicates that during the attack he suffered a number of internal injuries, spinal injury, and was in a coma for three days. He states he still has "60 pieces" of shrapnel in him, having originally received "101 shrapnel wounds, 35 of which were 4-6 inches deep." He is concerned about the shrapnel dislodging and creating a life-threatening situation as it did for a friend who died when the shrapnel severed his liver. | X

Mr. [redacted] indicates that he is presently 70% service-connected for PTSD, and 100% service-connected when all ratings are included. However, he states that his DD214 does not acknowledge that he was aboard the USS Liberty, and that he has never received any medals for his actions. He notes that he saved a shipmate's life, and that person requested that Mr. [redacted] be awarded the Navy Cross and the Bronze Start, but he has never received these. He does have a Purple Heart, but indicates that the papers omit the location (i.e. USS Liberty). He received a regular discharge from the service, rather than a medical discharge, and believes that "in 27 years, all my wounds have not been looked at." He describes the "horror" of having "torpedoes and a jet plane pointed at

VAF

me." His current symptoms include right-sided weakness, panic attacks, general anxiety, depression, memory problems, and a lack of trust in others. His panic attacks are so severe that he almost never leaves his house, and when he does is always accompanied by his wife. He also reports sleep disturbance, a loss of interest in things in which he used to find pleasure, intrusive thoughts/daydreams, and survivor guilt.

**Behavioral Note:** [redacted] was accompanied by his wife to both meetings. He presented information appropriately, but spoke in a halting, somewhat monotone voice. His affect was blunted and his mood was marked by anxiety.

[redacted] understood the nature and the purpose for the evaluation. He participated in all tasks presented to him, comprehending what was requested and complying without reservation.

The results which follow are considered to be an accurate estimate of his current level of functioning.

**Results:** [redacted] test findings are highly consistent with those found in individuals who have experienced a post-traumatic stress disorder (PTSD) related to a combat situation. On the Mississippi Scale and the subscales of the MMPI2 which assess PTSD, his scores exceeded the cutoff scores used to classify an individual as having a high probability of experiencing PTSD.

Mr. [redacted] clinical profile on the MMPI2 was a valid one, with no evidence that he attempted to make himself look better or worse than he actually is. The profile was marked by extreme anxiety and feelings of alienation and isolation. The focus on his physical concerns, and the depression which accompanies this, were also quite evident. The pattern would strongly suggest that he sees the world through his physical pain and his somatic concerns, to the point of being "paralyzed" and unable to resume taking charge of his life. He has become so isolated and alienated, and is so distrusting of others, that normal social interactions are not part of his daily life. He has become extremely dependent upon his wife, and independent actions are few. Given the severity of his anxiety, and his immobility because of the panic attacks, joining the normal workforce does not appear possible in the near future.

**Recommendations:**

It is recommended that [redacted] continue to receive all appropriate services through the Vet Center and through the Primary Care Clinic. Focused psychiatric treatment to reduce the panic attacks and generalized anxiety is strongly recommended.

It is recommended that a knowledgeable health care provider discuss with Mr. Weaver the location of his shrapnel and the probability of these pieces dislodging and causing further damage or creating a life-threatening situation.

Thank you for requesting this consultation.

Kathleen M. McNamara, PhD

Kathleen M. McNamara, Ph.D.
Clinical Psychologist

McCauley 9-11

LAW OFFICES

SURREY, KARASIK, GOULD AND GREENE

WOODWARD BUILDING

WASHINGTON, D. C. 20005

TELEPHONE
AREA CODE 202
737-9150

WALTER STERLING SURREY
MICHAEL GOULD
DUMOND PECK HILL
SAMUEL V. GOEKJIAN
LEONARD BRAMAN
NORMAN R. VANDER CLUTE

MONROE KARASIK
FRANCIS T. GREENE
SEYMOUR J. RUBIN
GEORGE L. CHRISTOPHER
ROBERT L. RANDALL
MICHAEL NUSSBAUM

MARGUERITE S. OWEN
ALAN ROY DYNNER
MICHAEL KANE
ALAN J. BERKELEY
PAUL F. ROTHSTEIN
HARLAN L. WEISS

GILBERT C. MILLER
WARREN G. WICKERSHAM
MICHAEL G. WILSON
JOSEPH J. BRIGATI
GENE A. BLUMENREICH

MONROE OPPENHEIMER
JOSEPH S. FARLAND
LUCIEN HILMER
OF COUNSEL

EUROPEAN OFFICE:
52, AVENUE DES CHAMPS ELYSEES
PARIS 8, FRANCE-TEL: 359⁴10-31

CABLE:
SURMON WASHINGTON, D.C.

