order thus ended any chance of alleviating the loss of life and damage to which USS LIBERTY was being subjected.

Although the CINCUSNAVEUR endorsement to the LIBERTY Court of Inquiry may have been stamped "TOP SECRET" for reasons of "State," we do not hesitate to observe here that, had its contents become public knowledge at the time, it would have been greeted with derision and disgust by every officer and sailor in our Fleet, world-wide.

In the long-continued and still continuing attempt by the U. S. Government – and the Navy – to keep the true facts of the attack on the USS LIBERTY from general knowledge – as well as the efforts of its crew to save their ship, which they accomplished without outside assistance – their rightful place in the annals of the U. S. Navy's historic tradition – "Don't Give Up The Ship" – has been denied to them. We submit that it is time – and there is still time – to right a great wrong.

As we have indicated briefly above, Mr. Secretary, The Liberty Veterans Association – the survivors of the attack – have on 8 June 2005 filed with the Secretary of the Army, in his capacity as Executive Agent for the Secretary of Defense, a formal and well-documented Report of War Crimes Committed Against U.S. Military Personnel on June 8, 1967, during the Israeli attack on the USS LIBERTY on that date. That documented report seeks to generate the convening, by the Secretary of the Army, of an investigating body to undertake "the complete investigation [of the attack on LIBERTY] that should have been carried out thirty-eight years ago." One of the several War Crimes specifically reported in that submission by the survivors involves the actions of the attacking Israeli forces in firing at and destroying or sinking the humanitarian life rafts that the LIBERTY had launched, or was preparing to launch, in an effort to save some of her wounded personnel. At least one survivor witness before the 1967 Navy Court of Inquiry testified, under oath, specifically on those actions by the Israeli forces – but that portion of his sworn testimony was omitted from the Court's written record – or was thereafter deleted from the official record of those proceedings as held and produced (belatedly) by the Department of the Navy as its official custodian.

Because of the official interest that the Secretary of the Army thus has in these circumstances – and because of the relevance of this entire communication to the consideration that he is now giving to this Department of Defense matter – we are simultaneously delivering a copy of this letter to the Secretary of the Army for his information and consideration as well.

We most respectfully ask, Mr. Secretary, that you carefully consider our foregoing presentation – that you examine and appraise, objectively, the official records of your Department to which we have referred, and the validity and

accuracy of those records that we have challenged -- and that you now, before it is too utterly late, both consent to and support the efforts of the LIBERTY survivors and their supporters to generate a full, fair, and objective United States Government investigation into the facts and records of the 8 June 1967 attack by Israel upon the USS LIBERTY (AGTR-5).

Most sincerely, and very respectfully,

Merlin H. Staring
Rear Admiral, JAGC, USN (Ret.)

Clarence A. (Mark) Hill, Jr.
Rear Admiral, USN (Ret.)

Copy to:
The Secretary of the Army

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374-5066

IN REPLY REFER TO
5890
Ser 15.151.A1/0198
March 16, 2005

The Honorable Rob Simmons
House of Representatives
Washington, DC 20515

Dear Mr. Simmons:

This responds to your March 8, 2005, letter requesting the Navy's position on the findings of the "Independent Commission of Inquiry into the Israel Attack on the USS LIBERTY, the Recall of Military rescue Support Aircraft While the Ship Was Under Attack, and the Subsequent Cover-Up by the United States Government" as introduced during extension remarks by Representative Conyers in the House of Representatives on October 7, 2004. This letter provides background information about the attack on the USS LIBERTY (AGTR-5) and the Navy's investigation.

The attack on USS LIBERTY took place at approximately 1358 hours on June 8, 1967. It occurred during the height of the Six Day War between Israel and the Arab states of Egypt, Syria, and Jordan. The attack was carried out by Israeli aircraft and torpedo boats, resulting in the deaths of 34 U.S. servicemen and injuries to 171 LIBERTY crewmen. The Government of Israel, which had no prior knowledge of LIBERTY's mission, has consistently maintained that the attack was the result of an error induced in part by a misidentification of LIBERTY as the Egyptian ship "EL QUSEIR."

Admiral John S. McCain, Jr., Commander-in-Chief, U.S. Naval Forces, Europe, ordered a Court of Inquiry to investigate the circumstances surrounding the attack. That investigation focused primarily on U.S. military communications problems prior to the attack and the heroic efforts of LIBERTY's crew in damage control during the aftermath of the attack. The Court of Inquiry, which heard testimony from several officers and enlisted men from LIBERTY, including the commanding officer, produced an exhaustive record of proceedings over 650 pages in length.

