No. 04-1727C
(Judge Emily Hewitt.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

HAROLD E. SIX, Sr.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S SECOND MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

---

PETER D. KEISLER.
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

LESLIE CAYER OHTA
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
1100 L. Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (fAX)

July 6, 2007

Attorneys for Defendant

TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Scope Of Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Decision Of The BCNR That Mr. Six Failed To Demonstrate That He Was Entitled To The Correction Of His Military Records To Reflect A Disability Discharge Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Applicable Statutes and Regulations . . . . . . . . . . 8

A. The BCNR's finding that Mr. Six failed to establish that he had been issued a silencing order was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations . . . . . . . . 8

B. The BCNR's findings that Mr. Six failed to demonstrate that he suffered from PTSD while serving in the Navy or that he was unfit to serve at the time of his discharge were not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

Dodson v. United States,
988 F.2d 1199 (Fed. Cir. 1993) . . . . . . . . 7

Harris v. United States,
14 Cl. Ct. 84, 89 (1987) . . . . . . . . 8

Heisig v. United States,
719 F.2d 1153 (Fed. Cir. 1983) . . . . . . . . passim

Kirwin v. United States,
23 Cl. Ct. 497, 502 (1991) . . . . . . . . 7

Koretsky v. United States,
57 Fed. Cl. 154 (2003) . . . . . . . . 7

Pence v. United States,
52 Fed. Cl. 643 (2002) . . . . . . . . 7

Rebosky v. United States,
60 Fed. Cl. 305 (Ct. Cl. 2004) . . . . . . . . 6

## STATUTES

28 U.S.C. § 1201 (2004) . . . . . . . . 2

38 U.S.C. § 1155 (2005) . . . . . . . . 2, 3, 4

## RULES

Rules of the United States Court of Federal Claims, 52.1 . . . . . . . . 6, 7

Rules of the United States Court of Federal Claims, 56 . . . . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Sr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1727C |
| v. | ) | (Judge Emily Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SECOND MOTION FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court grant judgment upon the administrative record in our favor. In support of this motion, we rely upon the administrative record, and the following brief.

STATEMENT OF THE ISSUE

Whether the decision of the Board for Correction of Naval Records ("BCNR") that plaintiff, Harold E. Six, Jr., failed to demonstrate that he was entitled to the correction of his military records to reflect a disability discharge was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.

STATEMENT OF THE FACTS

Mr. Six enlisted in the United States Navy in 1964. AR 61. He was trained as a communications technician and, in June 1970, was promoted to the rank of First Class Petty Officer. AR 64. In June 1967, he was assigned to the USS Liberty. Id. On June 8, 1967, the Liberty was attacked by the Israeli Air Force. AR 164. Mr. Six was wounded during that attack. AR 13.

In October 1971, Mr. Six was given a medical examination during which he denied experiencing insomnia, depression, headaches, or other head injuries. AR 6-8. Mr. Six also denied having psychotic symptoms and suicidal concerns. AR 54.

In February 1973, Mr. Six was provided a mandatory separation physical and was found to be physically fit for separation from active duty. Id. Mr. Six did not report any symptoms of post-traumatic stress disorder. Id. The psychiatric portion of the medical examination classified Mr. Six as normal. Id.. Mr. Six was separated from the Navy with an honorable discharge effective on February 6, 1973. Id.

In the years between 1967 and 1973, Mr. Six reported no psychiatric conditions or complaints. AR 6-8.

On July 21, 1999, the Department of Veteran's Affairs awarded Mr. Six veteran's disability benefits, with a ten percent rating for post-traumatic stress disorder.[1] AR 6-8.

On December 20, 2002, Mr. Six filed a claim with the Board for Correction of Naval Records ("BCNR" or board). AR . Mr. Six sought placement on the disability retirement list effective February 6, 1973. Id.

On August 25, 2003, the BCNR issued a decision denying Mr. Six's claim, concluding that the evidence did not establish the existence of probable material error or injustice. AR 6-8. The BCNR considered Mr. Six's "application, together with all material submitted in support thereof, [Mr. Six's] naval record and applicable statutes, regulations and policies." Id. The

---

[1] The Department of Defense assigns military disability ratings only in cases where a service member has been found unfit for military duty, whereas the Department of Veteran's Affairs rates all disabilities deemed service connected without regard to the issue of fitness for military duty. See 28 U.S.C. § 1201 (2004); 38 U.S.C. § 1155 (2005).

