IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Sr., Plaintiff, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 04-1727C (Judge Emily Hewitt) |

DEFENDANT'S STATEMENT OF FACTS

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following statement of facts in support of its motion for judgment upon the administrative record.

1. Mr. Six enlisted in the United States Navy on April 29, 1964. AR 61.

2. Mr. Six was trained as a communications technician. AR 64.

3. Mr. Six was aboard the U.S.S. Liberty on June 8, 1967, when Israel Defense Forces attacked it. AR . During the attacks, Mr. Six was injured. AR 13.

4. Approximately twenty hours after the attack, Mr. Six was evacuated by air to the United States Naval Hospital in San Diego, California. AR 90.

5. According to Mr. Six, while he was in the San Diego hospital, a Naval officer ordered him to refrain from discussing any aspect of the events that occurred aboard the U.S.S. Liberty without prior written authorization and told him his failure to comply with that order would result in a court martial for breach of national security. AR 124-125.

6. Mr. Six refers to the alleged order as as a “silencing order.” AR 95.

7. According to Mr. Six, while in the hospital, he began to experience vivid nightmares and flashbacks about the Liberty attack. AR 14.

8. According to Mr. Six, he did not disclose the fact that he was having nightmares or flashbacks to his attending physicians because " he could not do so without discussing the events on the Liberty." AR 124-125.

9. There is no indication in the administrative record as to the basis of Mr. Six's alleged belief as to why he could not describe the symptoms he was allegedly experiencing while not revealing facts surrounding the attack on the Liberty. AR 1 - 904.

10. There is no indication in the administrative record as to the basis of Mr. Six's alleged belief as to why he could not reveal that he had been injured in the attack on the Liberty. AR 1 - 904.

11. In June 1970, Mr. Six was promoted . AR 64.

12. In October 1971, Mr. Six, during the course of a medical examination, denied that he was experiencing insomnia, depression, headaches, or had any head injury. AR 6-8; 889-893.

13. During that same examination, Mr. Six also denied having psychotic symptoms or suicidal ideation. Id.

14. Mr. Six underwent a psychiatric evaluation on August 4, 1972, and was diagnosed as having an immature personality. AR 83; 677.

15. On August 8, 1972, Mr. Six spoke to another psychiatrist, who was of the opinion that Mr. Six's claim that he was an alcoholic was unfounded, and that Mr. Six had no detectable psychiatric difficulties. AR 7.

16. In the years between 1967 and 1973, Mr. Six reported no psychiatric conditions or complaints. AR 6-8; 29-43; 889-895.

17. In February 1973, Mr. Six underwent a mandatory separation physical. AR 6-8;

894-895. Mr. Six was found to be physically fit for separation from active duty. Mr. Six was separated from the service with an honorable discharge. AR 6-8; 20; 894-895.

18. Mr. Six contends that, at the time of his discharge on February 6, 1973, he was suffering from post-traumatic stress syndrome ("PTSD") and, therefore, was entitled to a 70 per- cent disability rating. AR 82, 99.

19. In the psychiatric portion of the 1973 discharge medical examination, it was reported that Mr. Six was normal. AR 6-8; 894-895. During that examination, Mr. Six did not report any symptoms of post-traumatic stress disorder ("PTSD"). Id.

20. The Department of Veteran's Affairs awarded Mr. Six veteran's disability benefits on July 21, 1999, with a ten percent rating for post-traumatic stress disorder. AR 6-8; 84.

21. On December 20, 2002, Mr. Six filed a claim with the Board for Correction of Naval Records ("BCNR"). AR 20.

22. In support of his application, Mr. Six submitted an eight-page affidavit. AR 12-19. In that affidavit, Mr. Six described his childhood, his education, his marriage and family life, his alcohol and medical problems, and his career in the military, including, in some detail the attack on the Liberty. Id. Mr. Six makes no mention whatsoever in that affidavit of the alleged "silencing order." Id.

23. In support of his claim, Mr. Six also provided letters from Dr. Richard F. Kiepfer dated February 15, 1996, and August 20, 1997. AR 27-28. In Dr. Kiepfer's February 15, 1996, letter, Dr. Kiepfer stated that he understood that Mr. Six suffered from "Post Traumatic neurologic syndrome." AR 28.

24. According to Dr. Kiepfer's August 20, 1997 letter to Mr. Six, PTSD could have

contributed to Mr. Six's pain. AR 27.

25. In neither letter did Dr. Kiepfer offer a professional opinion that, based upon his observations, Mr. Six was suffering from military-related PTSD. AR 27-28.

26. In support of his claim, Mr. Six included some medical records. AR 29-43; 49-60. In none of the medical records provided was Mr. Six diagnosed with PTSD. Id.

27. In support of his claim, Mr. Six also included affidavits from two stepdaughters in which the stepdaughters discussed Mr. Six's drinking and marital problems. AR 44-48.

28. In those affidavits, the stepdaughters opined that Mr. Six's problems were related to his experiences in the military. Id.

