IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Sr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1727C |
| v. | ) | (Judge Emily Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD

Plaintiff here responds to defendant's opposition to plaintiff's motion for judgment on the administrative record. Respectfully, we submit that the administrative record fully supports Six's entitlement to 10 USC 1210 disability retirement benefits.

The record definitively establishes that at the time of his discharge in February, 1973, and for an extended period prior thereto, Six was incapacitated for duty and substantially disabled from PTSD secondary to the trauma he suffered from the torpedo explosing into his battle station and his resultant concussion, compounded by his terror from being entrapped in the flooded compartment, and, immersed in the debris and the body parts of his 23 dead shipmates. The record further establishes that the psychiatric injuries secondary to his traumatic brain injuries were compounded by the rage caused by the government's false report of the Israeli assault, and, the frustration caused by the silencing order issued to preclude exposure of that false report. The record further establishes that the silencing order and the "avoidance of stimuli" characteristic of PTSD,

and the barriers to seeking care for psychiatric illnesses combined to obstruct and impeded Six's ability to seek timely care for his PTSD. The Administrative Record also establishes that notwithstanding the Silencing Order, and Six's illness induced inability, personally, to seek timely care and treatment, his evolving PTSD symptoms were so public, so violent, so persistent, and, so disruptive of the Command, there is simply no excuse for his Command's failure to mandate care.

Each of these facts is well established in the record, and, yet the board dismisses these as "not credible". The Silencing Order is established by the Liberty's June 30, 1967 Plan of the Day, as well as the message traffic from COMNAVEUR, as well as the testimony of Six, Lockwood, Kiepfer, Ennes, Benkert, White, Tourney and Jones. The Board and defendant's motion papers dismiss their statements as "not credible." The statements of decorated men who served the Navy and their country with honor and distinction are labeled as lies, despite the fact that their testimony is in fact verified by defendant's own evidence.

The Board and defendant's motion papers seek to limit the barrier to Six's seeking care to the silencing order. As Dr. Kiepfer and Dr. Estrov testify, the failure to seek such care and disclose such symptoms is an inherent characteristic of the disorder. Indeed, the Board was previously so advised in the Lockwood proceeding by the Navy Surgeon General's representatives. The board carefully avoided seeking their advice in Six's case. Six, lacking the sophisticated medical training and understanding of his PTSD of Dr, Kiepfer, Dr, Estrov and Dr, Stetson, looks to the silencing order to explain his actions. Undoubtedly, the order reinforced the "natural" barrier to seeking care inherent in the disorder.

Six's experience and his physical and psychiatric injuries from the assault are documented by statements from Six, Lockwood, Kiepfer, Ennes, Benkert, White, Tourney, and Jones. The medical basis and verification of his condition and its service incurrence is established by the professional opinions of Dr. Estrov and Dr. Kiepfer. The Board dismisses Estrov because he based his findings on symptoms self reported by Six, ignoring the fact that much of Six's self reported symptoms are verified by statements of his children; the history of his conduct at COMNAVSTA Philippines, and, his post service employment records from LAPD.

The testimony of both Dr. Kiepfer and Dr. Estrov regarding Six's PTSD is rejected by the Board on frivolous ground. The medical journals Dr. Kiepfer relied on in forming his opinion, and which he incorporated by specific reference in his testimony are wholly ignored. These articles explore the symptoms of PTSD, the evolution of the illness, the peculiar barriers to seeking care and disclosing symptoms inherent in such disorders, and especially present in the military services. They are ignored in favor of a newspaper article discussing problems of abuse that arise when the diagnosis is applied to events not endorsed by the author. A review of the article demonstrates that even under the reservations addressed by the author, Six's experience clearly fall within the diagnostic criteria endorsed by the author.

The Board's opinion conveys a strange and singularly non judicial temperament. Seemingly, if the Board wishes to avoid the facts established by the evidence, it simply declares the evidence establishing the fact is "not credible." We acknowledge the deference normally paid to credibility determinations by the Board, and other fact finding agencies. There is no justification for deference to the Board's credibility determinations

in this proceeding. This is not a case where the Board has itself observed the testimonial demeanor of the witness. This is a purely "paper record" consisting of the statements and documents of record. One does not need to "weigh" the evidence; it is just a matter of an unbiased review of the evidence. Six's evidence is based on his own statements and the eyewitness testimonies of his family and his shipmates. His shipmates testify to their personal involvement in the events testified to. The facts they establish is verified by the testimony of fellow shipmates, and the other documents of record, establishing the fact and devastating consequences of the Israeli assault, Six's physical injuries; the circumstances and facts of his rescue ; these are not disputed. The fact that exposure to such trauma is likely to produce PTSD is well documented in the medical journals relied on by Dr. Kiepfer in his testimony, and, indeed, verified by the article cited by defendant. Finally, the fact Six was suffering from PTSD at the time of his discharge is thoroughly documented by the NAVCOMSTA Philippine documents. The incompetence of his medical evaluation incident to his discharge is established by the orders from BUPERS directing that Six be re-evaluated, psychiatrically, and the results reported to BUPERS prior to completing his discharge processing, and the request from COMNAVSTASANFRANCISCO to rescind the BUPERS directive because Six had already been discharged. These record facts are not rebutted; they are before the Court for its review.

It is disappointing that the Board has failed to perform its statutory duty. The Board's action is clearly arbitrary and capricious and without substantial evidence support in this record. In contrast, plaintiff has demonstrated by clear, convincing, substantial, relevant evidence that he was disabled from PTSD at the time of his

discharge in 1973 and should have been provided necessary care and treatment, and transferred to the retired list. The Court must deny defendant's motion for judgment and grant plaintiff's cross motion for judgment, directing Six be provided the disability retirement benefits he is entitled to under 10 U.S.C. 1201.

The evidence of record here clearly establishes Mr. Six was disabled from PTSD at the time of his discharge and the court should now mandate correction of his records to establish his entitlement to 10 USC 1201 disability retirement benefits.

Respectfully submitted

/S/ William J. Kenney
William J. Kenney, Esq.
DC Bar No. 99267

Counsel for Plaintiff Harold E. Six, Sr.
%HART/HTC
600 Pennsylvania Avenue, SE, Suite 105
Washington, DC 20003
Tel: 202-547-5129
Fax: 202-547-8311