IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Sr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1727C |
| v. | ) | (Judge Emily Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff's Motion for Rehearing and Reconsideration

William J. Kenney, Esq.
DC Bar No. 99267

Counsel for Plaintiff Harold E. Six, Sr.
%HART/HTC
600 Pennsylvania Avenue, SE, Suite 105
Washington, DC 20003
Tel: 202-547-5129
Fax: 202-547-8311

9915 Empire Woods Court
Charlotte, NC 28277
Tel/Fax: 704-341-4781

January 21, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAROLD E. SIX, Sr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1727C |
| v. | ) | (Judge Emily Hewitt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff's Motion for Rehearing and Reconsideration

A Introduction

1. Plaintiff, through counsel, respectfully moves for rehearing and reconsideration of the Court's Opinion of December 18, 2007, and, its order entered December 19, 2007. The Court significantly misconstrues the nature of the traumatic attack Six was exposed to incident to the attack on the U.S.S. Liberty by Israeli Air and Sea forces. The Court does not address the fact that the Board acted in clear and substantial violation of 10 U.S.C. 1556 in its reliance on Ex Parte materials in reaching its action on remand denying plaintiff his rightful entitlements. The Board reviewed and rejected plaintiff's evidence establishing the facts of his traumatic experience aboard the Liberty. The Board relied on extra record material and ex parte communications in its deliberations without notice to plaintiff and without according plaintiff an opportunity to comment on and rebut the material utilized by the Board.

B 10 U.S.C. 1556 Prohibits Board's Use of Ex Parte Material

1 The statutes governing conduct of Correction Board proceedings was amended in 1998 by adding Section 1556 expressly prohibiting Correction Boards from using Ex Parte materials in acting on an applicant's case. The Conference Report explains the provision: "The House bill [H.R.3616] contained a provision that would amend chapter 79 of title 10, United States Code, to require each Board for the Correction of Military Records to provide applicants with copies of communications that directly apply to or have a material effect on the applicants cases. " The report states the Senate amendment contained no similar provision and that the Senate "recedes." (HR Report 105-736, p.663.)

2. Here, the Administrative Record as filed by defendant establishes that plaintiff's "Navy Record" contained what the Board refers to as an "electronic message" dated May, 1972 [AR 630,550,-551] wherein plaintiff's then Command requested he be transferred from the Command, discussing plaintiff's misconduct at the command, and the inappropriate behavior of his then wife, which allegedly undermined morale at the command.. The A.R. also contains correspondence from BUPERS to NAVSTA San Francisco concerning the need for additional psychiatric evaluation in processing plaintiff's then pending discharge. Si[A.R. 547,536[1], AND, 538]. Six states he had never seen those documents prior to my forwarding him a copy of the Administrative Record as filed by defendants herein incident to this appeal. [2] Further, Counsel informs the Court that none of those documents were contained in the copy of plaintiff's Navy Records provided Counsel by the Navy, and, none of those documents appear in the VA records provided Counsel by the VA, which, of course, included copies of plaintiff's records forwarded to the VA by the Navy. Finally, Counsel invites the Court's attention to the fact that plaintiff, through counsel, requested the Board to direct the

[1] Note AR 35326 bears a date of January, 1972, it references a message of 122205Z ,January 1973

[2] Six's affidavit in support of that statement will be filed when received by Counsel

Navy to provide him copies of plaintiff's complete records, including any classified records that might exist relating to the facts and circumstances of the Navy's termination of plaintiff's security clearances and his transfer from the Philippines and discharge from the Navy.[3] The Board rejected that request.

3. The absence of those documents from the copy of plaintiff's records provided counsel is of critical relevance and import here. First, the directive from BUPERS to the discharge processing command underscores the fact that BUPERS questioned the completeness and competence of the plaintiff's August, 1972 psychiatric evaluation. This fact was not addressed by either the Board or the Court and goes to the essence of the "Immature Personality" diagnosis established in those evaluations, and, the Board's attack on the "credibility" of Dr. Estrov's psychiatric opinion supporting plaintiff's petition and challenging the August 1972 diagnosis of "Immature Personality." The Board dismisses Dr. Estrov's opinion because the Board concluded he had failed to address the "Electronic message"relating to Six's transfer from the Philippines. We acknowledge that letter was not included in the copy of Six's Navy records provided Dr. Estrov for his consideration. It could not have been. It was not included in the copy of Six's Navy records defendants provided Counsel.