August 21, 1968

VAC Phila
XC 23 98 42 R
8-29-68

RECEIVED
SEP 19 1968
ADJUDICATION
PHILA., PA.

Veterans' Administration
2033 M Street, N.W.
Washington, D.C.

Attn: Adjudication Office

Dear Sirs:

This firm represents [redacted] in connection with his claim against the State of Israel on account of the personal injuries which he sustained in the Israeli attack on the U.S.S. Liberty in the Mediterranean off the coast of Israel on June 8, 1967.

Mr. [redacted] whose Service No. [redacted] was a Seaman in the Navy and was separated from active service at the [redacted] Naval Station on [redacted]

Shortly thereafter he was examined by doctors at a VA hospital in Philadelphia for evaluation and determination of his disabilities. He was rated 60% disabled and has been receiving disability compensation accordingly.

I request that you send me copies of all medical reports pertaining to the determination and evaluation of Mr. Weaver's injuries and disabilities. Mr. [redacted] authorization for this purpose is enclosed. I do not have the VA claim number, but Mr. [redacted]'s full name and service number are stated above. His Selective Service No. is [redacted]; his Social Security No. is [redacted] He entered active service in the Navy [redacted] and, as noted above, he was separated from active service on [redacted]

It will be appreciated if the requested data can be furnished to us at your early convenience.

Yours very truly,

Lucien Hilmer

Lucien Hilmer

ATTACHED
9/26/68
DATE INITIAL

LH:meg
Enclosures

**NAVAL MESSAGE**
OPNAV FORM 2110-28 (REV. 3-61)

| RELEASED BY | | DRAFTED BY | | PHONE EXT NR | PAGE | PAGES |
|---|---|---|---|---|---|---|
| L. D. MILLER | | G231/Kirk | | 42746 | OF | |
| DATE | TOR/TOD | | ROUTED BY | CHECKED BY | | |
| 10 June 1967 | | | | | | |

| MESSAGE NR | DATE/TIME GROUP (GCT) | PRECEDENCE | FLASH | EMERGENCY | OPERATIONAL IMMEDIATE | PRIORITY | ROUTINE | DEFERRED |
|---|---|---|---|---|---|---|---|---|
| | Jun 67<br>101830Z | ACTION | | | | XX | | |
| | | INFO | | | | XX | | |

FROM: BUPERS

TO: [redacted]

INFO: [redacted]

UNCLAS

WESTERN UNION
SENDING BLANK

CALL LETTERS NOC 023 GOVT CHARGE TO GNO ~~XX~~ 10 June 1967

WASHINGTON, D.C. PAGE ONE OF TWO
Mr and Mrs [redacted] REPORT DELIVERY
DO NOT PHONE

With concern I confirm on behalf of the United States Navy that your son, [redacted] USN was seriously injured on 8 June 1967 when the USS LIBERTY was accidentally attacked by Israeli forces in the eastern Mediterranean Sea.

Your son is presently hospitalized on board the USS AMERICA

where you are assured that he is receiving the best possible care and treatment. When further reports are available concern-

(ILL/INJURED – Primary and Secondary)