5890
Ser 15.151.A1/0198
March 16, 2005

The Court of Inquiry was the only United States Government investigation into the attack. The Navy plans no further investigations into the incident.

The Court of Inquiry's record of proceedings was declassified and is available to the public. A copy may be obtained from the Office of the Judge Advocate General (Code 15), 1322 Patterson Avenue SE, Suite 3000, Washington Navy Yard, DC 20374-5066. The requester is required to pay the reproduction costs.

As a result of the incident, the Department of State insisted that Israel take responsibility for the attack. The Government of Israel accepted that responsibility, apologized for the attack, and paid United States Government claims for the deaths and injuries of U.S. personnel, and for damages to the ship.

Servicemen serving on USS LIBERTY during the Israeli attack qualify for the Combat Action Ribbon and the Presidential Unit Citation. Additionally, on August 27, 1991, those members who died as a result of injuries sustained during the attack were officially recognized by the Chief of Naval Personnel as having been "battle casualties."

I assure you that the Navy remembers with gratitude and pride all U.S. Navy personnel, including those of USS LIBERTY, who have so bravely sacrificed their lives in the service of their country.

Please let me know if I can be of further assistance.

Sincerely,

Jane G. Dalton

JANE G. DALTON
Captain, JAGC, U.S. Navy
Assistant Judge Advocate General
(Civil Law)

TOP SECRET
DECLASSIFIED

1-3
5830
Ser ~~1627/00~~ 00020/00
18 June 1967

FIRST ENDORSEMENT on ltr of RADM Isaac C. KIDD, USN, 111645/1100 of 18 June 1967

From: Commander in Chief, U. S. Naval Forces, Europe
To: Judge Advocate General

Subj: Court of Inquiry to inquire into the circumstances surrounding the armed attack on USS LIBERTY (AGTR-5) on 8 June 1967 (U)

1. Readdressed and forwarded.

2. On 8 June 1967, the USS LIBERTY suffered an unprovoked attack by Israeli air and naval forces in international waters off the coast of the United Arab Republic. The Court of Inquiry, convened by CINCUSNAVEUR to look into the circumstances and prepare findings related to this attack, has completed its deliberations which are forwarded herewith.

3. It is the opinion of the convening authority that USS LIBERTY was operating in international waters in conformance with the most recent guidance received by her provided by competent authority. It is important to note that there were in fact command decisions made by responsible authorities subsequent to receipt by LIBERTY of the guidance under which she was operating. These subsequent decisions and actions, which the ship did not receive for a combination of several reasons, could have resulted, had they been received in timely fashion, in the ship being as much as 100 miles away from the position in which she found herself at 1200Z on 8 June.

4. The circumstances, when viewed in retrospect through the record of proceedings, indicate that any one or combination of the several communications delays and/or non-receipts varied in the reasons therefor from personnel error to technical difficulty, including errors in judgment.

5. Had LIBERTY not been attacked, the probability is high that none of the aforementioned problem areas would have been identified as critical which is usually the case in circumstances of this sort. It is important to keep in mind that decisions subsequent to LIBERTY's initial operational

X

GROUP - 3
Downgraded at 12 year intervals
Not automatically declassified

PAGE 1 OF 5 PAGES

COPY 1 OF 9 COPIES

TOP SECRET
DECLASSIFIED

TOP SECRET
DECLASSIFIED
FF1-3
5830

tasking were based upon no known new evidence of potential danger to the ship; but were rather based upon factors other than operational in nature. It is the conviction of the convening authority, that, had new hard intelligence been available and been the basis for new decisions governing LIBERTY's movements, follow-on actions taken with specific regard to guaranteeing timely delivery of such critical guidance would have been handled differently. Such was not the case. Therefore, normal formal procedural practices were followed, and the new command decisions were relayed to the ship in routine fashion, i.e. by standard fleet broadcasts rather than by emergency direct communication capabilities which were available--such as the HICOM net.

6. It is the further conviction of the convening authority in regard to the foregoing, that prospective implementors, such as the ship itself, of action directed by higher authority, when the immediacy of action is critical, must be informed of the planned action concurrent with the transmission of action instructions by the higher authority involved. In this respect, [we found LIBERTY's situation being discussed at the highest command levels where decisions were being made and instructions issued without taking concurrent precautions to inform the ship of the planned actions by the same most rapid means of communications available--in this case, telephonic and voice-radio systems.] On the other hand, however, there was apparently absolutely no new intelligence and operational evidence at the time of the aforementioned discussions to dictate utilizing such special and high precedence communications capabilities.