BCNR noted that, "despite the traumatic events [Mr. Six] experienced in 1967, [Mr. Six] continued to perform [his] duties in a satisfactory manner for several years thereafter," id.; that Mr. Six was promoted subsequent to the Liberty incident, id.; that the BCNR "could not find any indication in the available records that [Mr. Six] suffered from the hallmark symptoms of post[-]traumatic stress disorder during the period from 1967 to 1973," id.; and that Mr. Six denied a history of psychological complaints when he stated on an October 21, 1971 Report of Medical History that he did not have "a history of frequent trouble sleeping, frequent or troubling nightmares, depression or excessive worry, or nervous trouble of any sort." Id. The BCNR specifically "rejected [Mr. Six's] ... contention [ ] ... that [Mr. Six's] use of alcohol was related to the effects [of] undiagnosed and untreated posttraumatic stress disorder." Id. The BCNR further found that " [t]he fact that the Department of Veterans Affairs (VA) granted [plaintiff] service connection and a 10% rating for posttraumatic stress disorder on 21 July 1999 was not considered probative" because "the military departments assign disability ratings only in those cases where a service member has been found unfit for duty by reason of physical disability, whereas the VA rates all conditions it classifies as "service connected," without regard to the issue of fitness for military duty." Id. The BCNR determined that the evidence presented did not establish that plaintiff suffered from post-traumatic stress disorder at the time of his discharge. Id.

On July 15, 2004, Mr. Six filed a motion for reconsideration of the BCNR's decision. AR 79-99. In support of his claim, Mr. Six provided a psychiatric report prepared by Dr. Yuval Estrov, in which Dr. Estrov opined that Mr. Six suffers from PTSD, and that Mr. Six experienced symptoms of PTSD during his active duty in the military. AR 107. Mr. Six also argued that the

BCNR failed to address the chilling effect of the Navy's silencing order upon Mr. Six's failure to disclose the symptoms of the PTSD from which he was allegedly suffering during his military service. AR 95.

On July 23, 2004, the BCNR denied Mr. Six's motion for reconsideration. AR 10-11. The BCNR declined to consider the evidence that Mr. Six provided with his motion for reconsideration because the BCNR found it was not new and material evidence, not previously considered by the BCNR, that was not reasonably available at the time of the previous application. Id. Because Mr. Six failed to raise the issue of the silencing order in his first application, evidence concerning that issue was not "new evidence or other matter" and therefore did not provide a basis for reconsidering his request for corrective action. Id. The BCNR declined to consider the medical evidence submitted in support of Mr. Six's request for further consideration of his application because such evidence was reasonably available to Mr. Six when he submitted his initial application. Id.

On December 2, 2004, Mr. Six filed a complaint in the Court of Federal Claims seeking to have his Naval record corrected to reflect temporary military disability retirement for PTSD with a disability rating of 70 percent.

By decision dated June 30, 2006, this Court denied the Government's motion for judgment upon the administrative record, and remanded the matter to the BCNR for further proceedings, to determine whether a silencing order existed which prevented Mr. Six from disclosing his PTSD at time of his discharge.

On March 26, 2007, upon remand, the BCNR considered Mr. Six's application to correct his military records, including evidence not previously before the BCNR. AR 151-164. The

BCNR considered Mr. Six's application, the materials submitted in support thereof, Mr. Six's Naval service and health records; evidence from cases pertaining to two former members of the crew of the Liberty, and numerous medical articles, including "Stressed Out Vets", The Weekly Standard, 21/28 August 2006; "The Liberty Incident, Gag Orders Debunked,"and documents referenced therein, by retired Federal District Court Judge A. Jay Cristol; a statement by Bryce Lockwood, dated November 8, 1995; correspondence provided by Rear Admiral Merlin Staring, Judge Advocate General's Corps, US Navy, Retired, in his capacity as an official of the USS Liberty Alliance, and a 1979 article titled "The Assault on the Liberty: The True Story of the Israeli Attack on an American Intelligence Ship," by James M. Ennes, Jr.