29. In those affidavits, the stepdaughters offered no bases for their opinions. Id.

30. The record before the BCNR also included Mr. Six's performance evaluations during his time in the service. AR 64-78. Those records indicate that Mr. Six had acceptable performance after the Liberty incident and that his performance ratings declined over time. Id.

31. On August 25, 2003, the BCNR issued a decision in which it found that the evidence was insufficient to establish the existence of probable material error or injustice. AR 6-8. Accordingly, the BCNR denied Mr. Six's application for a change in his military records. Id.

32. The BCNR noted that, despite the traumatic events Mr. Six claimed to have suffered during the Liberty incident, Mr. Six "continued to perform [his] duties in a satisfactory manner for several years thereafter, and [was] promoted . . . ." AR 6.

33. The BCNR noted that it could:

> not find any indication in the available records that [Mr. Six]

> suffered from the hallmark symptoms of [PTSD] during the period from 1967 to 1973. The [BCNR] noted, however, that [Mr. Six] denied having a history of psychological complaints on 121 October 1971, when [he] completed a Report of Medical History, and stated that [Mr. Six] did not have a history of frequent trouble sleeping, frequent or troubling nightmares, depression or excessive worry, or nervous trouble of any sort. [Mr. Six] underwent psychiatric evaluation on 4 August 1972, and [was] given a diagnosis of an immature personality. The majority of [Mr. Six's] complaints apparently related to [his] wife's behavior and the perceived unfairness of [his] life situation. . . . On 8 August 1972, [Mr. Six] spoke to another psychiatrist, who was of the opinion that 'claims of alcoholism are unfounded,' and the [he] had 'no detectable psychiatric difficulties.' . . . [t]he results of a clinical evaluation of [Mr. Six's] psychiatric state conducted on [February 6, 1973] were classified as normal, and item 74 of the report of examination, entitled Summary of Defects and Diagnoses, makes no reference to any psychiatric conditions or complaints.

AR 6-7.

34. Mr. Six contends that the BCNR in its August 25, 2003 decision erred by failing to consider his medical records and behavior subsequent to the attack when determining whether to correct his records because Mr. Six was under a strict silencing order, a circumstance that resulted in the failure of Mr. Six's records for the 1967-1973 time period to accurately reflect the symptoms of PTSD. AR 89, 95-96.

35. The BCNR informed Mr. Six that it would be willing to reconsider its decision if Mr. Six submitted "new and material evidence of any matter not previously considered by the [BCNR]," but that the burden was on Mr. Six to "demonstrate the existence of probable material error or injustice." AR 7-8.

36. On July 15, 2004, Mr. Six, through his attorney, filed a motion for reconsideration. AR 79-150.

37. In support of the motion for reconsideration, Mr. Six provided an affidavit and a statement from Dr. Yuval Estrov. AR 79-99; 100-110. In his psychiatric report, Dr. Estrov stated that in his opinion, Mr. Six was unfit for duty by reason of a of physical disability as of February 6, 1973, the date of Mr. Six's discharge from the military. AR 107. Dr. Estrov also opined that Mr. Six suffered from PTSD, and that Mr. Six experienced symptoms of PTSD during his military service. Id.

38. Mr. Six, in his motion for reconsideration, argued that the BCNR failed to address the chilling effect of the Navy's silencing order upon Mr. Six's failure to disclose the symptoms of the PTSD from which he was allegedly suffering during his military service. AR 95.

39. On July 23, 2004, the BCNR denied Mr. Six's request for reconsideration. AR 10-11. The BCNR found that the material submitted by Mr. Six in support of his motion was either not material or not new. Id. The BCNR noted that Dr. Estrov's statement was based "in large part, on [Dr. Estrov's] acceptance of [Mr. Six's] representations concerning the symptoms of [PTSD] [Mr. Six] allegedly began to experience in 1967." Id. Because the BCNR, in its August 21, 2003 denial of Mr. Six's application, had rejected Mr. Six's representations that he had suffered such symptoms, the Board found that Dr. Estrov's statement did not constitute new and material evidence. Id.

40. On December 2, 2004, Mr. Six filed a complaint in the Court of Federal Claims seeking the correction of his miliary records to reflect that he received a disability retirement from the military on the basis of PTSD, and the back pay, allowances, and benefits that would flow therefrom.

41. In its June 30, 2006 opinion, this Court denied defendant's motion for judgment

upon the administrative record, and remanded th e matter to the BCNR for consideration of the record in light of the alleged silencing order.

42. On March 16, 2007, the BCNR considered Mr. Six's application to correct his military records. AR 151-161. The BCNR considered Mr. Six's application, the materials submitted in support thereof, Mr. Six's Naval service and health records; evidence from cases pertaining to two former members of the crew of the USS Liberty , a number of medical articles, an article entitled "The Liberty Incident, Gag Orders Debunked,"and documents referenced therein, by retired Federal District Court Judge A. Jay Cristol; a statement by Bryce Lockwood, dated November 8, 1995; correspondence provided by Rear Admiral Merlin Staring, Judge Advocate General's Corps, US Navy, Retired, in his capacity as an official of the USS Liberty Alliance, and a 1979 article titled "The Assault on the Liberty: The True Story of the Israeli Attack on an American Intelligence Ship"by James M. Ennes, Jr. Id. The BCNR found that Mr. Six did not raise the issue of the alleged silencing order in his initial application for correction of his naval record. Id.