4. Dr. Estrov did consider and comment on the statements of Mr. Six's daughters regarding his abuse of his wife and children, and, without knowledge that BUPERS had questioned the competence of the August 1972 psychiatric evaluation, did challenge the validity of the diagnosis there established of "Immature Personality." And, in contrast to the Board's action, Dr. Estrov's opinion was based on his personal conferences with Mr. Six, in addition to his

[3] Counsel will move to file his affidavit attesting to this reality.

review of the available records. The Court justifies the Board's ignoring the affidavits of Six's children in footnote 9, concluding the Board was not required to ''credit childhood memories as probative evidence … especially when the distant memories of various individuals are now expressed in nearly identical language." What the Court ignores is the fact that the "childhood memories" are verified by this record. The identical nature of the language in the statements is the result of counsel's efforts to summarize the telephone interviews counsel had with each child, establish the pertinent facts discussed by each, and, to minimize the anger each child expressed toward Mr. Six and the sad realities of their youth. Respectfully, a child well remembers the traumatizing experience of Police coming to their home, of constant fights between their parents, of the fact their parents are constantly drunk, and, the embarrassment such experiences cause. A day or two in Divorce court, or juvenile court will well establish that fact. Here, a scrutiny of the record establishes the truth of the children's memories. The record establishes the drunken brawls in the E-club in the Philippines, and, the material from LAPD regarding Six's termination from his employment as a jail guard verifies the children's memories of their sad post service life.[4]

5. the most egregious ex parte materials utilized by the Board involve the use and reliance on the Cristal paper relating to the Israeli attack on the Liberty and the other non record material relied on in rejecting plaintiff's claim he presently suffers from PTSD and was disabled by that disorder at the time of his discharge in February, 1973. The record simply provides no basis to dispute Six's statement that he understood the order to prevent him from discussing the fact that the Israeli attack on the Liberty was a deliberate attempt to sink the

[4] Counsel prepared those affidavits solely on the basis of his interviews with each child. At thahe time of interviewing the children, the existence of the LLAPD file information was not known to Counsel, nor was the existence of the material from the Philippines.

ship and kill the crew by Israel with full knowledge that the ship was an American navy ship operating in international waters. The facts are that those members of the crew retained aboard the Liberty were cautioned by the plan of the day that they were prohibited from discussing the attack except as that attack was reported in the Report of the Court of Naval Inquiry. The fact is, as established in Capt. Boston's declaration, that report was deliberately falsified to support the claims of Israel that the attack was a case of mistaken identity. Those crew members who had been transferred from the Liberty following the attack, including Six, were visited by a Naval officer who repeated the prohibition against discussing the attack.

6 The Board dismisses Dr. Kiepfer's testimony on the grounds he had not mentioned the silencing order in statements he made in support of Six's application for VA benefits. In doing so, the Board ignores the fact that under VA regulations the Order had no bearing on the issues then involved in Six's VA claims. Dr. Kiepfer there declared Six had been treated under his supervision for injuries sustained in the attack on the Liberty. No issue was raised in the questions presented to Dr. Kiepfer concerning the absence of notations in Six's medical records. He here explains that in the circumstances of the Liberty disaster, there simply was not time for entries in the medical record. It is to be noted that Six and his records had been transferred from the Liberty before such record entries could be provided and there is no record to suggest that the Navy ever attempted to obtain those entries.

7 In reviewing the Board's action on the PTSD issue, it is of import that the Court focus on the fact that the Board does not limit its rejection of the diagnosis of PTSD to the time of plaintiff's discharge; it rejected the claim of PTSD per se.[5] We acknowledge that the Board

[5] Counsel informs the Court that on December 26, 2007, the VA determined that Six was in fact 70% disabled from PTSD with an effective benefits date of 199 6. We are confident that the Court recognizes that the VA's effective date of such determinations are normally the date the veteran first applied for benefits. We are

based its conclusion on frivolous claims plaintiff's witnesses lacked credibility. Respectfully, the Board's justifications for its repeated rejection of evidence as lacking credibility are frivolous, rejecting evidence elsewhere established in the record. In contrast, the VA based its findings on personal evaluation of Mr. Six by numerous members of its medical staff over an extended period of time, and the identical evidence presented in this proceeding. In its December26, 2007 action, the VA diagnosed the plaintiff was in fact suffering from service incurred PTSD, with a 70% rating.. The difference in these findings cannot be justified by the difference in jurisdiction of the departments. Clearly, the VA carefully and thoroughly scrutinized the evidence and diligently evaluated the plaintiff in reaching its findings in the proceeding. In contrast, the Board undertook to defend its initial rejection of plaintiff's application and sought to justify its rejection rather that submit the evidence to impartial scrutiny. The difference in the findings of the departments sadly reflects the ignorant prejudice of the Board on issues involving PTSD. That ignorance and prejudice is all the more shameful for the Navy. The circumstances Six experienced incident to the attack are significantly more than simply that he is "a survivor of a torpedo attack." The fact of his extreme exposure to the trauma of the explosion, and the circumstances of his rescue from the flooding compartment are testified to by his rescuer, Lockwood[6], and, by the two Liberty crew members assisting Lockwood in getting Six out of the flooded compartment. These are exposures that are of a nature to induce PTSD. It borders on the obscene to attack the credibility of the survivors, without according those brave men the opportunity of testifying