PLEASE TYPE OR WRITE PLAINLY WITHIN BORDER—DO NOT FOLD

UNCLASSIFIED

*NOTE.—Shaded areas to be completed by Input Activity*

# RATING DECISION

| | | |
|---|---|---|
| 1. COPIES TO: [X] INS. [ ] MEDICAL [ ] R & E OR OE FOLDER [ ] OTHER (Specify) | 2. ADDRESS OF VETERAN (If required on copy) [redacted] | 3. CLAIM NUMBER C- [redacted] |
| 4. TYPE OF RATING: 1 B | 5. SEX OF VET. 1—MALE 2—FEMALE: 1 | 6. INITIALS & SURNAME OF VETERAN [redacted] |
| 7. BRANCH OF SVC: 2 | 8. ACTIVE DUTY DATES (Month, day year) EOD [redacted] RAD [redacted] | 9. COMBAT DISAB. 1—NONE 2—COMPENSABLE 3—NON COMPENS. 4—BOTH: 2 |
| 10. NO. OF S/C DISAB. (0 through 9) (9 to show 9 or more): 6 | 11. EMPLOYABILITY 1—EMPLOYABLE OR NOT AN ISSUE. 2—UNEMPLOYABLE: 1 | 12. DATE OF BIRTH (Month, day, year) [redacted] |
| 13. FUTURE DATE CONTROL (Mo., Reason code, yr.) ~~2-01-70~~ NO EXAM | 14. COMPETENCY 1—COMPETENT OR NOT AN ISSUE 2—INCOMPETENT: 1 | 15. DATE OF DEATH |
| 16. DATE OF LAST EXAMINATION 2-21-68 | 17. DATE THIS RATING 3-12-68 | |

18. NARRATIVE

J. Original claim.

I. Service connection for SFW legs, hip, back, arms and stomach injury.

F. VA examination indicates veteran was injured aboard USS LIBERTY when it was attacked by Israel 6-5-67.

VA examination shows a right ulnar neuropathy result of SFW right arm with muscle atrophy, right forearm and intrinsic muscles of hand and weakness right hand grip. He also had residual scars of right upper arm which penetrated the muscles. On abdomen he has two laparotomy scars due to prior colostomy and residual scars from SFW of abdomen. X-ray shows retained metallic foreign bodies in right lower abdomen. The examination also shows three residual scars of right thigh and multiple shell fragment wounds of posterior aspect right shoulder. Service records show the following disabilities:

1. SC 38 USC 310 (INC VE)

8516 30% from 10-20-67
RIGHT ULNAR NEUROPATHY RESULT OF SFW RIGHT ARM WITH MUSCLE ATROPHY RIGHT FOREARM AND INTRINSIC MUSCLES OF HAND AND WEAKNESS RIGHT HAND GRIP

5319 30% from 10-20-67
SFW OF ABDOMEN WITH P.O. LAPAROTOMY SCARS, SFW SCARS AND RETAINED METALLIC FOREIGN BODIES IN RIGHT LOWER ABDOMEN

5306 10% from 10-20-67
SFW RIGHT UPPER ARM WITH RESIDUAL SCARS

7805 10% from 10-20-67
SFW RIGHT THIGH (3 SCARS)

30 SEV 20 MOD 10-MIL

10-MOD 30 MOD SEV.

... TO ... ILL. 1968 VA ...

Copy to ... Lebanon ... 12-6-74 ...

UAF

**RATING DECISION CONTINUATION SHEET**

NAME OF VETERAN: [redacted]

CLAIM NUMBER: C- [redacted]

*PAGE 2 OF RATING DATED:* 3-12-68

7805 10% from 10-20-67
SFW MULTIPLE POSTERIOR ASPECT RIGHT SHOULDER

7805 0% from 10-20-67
SCAR, RESID. SFW RIGHT HIP

C 60%

35. RESIDUALS, LEFT ARM AND LEG, not shown on last VA examination 2-29-68.

| 19. OVER SIX | 20. SPECIAL MONTHLY COMPENSATION | | | | 21. SPECIAL PROVISION CODE |
|---|---|---|---|---|---|
| | A. PARA. CODE | B. LOSS USE | C. ANAT. LOSS | D. OTHER LOSS | 1—PAR. 29 3—VAR. 1321 5—ANAL. RATING 2—PAR. 30 4—VAR. 1322 6—OTHER OR COMB. |

22. CLAIMANT REPRESENTED BY: ☐ AL ☐ VFW ☐ DAV ☐ ARC ☐ AMVETS ☐ OTHER *(Specify)*

23. RATING BOARD NO.: 1

24. STATION NO.: 310 rs

| 25. RATING SPECIALIST *(Medical)* | 26. RATING SPECIALIST *(Legal)* | 27. RATING SPECIALIST *(Occupational)* |
|---|---|---|
| S. PALLANTE, M.D. CHM. ☐ | A. L. BURDINE CHM. ☒ | J. TOMASELLO CHM. ☐ |

VA FORM AUG 1963 **21-6796b** EXISTING STOCK OF VA FORM 21-6796b, MAY 1962, WILL BE USED.

VAF