7. In summary on this point, certain remedial measures for future situations are indicated, some of which are within the capabilities of this headquarters. These will be implemented by CINCUSNAVEUR and his subordinates, to include, for example, concurrent paralleling intentions known to CINCUSNAVEUR from higher authority direct to prospective action subordinates immediately upon receipt of the guidance in question. It must be borne in mind, however, that here again, the best professional judgments will dictate on a case by case basis the degree of urgency required. Such was the case in the LIBERTY incident and, nothing in the findings of fact disclosed justifiable rationale for taking emergency measures to get the information of planned OP area changes to the ship, other than the fact of the attack itself. The LIBERTY incident provides a classic example of the devastating effects complete surprise produces.



TOP SECRET
DECLASSIFIED

TOP SECRET
FF1-3
5830

8. Further to the foregoing, the convening authority has reviewed the proceedings most carefully to determine whether or not there was any indication received by the ship's embarked capabilities prior to the attack which would have dictated a need for emergency measures. Every piece of available evidence indicates that such was not the case.

9. On the matter of command and control, the convening authority, as Naval subordinate to USCINCEUR was exercising operational control of LIBERTY through his subordinate, Commander, Sixth Fleet. The fact that the precise operational guidance applicable to LIBERTY at the time of the attack had been received from still higher authority, in no way altered the full responsibility for the ship resting on CINCUSNAVEUR himself. There is no question but that CINCUSNAVEUR had the continuing responsibility for monitoring the position of the ship and insuring the ship's relative safety while in assigned areas. Further, there was no evidence available to CINCUSNAVEUR, up to the moment of the attack itself, to indicate the ship was in jeopardy to a degree beyond normal and continuing risks extant in any operational situation proximate to the shores of warring nations.

10. In summary, in this instance as in others throughout recent years, it was the judgment of the Commander in Chief, U.S. Naval Forces, Europe, that the technical research efforts of USS LIBERTY were well worth the calculated risks involved; keeping in mind that proper precautionary measures had already been taken by CINCUSNAVEUR and by his subordinate, COMSIXTHFLT, on 6 June (two days before the attack), both of which directives all concerned assumed were known to USS LIBERTY. The record discloses, however, that while LIBERTY had received the CINCUSNAVEUR guidance to COMSIXTHFLT, LIBERTY had not received COMSIXTHFLT's message of 6 June wherein details for the implementation of this tempering and discretionary guidance had been provided, together with proper provisions for the protection of the ship in the event of an emergency. 3

11. On the technical and material side, the convening authority noted with great interest the remarkable efficiency of the coordinated Israeli air and surface attack. The efficacy of air-delivered rockets was particularly noteworthy with regard to their penetrating capabilities and devastating accuracy. Preliminary evidence of damage based upon limited available information at this time, indicates long lead time procurements will require



TOP SECRET

DECLASSIFIED

TOP SECRET DECLASSIFIED

approximately one year. Major overhaul requirements approximately two to four months. Aggregate dollar costs total some twelve to fourteen million dollars.

12. On the matter of personnel, heroism was the order of the day. The Commanding Officer is being recommended for the Congressional Medal of Honor and the ship for the Presidential Unit Citation.

13. It is the conviction of the convening authority that the possibility is high that the ship would have been lost completely had there not been the highest order of damage control competence on board combined with the fact that the ship had secured from General Quarters for drill only minutes before the attack took place.

14. Visual identification procedures, and techniques require early attention. We, as well as the Israelis, were apparently deficient in our recognization competence, compared to World War II levels of proficiency. Current United States ship profiles are not readily locatable except in such documents as Jane's "Fighting Ships". Where we have active ship configurations susceptible to confusion with other ships of other nations, we should explore immediately improved identification measures such as national colors on vertical and horizontal surfaces using high visual intensity paints, a safeguard not susceptible to being shot down in the opening stages of an action as was the case in the LIBERTY incident. Intense fires on the ship coupled with herculean efforts by the engineer department to increase speed both produced heavy black smoke which compounded the recognition problem facing the attacking forces.

15. The foregoing comments by the convening authority lead to an overall conclusion that the attack was in fact a mistake; that the element of complete surprise without inquiry eliminated any possibility for a timely government to government announcement of the ship's presence had we been asked; that communication shortfalls resulted in delays in delivery of operational traffic which, had they not occurred, might have resulted in the ship being at a safer distance off shore. The lessons learned in these instances are reminiscent in many respects of those learned after the attack on Pearl Harbor as they apply to the need for complete and free exchange of mission and operational information between responsible authorities and fleet units themselves. In the final analysis, it is this same fleet unit that must enjoy timely advice to be effective. No useful purpose is served by complete knowledge and awareness of decisions at high levels without appropriate concurrent actions stemming therefrom at the lowest echelons in the critical chain.