Based upon its review and consideration of the administrative record, the BCNR found that the new evidence submitted by Mr. Six was insufficient to establish the existence of probable material error or injustice in Mr. Six's Naval record. AR 151-164. Specifically, the BCNR was not persuaded that Mr. Six was issued a silencing order, that he suffered from PTSD while serving on active duty in the Navy, or that he was unfit to reasonably perform the duties of his office, grade, rank or rating by reason of physical disability prior to his separation from the Navy. Id.

## SUMMARY OF THE ARGUMENT

The decision of the BCNR that Mr. Six failed to demonstrate that he was entitled to the correction of his military records to reflect a disability discharge is not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Specifically, the BCNR's finding that Mr. Six's assertion that he had been issued a silencing order was not credible is supported by substantial evidence. The gravamen of Mr. Six's assertion

that he was medically unfit to serve at the time of his 1973 discharge from the Navy is that while he experienced the symptoms of PTSD at the time of his discharge, and in the years following his discharge, he did not report such symptoms to his health care providers because of the silencing order. The linchpin of Mr. Six's complaint, therefore, is the existence of the silencing order. Because Mr. Six failed to demonstrate through credible evidence that he was ordered not to discuss the Liberty attack, he necessarily failed to establish that the reason he did not report his alleged PTSD symptoms to his health care providers was because of the alleged silencing order. Similarly, the finding of the BCNR that Mr. Six failed to demonstrate that he suffered from PTSD while serving in the Navy, or that he was unfit to serve at the time of his discharge, is supported by substantial evidence.

## ARGUMENT

### I. Standard Of Review

Under RCFC 52.1, the Court's review is based upon the administrative record. The standard of the Court's review will depend on the specific law to be applied in the specific case. See Rules Committee Note to RCFC 52.1.

When reviewing the decision of the a board for the correction of military records upon cross-motions for judgment upon the administrative record pursuant RCFC 52.1, this Court's "review is necessarily limited to the record before the [board] as informed by the parties' Statements and Counter-Statements of Facts." Rebosky v. United States, 60 Fed. Cl. 305, 310-311 (Ct. Cl. 2004).

A RCFC 52.1 motion for judgment upon the administrative record is not to be confused with an RCFC 56 motion for summary judgment. When ruling on a motion for summary

judgment, this Court must weigh the facts presented to it by the parties to determine whether there is any "genuine issue as to any material fact" that would preclude summary judgment. RCFC 56. When ruling upon a RCFC 52.1 motion for judgment upon the administrative record, however, the inquiry is different. In such a case, the Court does not re-weigh the facts as found by the administrative body. Pence v. United States, 52 Fed. Cl. 643, 645 (2002). Rather, the Court is bound by the board's decision unless the plaintiff "can demonstrate by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence." Dodson v. United States, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993) (internal citations omitted). See also Kirwin v. United States, 23 Cl. Ct. 497, 502 (1991); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province."). In this connection, the court will not re-weigh the evidence or sit as a "super correction board." Instead, the court will determine "whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157 (emphasis in original).

This Court "extends great deference to decisions of the Board for Correction of Military records." Koretsky v. United States, 57 Fed. Cl. 154, 158 (2003). "Where the agency is entitled to exercise discretion, as is the case with [the board], great deference is to be given to its decisions, and the plaintiff has an usually heavy burden of proof in showing that the determination was arbitrary and capricious." Id. (citations omitted).

______When making this determination, the "court will not substitute its judgment for that of the correction board." Harris v. United States, 14 Cl. Ct. 84, 89 (1987). Where the court finds that "reasonable minds might reach differing conclusions, the fact that this court would have reached

a different conclusion than the one the agency reached is not sufficient for this court to overturn the administrative action." Harris, 14 Cl. Ct. at 90. Consequently, when there is evidence both supporting the agency decision and evidence supporting the plaintiff's position, this Court must defer to the agency. Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (standard of review does not require a re-weighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence).

## II. The Decision Of The BCNR That Mr. Six Failed To Demonstrate That He Was Entitled To The Correction Of His Military Records To Reflect A Disability Discharge Was Not Arbitrary, Capricious, Unsupported by Substantial Evidence, Or Contrary To Applicable Statutes and Regulations

### A. The Bcnr's Finding That Mr. Six Failed To Establish That He Had Been Issued A Silencing Order Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary to Applicable Statutes and Regulations

The BCNR found that Mr. Six's assertion that an unidentified Naval officer told Mr. Six that he was never to speak of the Liberty attack to anyone without first obtaining permission, and that failure to follow that order would result in court-martial, was not credible. AR 151-164. The BCNR's adverse credibility determination was based upon its review and consideration of the administrative record, including the materials submitted by Mr. Six. Id. As we demonstrate below, substantial evidence supports the BCNR's decision.