43. The BCNR found that the new evidence submitted by Mr. Six was insufficient to establish the existence of probable material error or injustice in Mr. Six's Naval record. AR 153. Specifically, the BCNR was not persuaded that Mr. Six was issued the silencing order described in his application, that he suffered from post traumatic stress disorder while serving on active duty in the Navy, or that he was unfit to reasonably perform the duties of his office, grade, rank or rating by reason of physical disability prior to his separation from the Navy. Id.

44. The BCNR specifically found that Dr. Estrov's findings and opinion did not demonstrate that Mr. Six suffered from post traumatic stress disorder at any time during the

1967-1973 period. AR 119-126; 153-154. With respect to Dr. Estrov's report, the BCNR noted the following: Dr. Estrov glossed over, failed to consider, or ignored many significant aspects of Mr. Six's personal history that could have caused or contributed to the development of those problems, such as the fact that Mr. Six was raised by a single mother in economically deprived circumstances; that Mr. Six saw his father only twice during his childhood, once when he gave Mr. Six "a nickel," and a second time when he saw his body in a casket; that Mr. Six did not receive adequate medical or dental care as a child; that Mr. Six had a correctable defect of his mandible which interfered with his ability to close his mouth and chew food, a condition that could have been disfiguring, and resulted in the need to extract at least ten of Mr. Six's teeth during the first few weeks of his enlistment in the Navy; that Mr. Six dropped out of high school in the tenth grade; that Mr. Six d had no significant employment until he entered the Navy in 1964; that Mr. Six began drinking alcohol at age 15; that Mr. Six was were rejected for enlistment in 1963 because of immaturity and a history of bed-wetting that continued beyond his 16th birthday; that Mr. Six admitted in August 1972 that he drank to intoxication on some evenings in port on sea tours prior to his marriage in 1968; that Mr. Six contracted gonorrhea on at least two occasions while overseas prior to June 8, 1967; that when Mr. Six married his first wife at age 22, he became financially responsible for her and her two children from a previous marriage; that at the time of Mr. Six's marriage, his wife was about five months pregnant with his son; and that prior to the birth of his son, Mr. Six requested the accelerated payment of his re-enlistment bonus so that he could "pay off" a new car, and pay for dental care his wife needed. Id.

45. The BCNR also noted that Dr. Estrov apparently did not consider information

contained in a July 10, 1972, communication that stated that Mr. Six had documented problems that included indebtedness; active participation in disreputable incidents; excessive drinking; martial physical abuse; harassment of a Marine sentry; and alleged adultery. AR 119-126; 153-154. In addition, Dr. Estrov failed to take into consideration that Mr. Six's performance of duty was slightly better after the attack on Liberty than before the attack, as measured by Mr. Six's Enlisted Performance Record, which demonstrated that prior to the attack, Mr. Six's evaluation mark averages in the trait areas of professional performance, military behavior, leadership and supervisory ability, military appearance, and adaptability were 3.26,. 3.40, 3.50, 3.36, 3.46, respectively, while after the attack, the averages were 3.43, 3.36, 3.36, 3.48, 3.48, even though Mr. Six held more responsible positions in higher pay grades. AR 64; 72; 154.

46. The BCNR also found that Dr. Estrov's discussion of Dr. Cain's diagnosis of Mr. Six's mental problems was misleading.[1] AR 108; 155. In 1980, Dr. Cain diagnosed Mr. Six with having immature personality disorder, a recognized mental disorder which is listed in both the current and the 1972 edition of the International Classification of Diseases ("ICD") published by the World Health Organization and in the Diagnostic and Statistical Manual of Mental Disorders, second edition ("DSM-II"), published by the American Psychiatric Association, which in effect in 1980. AR 129-140; 155; 677-678.

47. The BCNR also noted that Dr. Estrov did not comment on the fact that because Mr. Six lied to Dr. Cain about his use of alcohol, Dr. Cain was unable to make a diagnosis of alcohol abuse or dependence or to refer Mr. Six for treatment. AR 108; 115; 155; 677-678.

[1] The BCNR mistakenly refers to "Dr. Cole" in its March 26, 2007 decision. AR 151-161.

48. The BCNR found that the reports that an unidentified lieutenant commander and/or other officers visited multiple survivors of the Liberty attack at various locations around the world and informed them that they were never to speak of the attack to anyone without first obtaining his permission, or the permission of the former commanding officer of the Liberty, and that failure to follow that order would result in court-martial, were not credible. AR 156-157.

Respectfully submitted,

PETER D. KEISLER.
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
1100 L. Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
(202) 514-7300
(202) 307-0972 (Fax)

July 6, 2007

Attorneys for Defendant