appealing the effective date, asserting that on the facts in Six's case. The effective date should reach back to the date of his discharge from the Navy. We will file a copy of the VA findings as an appendix.

[6] Lockwood was awarded the Silver Star for his heroic efforts. His Citation well documents the trauma of the event.

before the Board so as to give the Board members a genuine opportunity to evaluate their credibility.

8, The Board in its effort to support the diagnosis of "Immature Personality" speculates that Six's childhood experience of being raised by a single mom in relative poverty, without resources to provide adequate medical or dental care is a causative factor for its finding of "Immature Personality." If that is a justified speculation, it necessarily follows that a substantial portion of the enlisted corps, and many of the officer corps are likewise predestined to diagnosis of "Premature Personality". The fact is that, after evaluating Six' physical, dental and medical health, the Navy declared him fit for enlistment, and subsequently for repeated reenlistments. Six had completed more than 8 years service prior to his discharge, thus, allegedly pre-existing illnesses were waived. Equally significant is the fact that the Navy stood silently by while Six deteriorated, publically abusing himself, his then wife and, his children, all without any intervention by his superiors. When they finally elected to act, they chose to suggest the ex –wife was responsible. The Navy's duty to act is not affected by the fact the Navy might elect to view some of the members childhood experiences as causative factors for inappropriate conduct. Surely a competent evaluator would consider the intervening trauma of watching 23 of your shipmates incinerated, men on both sides of you killed, your below water line work compartment flooded by a torpedo attack, and, finding your escape hatch closed locked as more telling and more immediate explanations for said contract. Instead, the Navy blamed his wife, and threw him out of the service. This is simply command cowardice, and incompetence, not command leadership. Then, in processing Six for discharge. the Navy ignored the psychiatrist's caution he needed access to Six's records to establish a professionally responsible diagnosis, and, ignored the

BUPERS message effectively declaring the August 1972 psychiatric exam inadequate, and, instead, rushed tto cim0plete Six' discharge.

C Record Establishes Six Disabled from PTSD When Discharged

1. The Diagnostic Evaluation by Dr. Estrov, based on his personal conferences with Six, plus his review of Six's then available Medical and Naval Records, and the doctors review of pertinent professional journals, coupled with the Dr, Kiepfer's statement to the VA statements, coupled with the statements and declarations of Six, his children, and his shipmates present factually undisputed evidence that Six was suffering from PTSD at the time of his discharge. If his childhood experiences made him more likely to experience psychiatric problems in response to triggering trauma, the Navy must accept the reality of his exposure and his illness. It is fanciful for the Board to speculate as to the origins of Six's behavior. It had available the resources of BUMED to assist the Board in finding the professionally correct answers and diagnosis. The Board deliberately avoided seeking BUMED's advice. Instead in embarked on an unworthy nit picking to find any basis it could to reject Six's application. It seems military officers facing normal office related, non combat stress qualify for psychiatric diagnosis. This man who was in the compartment when a torpedo exploded directly at his work station, killing 23 of his work mates, including two ratings, one on each side of him, who was knocked unconscious, only to awake in a rapidly flooding compartment, and, incident to his being rescued discovered the hatch to safety was sealed, and, who was dropped back into the flooded compartment as his rescuer sought to unseal the hatch. Still, it seems that horrific stress apparently does not so qualify. That is an error that demands correction of his records. It is the province of the Board, and, now, this Court to prevent and correct that injustice.

Respectfully submitted

/S/ William J. Kenney

William J. Kenney, Esq.
DC Bar No. 99267

Counsel for Plaintiff Harold E. Six, Sr.
%HART/HTC
600 Pennsylvania Avenue, SE, Suite 105
Washington, DC 20003
Tel: 202-547-5129
Fax: 202-547-8311

Certificate of Service

I, William J. Kenney, swear and affirm that the above Plaintiff's Motion for Rehearing and Reconsideration was filed on this 22 day of January, 2008, and copies thereof served on defendant's attorney of record via the automatic service program of the Court electronic filing system.

/s/ William J. Kenney

D.C. Bar # 99267