TOP SECRET

TOP SECRET DECLASSIFIED

FF1-3
5830

16. Communications limitations continue with us. Improvements in equipment never seem quite able to fully offset load increases and the ever present personnel error. Where such combine with staffing delays and completely unexpected actions through mistake by another state, the results cannot be other than explosive in international potential.

17. The proceedings and findings of the Court of Inquiry are approved, based upon knowledge available as of 191425Z.

JOHN S. McCAIN, Jr.

Reproduction of this document in whole or in part is prohibited except with permission of the issuing office or higher authority.

AR 414



TOP SECRET DECLASSIFIED

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON DC 20374-5066

IN REPLY REFER TO

22 September 2005

RADM Clarence A. Hill, Jr., USN (Ret.)
P.O. Box 663
Front Royal, VA 22630

Dear Admiral Hill:

Thank you for your letter to Secretary England concerning the Israeli attack on USS LIBERTY. I am responding on behalf of the Secretary.

In his endorsement of the Navy investigation, Admiral McCain found that LIBERTY suffered an unprovoked attack by Israeli air and naval forces in international waters. The U.S. Secretary of State communicated to the Government of Israel, "the attack must be condemned as an act of military irresponsibility reflecting reckless disregard for human life." The Government of Israel formally communicated its sincere expression of deep regret and subsequently paid U.S. claims for the deaths, injuries, and damages caused in the attack.

In view of the facts cited above, I must renew the conclusions of previous Navy correspondents, to wit: there is no purpose to further investigation.

As Captain Dalton noted in her letter of March 16th, we recognize and honor the sacrifice and uncommon bravery demonstrated by the officers and crew in LIBERTY on that fateful day. Although we may disagree on the matter of the Navy's investigation, there can be no disagreement about the heroism of the men on that fine ship.

Sincerely,

PATRICK J. NEHER
Captain, Judge Advocate
General's Corps, U.S. Navy
Deputy Assistant Judge Advocate
General (International and
Operational Law)

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON DC 20374-5066

IN REPLY REFER TO

5800
10/325
February 24, 2006

Mr. Moe Shafer
Blazer Associates, Inc.
4994 Roswell Road, Suite 33
Marietta, GA 30068

Dear Mr. Shafer:

Thank you for your letter to Secretary Rumsfeld concerning a Report on War Crimes against USS LIBERTY.

The Department of Defense directive to which you refer concerning investigations into incidents such as that involving LIBERTY is dated 9 December 1998 and is prospective in application. However, as you are aware, a Navy Court of Inquiry investigated the facts and circumstances concerning the attack on LIBERTY soon after it occurred in 1967. In his endorsement of the investigation, Admiral McCain found that LIBERTY suffered an unprovoked attack by Israeli air and naval forces in international waters. The Secretary of State communicated to the Government of Israel, "the attack must be condemned as an act of military irresponsibility reflecting reckless disregard for human life." The Government of Israel formally communicated its sincere expression of deep regret and subsequently paid U.S. claims in full for the deaths, injuries, and damages caused in the attack, thus closing the matter between the two governments.

Further investigation with respect to the Report on War Crimes is not warranted, and there are no plans to do so.

We recognize and honor the sacrifice and uncommon bravery demonstrated by you, the officers, and other crewmembers in LIBERTY on ~~that fateful day.~~

As always, if I can be of any further assistance, please let me know.

Sincerely,

J. E. BAGGETT
Deputy Assistant Judge Advocate
General (International and
Operational Law)

2 September 2005

MEMORANDUM FOR SENATOR WARNER

Dear Senator Warner:

It's hard to believe, but it has been over 30 years since we last served in the U.S. Navy together - - you as Secretary of the Navy and I as your Judge Advocate General. Since then I have had only one or two opportunities to speak with you during your illustrious years as a United States Senator - - and then on matters that were undoubtedly relatively inconsequential, since I, at least, have completely forgotten them.

I seek an opportunity to meet and talk with you now, however, for at least a few brief minutes, on a matter that is of genuine and substantial importance, not only to a substantial group of our former Navy and Marine Corps "shipmates, " but to the American public and to our ideal of a fair and honest United States Government. I refer to the matter of the June 1967 Israeli air and surface attack upon the USS LIBERTY (AGTR-5) in the eastern Mediterranean Sea during the "Six-Day War." That attack killed 34 Americans - - 33 U.S. Navy personnel and one American civilian; it wounded an additional 172 American sailors; and it so devastated the $40,000,000 LIBERTY that she was ultimately sold for a pittance as scrap.