Mr. Six failed to raise the issue of the alleged silencing order in his initial application to the BCNR. Id.; AR 12-20. It was only after that application had been denied did Mr. Six raise it in his motion for reconsideration. AR 151-164; AR 79-150. Moreover, Mr. Six's statement to the Court that he had raised the silencing order in his first application were admittedly false. AR 151-164. This evidence supports the BCNR's determination that Mr. Six failed to establish the

existence of the a silencing order because, given that it is the linchpin this lawsuit, it is not reasonable that, if true, Mr,. Six would have failed to raise it in his a initial application.

The BCNR considered the application for correction of his Naval records submitted by another survivor of the Liberty attack, who attempted to demonstrate that he should have been retired from the Navy by reason of physical disability because of the effects of PTSD. AR 151-164; 298-305. That applicant, like Mr. Six, did not raise the issue of the silencing order in his initial application but, like Mr. Six, blamed the Navy for failing to recognize and treat the PTSD from which he allegedly suffered while on active duty. AR 151-164; 292-293. Moreover, in a statement submitted in support of his application, that applicant admitted that he had discussed the Liberty incident with a number of his fellow Marines, discussions that would have been in violation of the alleged silencing order. Id.. Only after the BCNR denied his application, did that applicant raise the issue of the silencing order, making claims very similar to those made by Mr. Six in his second application. AR 289-297. The BCNR made an adverse credibility determination in that applicant's case, and accordingly denied his application. AR 151-164; 289-297. This evidence also supports the BCNR's determination that Mr. Six failed to establish the existence of the a silencing order because, given that according to Mr. Six all survivors of the Liberty attack were under the same silencing order, it is not reasonable that another applicant, similarly situated to Mr. Six, would have failed to raise the existence of the silencing order, if true, in his a initial application. Furthermore, if a survivor of the Liberty attack faced court martial for disobeying the silencing order, as alleged by Mr. Six, it is not reasonable that a survivor would violate the order by discussing allegedly prohibited matters with his peers but not with his health care providers.

The BCNR also considered the fact that another applicant also failed to raise the issue of the alleged silencing order in his application to the BCNR. AR 151-164; 275-277. In 1967, that applicant sought a disability rating from the VA for physical injuries incurred in the attack on the Liberty. AR 282. He did not request a disability rating for a mental disorder. Id. In 1990, he applied to the VA for service connection for PTSD. AR 286-288. During his May 1990, psychiatric evaluation, that applicant did not mention the silencing order. Id. In his 1994 application for an increased rating for PTSD, however, he raised for the first time the issue of the silencing order. AR 280-281. The BCNR made an adverse credibility determination and accordingly denied his application. AR 275-277. Again, this evidence also supports the BCNR's determination that Mr. Six failed to establish the existence of the a silencing order because, given that according to Mr. Six all survivors of the Liberty attack were under the same silencing order, it is not reasonable that another applicant, similarly situated to Mr. Six, would have failed to raise the existence of the silencing order, if true, in his a initial application.

The BCNR also noted that the file, for the applicant described above, contained an August 1968 letter from an attorney to the VA, in which the attorney stated that he represented the former Liberty crew member in connection with his claims against the State of Israel "on account of personal injuries which he sustained in the Israeli attack on the U.S.S. Liberty in the Mediterranean off the coast of Israel on June 8, 1967." AR 275-277. The assertion of that claim would be in direct violation of the alleged silencing order. Id. If a survivor of the Liberty attack faced court martial for disobeying the silencing order, as alleged by Mr. Six, it is not reasonable that a survivor would violate the order by asserting a claim, containing allegedly prohibited matters, for compensation against a foreign government, but not with his health care providers.