At the time of that attack I was the senior Navy Judge Advocate on the staff of Admiral John Sidney McCain, Jr., CINCUSNAVEUR. Admiral McCain convened a Navy Court of Inquiry to investigate all the circumstances of the attack, and in due course the record of that Court's investigation was sent to me for my legal review - - which was standard Navy practice, and what I was there for. I had the 650-page record for a total of about 18 hours, during 15 of which I was concentrating solely upon it. At the end of that time, after Admiral McCain had learned that I was having problems finding evidence in the record to support some of the Court's findings, but was only about a third of the way through it, the Admiral had the record withdrawn from me, and I had no input into his action upon it.

Not until many years later did I ever see the approving endorsement that Admiral McCain had placed on the Court's record - - on the very day that he withdrew it from me. And not until many years later did I learn, from USS LIBERTY survivors and other competent witnesses, many of the facts of the attack and facts concerning the conduct of the Court of Inquiry.

Senator Warner, in the attached letter, which I joined in signing on 27 July 2005, I have related to the present Secretary of the Navy the facts which convince me - - and which I believe should convince any conscientious and objective official, lawyer or otherwise - - that the Navy Court of Inquiry of 1967 was a near-total farce, and that it could neither then nor now be considered an honest, or a thorough, or a reliable investigation of the major tragedy that was the attack upon the USS LIBERTY.

In the 38 years since the LIBERTY attack, the survivors of that attack have been subjected to unjust treatment in many and diverse ways. Among other things, they have been denied the honor, that should have been theirs, of recognition as prime exemplars of the Navy's historic tradition: "DON'T GIVE UP THE SHIP." By the same token, the American public has during that time been fed a totally erroneous and a dishonest version of the history of that attack.

This matter has been raised and has resurfaced now through the filing with the Secretary of the Army, by the USS LIBERTY survivors, of a formal Report of War Crimes committed by the state of Israel on 8 June 1967 through its unprovoked, unjustified, and unlawful attack upon the USS LIBERTY and her complement of 294 American officers and crew. That Report of War Crimes was filed with the Secretary of the Army on 8 June 2005, exactly 38 years after the attack. It is the responsibility of the Secretary of the Army, as the Executive Agent for the Department of Defense in such matters, to supervise the execution of the <u>thorough</u> investigation of such reported incidents - - and it is the responsibility of the Secretary of the Navy to provide for the prompt reporting <u>and investigation</u> of reported incidents committed against members of his department. Finally, it is DOD policy to ensure that all such incidents, where appropriate, be remedied by corrective action.

With the filing of their Report of War Crimes, Senator Warner, the survivors of the USS LIBERTY attack have formally invoked those various responsibilities of the Department and the Secretary of Defense, the Secretary of the Army, and the Secretary of the Navy as summarized briefly above. The official record of the 1967 Navy Court of Inquiry, as now maintained and supplied by the Department of the Navy, quite literally demonstrates on its very face that it fell far, far short of constituting the inquiry "into all the pertinent facts and circumstances leading to and connected with the armed attack; [the] damage resulting therefrom; and [the] deaths of and injuries to naval personnel" as had been directed by its convening authority. In addition, the 5-page approving endorsement that Admiral McCain hastily placed on that record on 18 June 1967 fails even to note that the Court had nowhere nearly fulfilled its directed mission - - and he failed to send the record back for further work to fulfill that mission as it was well within his power to do. Finally, among a number of other respects in which he failed in or abdicated his command responsibilities, the convening authority relied at some points in his endorsement upon incomplete consideration of evidence in the record, and at others purported to reach erroneous, unsubstantiated, or misleading conclusions from the record which it was his duty to have read and considered.

Senator Warner, I think you know me well enough to know that I do not present this matter for your attention lightly, or without having considered the available documents and evidence closely and with a critical eye. I most respectfully ask of you, Sir, that you read our attached Liberty Alliance letter to the Secretary of the Navy, <u>and</u> the two important and revealing documents we have attached to it as Tabs A and B. With the full understanding of the matter that I believe those more detailed documents will give to you as an experienced attorney, and as one with long and impressive Navy credentials and experience at all levels, I earnestly ask that you make your conclusions known to the

Secretary of the Navy and to the Secretary of the Army who now currently have this matter pending before them for consideration in light of their respective responsibilities.

I do have one additional and concluding point that I wish to make with you, Senator, that I would prefer to deliver orally. I hope, Sir, that you will give me that brief opportunity.