Mr. Six admitted that his record had not been sanitized by the removal of all references to the Liberty incident, contrary to his initial assertion in that regard. AR 157. In fact, there are multiple references to the Liberty attack in Mr. Six's record. AR 157. Among the more significant are a message dated June 9, 1967, entitled "Status Report USS Liberty Casualties," and a Presidential Unit Citation, both of which contain details of the attack on the Liberty. AR 157; 164. In addition, Mr. Six's health record contains a copy of a letter to Mr. Six's commanding officer dated January 29, 1968, in which the Chief, Bureau of Medicine and Surgery, requested, upon behalf of the Judge Advocate General, that information be provided regarding the treatment of the injuries Mr. Six sustained in the Liberty attack, presumably for inclusion in a claim for damages to be submitted to the State of Israel. AR 157; 682. This evidence provides strong support for the BCNR's determination for three reasons. First, it casts doubt upon Mr. Six's overall credibility. Second, it undercuts the truth of Mr. Six's assertion that his medical records do not reflect the symptoms of PTSD that he experienced before and after his discharge from the Navy because he was afraid to relate such symptoms to his health care providers. Third, if a survivor of the Liberty attack faced court martial for disobeying the silencing order, as alleged by Mr. Six, it is not reasonable he would violate the order by discussing allegedly prohibited matters with his health care providers.

The BCNR concluded that Mr. Six likely misled officials of the Los Angeles Police Department in his application for employment as a jail guard, as it is unlikely that Mr. Six would have been hired had he disclosed his history of alcohol related problems, or his continuing financial and marital difficulties. AR 158; 234-236. Similarly, records from the State of California Department of Corrections suggest that when Mr. Six applied for employment as a

prison guard, he was not truthful about the circumstances of his discharge from employment with the LAPD. AR 158; 211. Such evidence supports the BCNR's adverse credibility determination.

Undercutting the truth of Mr. Six's allegation that he had received a silencing order, are several entries in Mr. Six's Navy service and health records which would have been considered violations of the silencing order had Mr. Six actually received such an order. AR 158. The BCNR noted that on May 26, 1970, Mr. Six wrote a letter to the Chief of Naval Personnel, requesting that he be issued the Combat Action Ribbon, in which Mr. Six stated that "on that date, the ship came under heavy attack by Israeli jets and torpedo boats, receiving a torpedo hit on the starboard side which caused considerable damage and the loss of many lives. I have been awarded a Purple Heart- for wounds received from torpedo shrapnel." AR 158; 618-619.

Further, during the course of a examination October 21, 1971, Mr. Six completed a Report of Medical History in which Mr. Six disclosed a history of wounds to his lower right leg and a finger of his right hand, injuries Mr. Six received during the attack on the Liberty.[2] AR 158; 889-893.

Moreover, Mr. Six falsely reported that he did not have a history of bed-wetting, and denied a history of frequent or terrifying nightmares, depression or excessive worry, loss of memory or amnesia, and nervous trouble of any sort. AR 158; 889-893. Mr. Six crossed out questions on the form that pertained to a drug or narcotic habit, excessive drinking and "homosexual tendencies." Id. The BCNR concluded that it appears that Mr. Six was instructed to

[2] The BCNR found that from the context that the entries made by the physician who conducted Mr. Six's flight physical were based upon information provided to him by Mr. Six. Id.

do so because answers to those questions were no longer required. AR 158. Those questions were removed from later editions of the form that superseded the form Mr. Six completed on October 21, 1971. AR 158; 894-895. Mr. Six, however, contended that he crossed out those entries to ensure that he did not violate the silencing order. AR 115; 158. The BCNR found Mr. Six's contention to be not credible. AR 158.

Mr. Six made several other disclosures that would have been in violation of the alleged silencing order. Prior to undergoing surgery on his mandible in 1972, Mr. Six disclosed to the surgeon that he had undergone a surgical procedure for the repair of lacerations "following shrapnel injury" and that he had sustained the shrapnel injury in 1967 to his right middle finger, his right elbow, and his right lower leg. AR 29-41; 159. As the BCNR correctly found, each of the identified entries in Mr. Six's medical and other records would have constituted a violation of the alleged silencing order. Thus the BCNR found Mr. Six's allegation that he feared he would violate the silencing order simply is not credible.