Very respectfully,

Merlin Staring

Merlin H. Staring
RADM, JAGC, USN (Ret.)

JOHN WARNER, VIRGINIA, CHAIRMAN

JOHN McCAIN, ARIZONA
JAMES M. INHOFE, OKLAHOMA
PAT ROBERTS, KANSAS
JEFF SESSIONS, ALABAMA
SUSAN M. COLLINS, MAINE
JOHN ENSIGN, NEVADA
JAMES M. TALENT, MISSOURI
SAXBY CHAMBLISS, GEORGIA
LINDSEY O. GRAHAM, SOUTH CAROLINA
ELIZABETH DOLE, NORTH CAROLINA
JOHN CORNYN, TEXAS
JOHN THUNE, SOUTH DAKOTA

CARL LEVIN, MICHIGAN
EDWARD M. KENNEDY, MASSACHUSETTS
ROBERT C. BYRD, WEST VIRGINIA
JOSEPH I. LIEBERMAN, CONNECTICUT
JACK REED, RHODE ISLAND
DANIEL K. AKAKA, HAWAII
BILL NELSON, FLORIDA
E. BENJAMIN NELSON, NEBRASKA
MARK DAYTON, MINNESOTA
EVAN BAYH, INDIANA
HILLARY RODHAM CLINTON, NEW YORK

CHARLES S. ABELL, STAFF DIRECTOR
RICHARD D. DeBOBES, DEMOCRATIC STAFF DIRECTOR

# United States Senate

COMMITTEE ON ARMED SERVICES
WASHINGTON, DC 20510–6050

February 22, 2006

Rear Admiral M. H. Staring, JAGC, USN (Ret.)
2304 Haddon Place
Heather Hills-Belair
Bowie, MD 20716

Dear Admiral Staring,

Thank you for your Memorandum of September 2, 2005, regarding the Navy's investigation into the Israeli attack on USS LIBERTY (AGTR-5), which occurred on June 8, 1967. I respect your concerns as a leader of the Liberty Alliance and the points you raise about the investigation as a former Judge Advocate General of the Navy and the Staff Judge Advocate for Commander in Chief, U.S. Naval Forces, Europe, at the time of the attack.

I forwarded your letter to the Deputy Secretary of Defense and former Secretary of the Navy, Gordon R. England, for his review. I recently received the attached letter in response from the Assistant Judge Advocate General of the Navy for Civil Law on behalf of Secretary England, which concluded that further investigation is not warranted.

I appreciate that this is a matter of great importance, particularly to the brave men who served in USS LIBERTY, who endured the attack and saved their ship, and to the survivors and families of the wounded and those who died and their supporters. I noted from your Memorandum that they have filed a formal Report of War Crimes with the Secretary of the Army as the Executive Agent for the Department of Defense and view that as an appropriate course of action.

With kind regards, I am

Sincerely,

John Warner

John Warner
Chairman

Enclosure

DE-45

DEPARTMENT OF THE NAVY
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON DC 20374-5066

RECEIVED
SENATE ARMED SERVICES
COMMITTEE

06 JAN 26 PM 4:03

IN REPLY REFER TO
5890
Ser 01/001
11 Jan 06

The Honorable John Warner
Chairman
Committee on Armed Forces
United States Senate
Washington, DC 20510-6050

Dear Mr. Chairman,

Thank you for your letter of 26 September to Secretary England concerning whether further investigation of the Israeli attack on USS LIBERTY (AGTR 5) is warranted. I am responding on behalf of the Secretary.

Admiral John S. McCain's endorsement of the Navy investigation found that USS LIBERTY (AGTR 5) suffered an unprovoked attack by Israeli air and naval forces in international waters. The Secretary of State communicated to the Government of Israel, "the attack must be condemned as an act of military irresponsibility reflecting reckless disregard for human life." The Government of Israel formally communicated its sincere expression of deep regret and subsequently paid U. S. claims in full for the deaths, injuries and damages caused in the attack. In view of those facts, further investigation is not warranted.

We recognized and honored the sacrifice and uncommon bravery demonstrated by the officers and crew of the USS Liberty (AGTR 5) on that fateful day.

If I can be of any further assistance, please let me know.