The BCNR concluded that the statements provided by Mr. Six in support of his contentions regarding the silencing order were not probative of the existence of material error or injustice in his Navy record. AR 159. The statement by Captain Boston to the effect that he was told by Admiral Kidd that the admiral had been ordered to "put the lid" on everything having to do with the attack on USS Liberty, that they were "never to speak of it," and that they were to "caution everyone else involved that they could never speak of it again," is self-contradictory, and does not address the consequences of discussing the attack. AR 159; 898-900. The BCNR also found that Captain Boston's statement is colored by his obvious contempt toward those whom he considers to be "apologists" for Israel, such as Judge Cristol. AR 159; 898-900.

The BCNR concluded that Admiral Staring's statement pertains to his abortive attempt to conduct a legal review of the report of the Court of Inquiry, and does not address the silencing order. AR 159; 896-897. The BCNR found that the assertions in the declaration provided by Captain Kiepfer regarding the silencing order are not credible. AR 160; 192-198. The BCNR noted that "while it is clear from his declaration that Captain Kiepfer considers the silencing order one of the most important issues for Liberty survivors, Captain Kiepfer failed to mention the existence of the alleged order in the two letters he provided to Mr. Six, dated February 15, 1996, and 20 August 20, 1997." Id.; AR 27, 28. Moreover, the BCNR noted that those letters, made in support of Mr. Six's VA claim for service connection and disability compensation for residuals of alleged shrapnel wounds to Mr. Six's face, raise a serious concern about Dr. Kiepfer's credibility. Id. Specifically, Captain Kiepfer stated that he had personally treated Mr. Six for "multiple mini-fragment facial injuries." AR 28. Entries in Mr. Six's Navy health record show, on the contrary, that Mr. Six sustained shrapnel wounds to his right leg, hand, and arm. AR 29-41. There are no entries concerning mini-fragment facial injuries. Id. It is also significant that in the February 15, 1996 letter, Captain Kiepfer claimed that he understood that Mr. Six suffered from "Post Traumatic" neurologist syndrome. AR 28. Mr. Six, on the other hand, asserts that he learned from Captain Kiepfer that he suffered from that condition. AR 151-164. See also AR 27, 28.

LCDR Ennes' description of the nature and effect of the alleged silencing order in the declaration he submitted in support of Mr. Six's application is very similar to the description provided by Mr. Six. AR 160; 199-204. LCDR Ennes, however, did not make similar claims in his book, "The Assault on the Liberty." AR 160. While he devoted a chapter of that book to the

alleged coverup of the incident, he failed to use the term "silencing order," or to even mention the alleged visits from an unidentified officer who conveyed the silencing order, and threatened sanctions for violating its terms. Id.

The BCNR also noted that Mr. Six failed to seek an exception to the alleged silencing order from the Navy, even though he faced the loss of his security clearance, and even though the alleged prohibition against his disclosing his symptoms resulted in his inability to seek and obtain medical treatment for the alleged disabling effects of the injuries he received during the attack on the Liberty.

AR 161.

The above described evidence amply supports the BCNR's finding that Mr. Six's assertion that he was issued a silencing order was not credible. Moreover, Mr. Six's assertion that he failed to disclose his symptoms of PTSD because of the existence of the alleged silencing order was not credible given that Mr. Six made disclosures concerning the attack on the Liberty, his participation in combat action, and the wounds he received. In short, the BCNR's finding that Mr. Six's assertion that he did not report his alleged symptoms of PTSD because of the silencing order was not credible is supported by substantial evidence.

B. The Bcnr's Findings That Mr. Six Failed To Demonstrate That He Suffered From PTSD While Serving In The Navy Or That He Was Unfit to Serve At The Time Of His Discharge Were Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary to Applicable Statutes and Regulations

The gravamen of Mr. Six's assertion that he was medically unfit to serve at the time of his 1973 discharge from the Navy is that while he experienced the symptoms of PTSD at the time of his discharge, and in the years following his discharge, he did not report such symptoms to his

health care providers because of the silencing order. The linchpin of Mr. Six's complaint, therefore, is the existence of the silencing order. Because Mr. Six failed to demonstrate through credible evidence that he was ordered not to discuss the Liberty attack, he necessarily failed to establish that the reason he did not report his alleged PTSD symptoms to his health care providers was the alleged silencing order. The BCNR's finding that Mr. Six failed to demonstrate that he suffered from PTSD while serving in the Navy, or that he was unfit to serve, at the time of his discharge is supported by substantial evidence. In fact, none of the medical evidence considered by the BCNR would support a finding a finding that Mr. Six suffered from PTSD as a result of his military service.