Sincerely,

H. H. DRONBERGER
CAPT, JAGC, U. S. Navy
Assistant Judge Advocate General
(Civil Law)

DEPARTMENT OF THE ARMY
OFFICE OF THE JUDGE ADVOCATE GENERAL
INTERNATIONAL AND OPERATIONAL LAW DIVISION
1777 N. KENT STREET
ROSSLYN, VIRGINIA 22209-2194

May 15, 2006

Rear Admiral Clarence A. Hill, Jr.
Rear Admiral Merlin H. Staring
U.S.S. Liberty Alliance
P.O. Box 663
Front Royal, Virginia 22630

Gentlemen,

Thank you for your letter of April 20th, regarding the Secretary of the Army's responsibility in investigating the tragic U.S.S. Liberty incident. I am responding on behalf of the Secretary.

The circumstances of the investigation conducted by the U.S. Navy into the attack on the LIBERTY, and the subsequent action taken by our government, are all too familiar to your organization. Admiral John S. McCain, Jr., Commander-in-Chief, U.S. Naval Forces, Europe, convened a Court of Inquiry with a wide mandate to investigate "all pertinent facts and circumstances leading to and connected with the armed attack" on USS LIBERTY. In his endorsement of the investigation report, Admiral McCain affirmed that "USS LIBERTY suffered an unprovoked attack by Israeli air and naval forces in international waters off the coast of the United Arab Republic." The Secretary of State communicated to the Government of Israel that "the attack must be condemned as an act of military irresponsibility reflecting reckless disregard for human life." Israel apologized and fully paid United States claims for the deaths and injuries as well as damage to USS LIBERTY caused by the attack.

The Secretary of the Army's responsibility with respect to alleged war crimes committed against U.S. personnel requires the Army to ensure there is a system for reporting and investigation of those allegations. Service Secretaries and Combatant Commanders, even under the latest regulations (Department of Defense Directive 2311.01E, published May 9, 2006), are charged with prompt reporting and investigation of alleged war crimes.

It is clear from the records maintained by the Department of the Navy that a prompt investigation was conducted by the Navy and the responsible Combatant Commander. The Court of Inquiry, which heard testimony from several officers and enlisted men from LIBERTY, including the commanding officer, produced an exhaustive record of proceedings over 650 pages in length. The military chain of command made appropriate findings and recommendations that resulted in the cable quoted above. In fact, the U.S. Government concluded that the Israeli government was culpable for the attack; the Government of Israel formally communicated its sincere expression of deep regret and subsequently paid U.S. claims in full for the deaths, injuries, and damages caused in the attack, thus closing the matter between the two governments. Therefore, further investigation by the U.S. military is unwarranted.

The Army recognizes and honors the sacrifice and uncommon bravery demonstrated by the officers and crew from our sister service on the U.S.S. LIBERTY on that fateful day. But no purpose would be served in re-opening an investigation into this tragic event.

If there is any further information I can provide on this matter, you can contact me at the above address. My email address is Richard.Jackson@hqda.army.mil.

Sincerely,

Richard B. Jackson
Special Assistant to the Judge Advocate General
for Law of War Matters

Bryce F. Lockwood
641 S. Nettleton
Springfield, MO 65806
Nov. 08, 95

To Whom it may Concern:

On June 8th, 1967, while serving temporarily aboard the USS Liberty (AGTR-5) in the Eastern Mediterranean, our ship was viciously attacked by Naval surface and Air Forces of the Government of Israel. During that attack, a torpedo entered the area I was assigned to inflicting critical damage to the ship, killing about twenty-five men and injuring numerous others.

I pulled a man from the wreckage who was drowning, unconscious and bleeding from wounds to his arm and leg.

At a ship's reunion in June of 1992, that man was confirmed to be Mr. Harold E. Six and was witnessed by Mr. Robert Schnell and Mr. Phil Tourney.

Certified this date
[signature]

LEGEND: Insert N/A to the items below which are not applicable

**PERSONAL DATA**

1. LAST NAME - FIRST NAME - MIDDLE NAME: SIK, HAROLD EUGENE
2. SERVICE NUMBER: 777 58 53
3a. GRADE OR RANK: CT3 (E-4)
b. DATE OF RANK (Day, Month, Year): 16 APR 66
4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS: USN NAVY
5. PLACE OF BIRTH (City and State or Country): TORRINGTON, WYO.
6. DATE OF BIRTH: DAY 27 MONTH APR YEAR 46
7a. RACE: - - - - - - - -
b. SEX: MALE
c. COLOR HAIR: BROWN
d. COLOR EYES: BROWN
e. HEIGHT: 71
f. WEIGHT: 145
8. U.S. CITIZEN: ☒ YES ☐ NO
9. MARITAL STATUS: SINGLE
10a. HIGHEST CIVILIAN EDUCATION LEVEL ATTAINED: HIGH SCHOOL - 1
b. MAJOR COURSE OR FIELD: GENERAL