Dr. Yuval Estrov's Report

In support of his motion for reconsideration, Mr. Six provided a report from Dr. Yuval Estrov. AR 79-99; 100-110. In his psychiatric report, Dr. Estrov stated that in his opinion, Mr. Six was unfit for duty by reason of a of physical disability as of February 6, 1973, the date of Mr. Six's discharge from the military. AR 107. Dr. Estrov also opined that Mr. Six suffered from PTSD, and that Mr. Six experienced symptoms of PTSD during his military service. AR 107.

In its July 23, 2004 denial of Mr. Six's request for reconsideration, the BCNR noted that Dr. Estrov's statement was based "in large part, on [Dr. Estrov's] acceptance of [Mr. Six's] representations concerning the symptoms of [PTSD] [Mr. Six] allegedly began to experience in 1967." AR 9-11. Because the BCNR, in its August 21, 2003 denial of Mr. Six's application, had rejected Mr. Six's representations that he had suffered such symptoms, the BCNR found that Dr. Estrov's statement did not constitute new and material evidence. Id.

Despite the fact that the Estrov report did not constitute new and material evidence, upon

remand from this Court, the BCNR, in its March 26, 2007 denial of Mr. Six's application to correct his military records, addressed the merits of Dr. Estrov's report. The BCNR specifically found that Dr. Estrov's findings and opinion failed to demonstrate that Mr. Six suffered from PTSD at any time during the 1967-1973 period. AR 151-164. With respect to Dr. Estrov's report, the BCNR noted the following: Dr. Estrov glossed over, failed to consider, or ignored many significant aspects of Mr. Six's personal history that could have caused or contributed to the development of Mr. Six's problems, such as the fact that Mr. Six was raised by a single mother in economically deprived circumstances; that Mr. Six saw his father only twice during his childhood, once when he gave Mr. Six "a nickel," and a second time when he saw his body in a casket; that Mr. Six did not receive adequate medical or dental care as a child; that Mr. Six had a correctable defect of his mandible which interfered with his ability to close his mouth and chew food, a condition that could have been disfiguring, and resulted in the need to extract at least ten of Mr. Six's teeth during the first few weeks of his enlistment in the Navy; that Mr. Six dropped out of high school in the tenth grade; that Mr. Six had no significant employment until he entered the Navy in 1964; that Mr. Six began drinking alcohol at age 15; that Mr. Six was rejected for enlistment in 1963 because of immaturity and a history of bed-wetting that continued beyond his 16th birthday; that Mr. Six admitted in August 1972 that he drank to intoxication on some evenings in port on sea tours prior to his marriage in 1968; that Mr. Six contracted gonorrhea on at least two occasions while overseas prior to June 8, 1967; that when Mr. Six married his first wife at age 22, he became financially responsible for her and her two children from a previous marriage; that at the time of Mr. Six's marriage, his wife was about five months pregnant with his son; and that prior to the birth of his son, Mr. Six requested the accelerated payment of his re-

enlistment bonus so that he could "pay off" a new car, and pay for dental care his wife needed. AR 119-126; 153-154.

The BCNR also noted that Dr. Estrov apparently failed to consider information contained in a July 10, 1972, communication that stated that Mr. Six had documented problems that included indebtedness; participation in disreputable incidents; excessive drinking; martial physical abuse; harassment of a Marine sentry; and alleged adultery. AR 119-126; 154. In addition, Dr. Estrov failed to take into consideration that Mr. Six's performance of duty was slightly better after the attack on Liberty than before the attack, as measured by Mr. Six's Enlisted Performance Record, which demonstrated that prior to the attack, Mr. Six's evaluation averages in the areas of professional performance, military behavior, leadership and supervisory ability, military appearance, and adaptability were 3.26,. 3.40, 3.50, 3.36, and 3.46, respectively, while after the attack, the averages were 3.43, 3.36, 3.36, 3.48, 3.48, even though Mr. Six held more responsible positions in higher pay grades. AR 64; 72; 154.