**TRANSFER OR DISCHARGE DATA**

11a. TYPE OF TRANSFER OR DISCHARGE: DISCHARGE
b. STATION OR INSTALLATION AT WHICH EFFECTED: USS LIBERTY (AGTR-5)
c. REASON AND AUTHORITY: 313 - TO IMMEDIATELY REENLIST AUTH: BUPERS LTR PERS-B2211-jlg of 3 NOV 66
d. EFFECTIVE DATE: DAY 09 MONTH FEB YEAR 67
12. LAST DUTY ASSIGNMENT AND MAJOR COMMAND: USS LIBERTY (AGTR-5)
13a. CHARACTER OF SERVICE: HONORABLE
b. TYPE OF CERTIFICATE ISSUED: DD256N

**SELECTIVE SERVICE DATA**

14. SELECTIVE SERVICE NUMBER: NA
15. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY AND STATE: NOT REGISTERED
16. DATE INDUCTED: DAY - - MONTH - - - - YEAR - -

**SERVICE DATA**

17. DISTRICT OR AREA COMMAND TO WHICH RESERVIST TRANSFERRED: N/A
18. TERMINAL DATE OF RESERVE OBLIGATION: DAY - - - MONTH - - - - - YEAR - - -
19. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION
a. SOURCE OF ENTRY: ☒ ENLISTED (First Enlistment) ☐ ENLISTED (Prior Service) ☐ REENLISTED ☐ OTHER:
b. TERM OF SERVICE (Years): FOUR
c. DATE OF ENTRY: DAY 06 MONTH MAY YEAR 64
20. PRIOR REGULAR ENLISTMENTS: NONE
21. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SERVICE: SR
22. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State): LOS ANGELES, CALIF.
23. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County and State): COVINA, LOSANGELES, CALIF.
25a. SPECIALTY NUMBER AND TITLE: CT3 - - - - - - -
b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER: - - - - - - - - - - - - -

| 24. STATEMENT OF SERVICE | | YEARS | MONTHS | DAYS |
|---|---|---|---|---|
| a. CREDITABLE FOR BASIC PAY PURPOSES | (1) NET SERVICE THIS PERIOD | 02 | 09 | 05 |
| | (2) OTHER SERVICE | 00 | 00 | 00 |
| | (3) TOTAL (Line (1) + line (2)) | 02 | 09 | 05 |
| b. TOTAL ACTIVE SERVICE | | 02 | 09 | 05 |
| c. FOREIGN AND/OR SEA SERVICE | | 00 | 08 | 13 |

26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED: NATIONAL DEFENSE MEDAL
27. WOUNDS RECEIVED AS A RESULT OF ACTION WITH ENEMY FORCES (Place and date, if known): NA

28. SERVICE SCHOOLS OR COLLEGES, COLLEGE TRAINING COURSES AND/OR POST-GRADUATE COURSES SUCCESSFULLY COMPLETED

| a. SCHOOL OR COURSE | b. DATES (From - To) | c. MAJOR COURSES |
|---|---|---|
| CT "A" SCOL | 07SEP64-05MAR65 | |

29. OTHER SERVICE TRAINING COURSES SUCCESSFULLY COMPLETED:
NTC FOR SN
BMR FOR SN
MR FOR PO3&2
NTC FOR CTTR13&2

**VA DATA**

30a. GOVERNMENT LIFE INSURANCE IN FORCE: ☐ YES ☒ NO
b. AMOUNT OF ALLOTMENT: NA
c. MONTH ALLOTMENT DISCONTINUED: NA
31a. VA BENEFITS PREVIOUSLY APPLIED FOR (Specify type): NA
b. VA CLAIM NUMBER: C- NA

**AUTHENTICATION**

32. REMARKS
IS RECOMMENDED FOR REENLISTMENT
NUMBER OF DAYS LEAVE PAID: NONE
NUMBER OF DAYS EXCESS LEAVE: NONE
NUMBER OF DAYS LOST TIME: NONE
SOCIAL SECURITY NUMBER: 520 46 1848

33. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County and State): 435 E. COLORADO ST. APRT. 2 GLENDORA CALIF.
34. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED: [signature] Harold Eugene Sik
35a. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER: E. M. ARMSTRONG, LCDR, USN, EXEC OFF
b. SIGNATURE OF OFFICER AUTHORIZED TO SIGN: [signature]

DD FORM 1 NOV 55 214 — REPLACES EDITION OF 1 JUL 52, WHICH IS OBSOLETE. ARMED FORCES OF THE UNITED STATES REPORT OF TRANSFER OR DISCHARGE 2

81