The BCNR also found that Dr. Estrov's discussion of Dr. Cain's diagnosis of Mr. Six's mental problems was misleading.[3] AR 108; 155. In 1972, Dr. Cain diagnosed Mr. Six with having immature personality disorder, a recognized mental disorder which is listed in both the current and the 1972 edition of the International Classification of Diseases ("ICD"), published by the World Health Organization, and in the Diagnostic and Statistical Manual of Mental Disorders, second edition ("DSM-II"), published by the American Psychiatric Association, which were in effect in 1980. AR 129-140; 155; 677-678.

[3] The BCNR mistakenly refers to "Dr. Cole" in its March 26, 2007 decision. AR 151-161.

The BCNR also noted that Dr. Estrov did not comment on the fact that because Mr. Six lied to Dr. Cain about his use of alcohol, Dr. Cain was unable to make a diagnosis of alcohol abuse or dependence or to refer Mr. Six for treatment. AR 108; 115; 155; 677-678.

Dr. Kiepfer's Report

In support of his application, Mr. Six provided letters from Dr. Richard F. Kiepfer dated February 15, 1996, and August 20, 1997. AR 27, 28. In his one-page February 15, 1996 letter addressed "to Whom It May Concern," Dr. Kiepfer stated that he was a medical officer on the Liberty at the time of the attack. AR 28. Dr. Kiepfer stated that it was his understanding that Mr. Six suffered from "Post Traumatic" neurologic syndrome. Id. Dr. Kiepfer does not explain what was the basis for that statement; what "post traumatic neurologic syndrome" is; or whether he treated Mr. Six at the time of the Liberty incident or at any time thereafter. Id. In short, Mr. Kiepfer's February 28, 1996 letter, provides no evidence whatsoever as to whether Mr. Six suffered from PTSD or was medically unfit to serve at the time of his discharge from the Navy. On the contrary, Dr. Kiepfer opines that Mr. Six suffered from trigeminal neuralgia, resulting from facial injuries suffered by Mr. Six during the Liberty attack. Id. There is no indication, however, in the administrative record that Mr. Six incurred any facial injuries during the Liberty attack. See AR 1 - 904.

In his one-page letter dated August 20, 1997, addressed to Mr. Six, Dr. Kiepfer states that it [a]ppears that [Mr. Six] is entrapped in a bureaucratic game, namely, 'If we don't know what it is, it doesn't exist.'" AR 27. Dr. Kiepfer then posits a number of questions that he did, or could have posed, to Mr. Six, followed by what Dr. Kiepfer apparently believes would be Mr. Six's answers. Id. For example, Dr. Kiepfer writes "[w]hat is your present condition?" followed by

the apparent expected answer, "Nerve pain." Id. It is apparent that Dr. Kiepfer is referring in his August 20, 1997 letter to his previous "diagnosis" of trigeminal neuralgia, and not to PTSD. In fact, the only reference to PTSD is the question posed by Dr. Kiepfer as to whether PTSD could contribute to or cause Mr. Six's pain, and the apparent expected answer of "Yes!" Id. Incredibly, Dr. Kiepfer asserts in his August 20,1997 letter that he treated Mr. Six at the time of the Liberty attack (an assertion he did not make in his February 15, 1996 letter), yet apparently recalls that Mr. Six suffered a facial injury, rather than the actual injuries Mr. Six incurred to his leg, elbow and finger. Id.

In short, in neither letter did Dr. Kiepfer offer a professional opinion that, based upon his observations, Mr. Six was suffering from military-related PTSD. AR 27-28.

Upon remand from this Court, Mr. Six provided the BCNR with a declaration from Dr. Kiepfer. AR 192-198. Dr. Kiepfer' statements regarding the silencing order have previously been discussed. In this declaration, Dr. Kiepfer does not provide any credible evidence that Mr. Six suffered from PTSD at the time of his discharge from the Navy. AR 192-198.

The BCNR's finding that Mr. Six failed to demonstrate that he was unfit for military duty at the time of his discharge due to PTSD was not arbitrary or capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Accordingly, the Court should grant judgment upon the administrative record in favor of the Government.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court grant our motion for judgement upon the administrative record.

Respectfully submitted,

PETER D. KEISLER.
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
1100 L. Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
(202) 307-0252 / (202) 307-0972 (Fax)

July 6, 2007

Attorneys for Defendant