# In the United States Court of Federal Claims

No. 04-1727 C

(E-Filed: March 12, 2008)

| | | |
|---|---|---|
| HAROLD E. SIX, SR., Plaintiff, v. THE UNITED STATES, Defendant. | ) | Motion for Reconsideration; RCFC 59; Request for Correction of Military Records; Post-Traumatic Stress Disorder |

William J. Kenney, Washington, DC, for plaintiff.

Leslie Cayer Ohta, with whom were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge

Before the court are Plaintiff's Motion For Rehearing and Reconsideration (plaintiff's Motion or Pl.'s Mot.), filed January 3, 2008, Plaintiff's Motion For Rehearing and Reconsideration [and Memorandum of Law in Support Thereof] (plaintiff's Memorandum or Pl.'s Mem.), filed January 22, 2008, and Defendant's Opposition to Plaintiff's Motion for Reconsideration (defendant's Response or Def.'s Resp.), filed February 4, 2008. Plaintiff moves the court for reconsideration, Pl.'s Mot. 1, of the court's Opinion of December 18, 2007 which granted defendant's motion for judgment on the administrative record and denied plaintiff's motion for judgment on the administrative record, Six v. United States (Six II), 79 Fed. Cl. 581 (2007). Six II was

decided after remand to the Board for Correction of Naval Records (BCNR or Board) following this court's review of a prior decision of the BCNR in Six v. United States (Six I), 71 Fed. Cl. 671 (2006). Six II, 79 Fed. Cl. at 581. For the following reasons, plaintiff's Motion is DENIED.

I. Background

The facts of this case are set forth in detail in Six II, 79 Fed. Cl. at 581-88, but are briefly discussed below. "Plaintiff Harold E. Six, Sr. is a survivor of a torpedo attack on the U.S.S. Liberty (the Liberty), an event that occurred off the coast of Gaza during the Six-Day War between Israel and Arab forces in June 1967." Id. at 581.

> "[Plaintiff] seeks correction of his naval records to reflect disability retirement on the basis of post-traumatic stress disorder (PTSD) and the back pay, allowances, and benefits that would flow therefrom. Plaintiff contends that, at the time of his discharge on February 6, 1973, he was suffering from PTSD and entitled to a 70% disability rating on the basis of symptoms caused by or aggravated by PTSD, and that the Navy should have transferred plaintiff to the Temporary Disability Retired List on February 6, 1973 in lieu of discharge and thereafter conferred on him permanent disability retirement status."

Id. at 581-82 (quoting Six I, 71 Fed. Cl. at 671-72). "'The Department of Veterans Affairs (VA) awarded plaintiff disability benefits for [PTSD] with a ten percent disability rating' on July 21, 1999." Id. at 582 (quoting Six I, 71 Fed. Cl. at 675).

On December 20, 2002, "plaintiff filed an application with the BCNR for the correction of his naval records due to PTSD." Id. The BCNR denied plaintiff's application, finding no indication that plaintiff suffered from PTSD from 1967 to 1973. Id. at 583. In Six II, the court noted:

> The Board did not find probative the fact that the VA had, in its July 21, 1999 decision, granted plaintiff a ten percent rating for [PTSD] because "the military departments assign disability ratings only in those cases where a service member has been found unfit for duty by reason of physical disability, whereas the VA rates all conditions it classifies as 'service connected,' without regard to the issue of fitness for military duty."

Id. (quoting Administrative Record after Remand (AR) 7). Plaintiff filed a motion for reconsideration with the BCNR on July 15, 2004, alleging for the first time that the Navy had issued a silencing order, "'which would explain an absence of symptoms of PTSD on the contemporaneous medical record.'" Id. (quoting Six I, 71 Fed. Cl. at 676). The

Executive Director of the BCNR denied plaintiff's motion for reconsideration without addressing the allegations of the silencing order or its alleged effects. Id. at 584.

Plaintiff filed a complaint in the United States Court of Federal Claims on December 2, 2004, arguing "'that the BCNR and Executive Director abused their discretion in failing to consider plaintiff's claim that he was prevented from disclosing his PTSD by defendant's silencing order and for "fail[ing] to articulate the reasons for ignoring this material evidence."'" Id. (quoting Six I, 71 Fed. Cl. at 685) (alteration in original). This court issued its opinion on June 30, 2006. Six I, 71 Fed. Cl. 671. The court remanded plaintiff's claim to the BCNR because the BCNR had not considered all of the evidence when making its decision, specifically plaintiff's allegations of the alleged silencing order. Six II, 79 Fed. Cl. at 585. Following remand, the BCNR again denied plaintiff's application. Id. at 586. The Board: "was not persuaded [he was] issued the silencing order described in [his] application, that [he] suffered from [PTSD] while serving on active duty in the Navy, or that [he was] unfit to reasonably perform the duties of [his] office, grade, rank or rating by reason of physical disability prior to [his] separation from the Navy." Id. at 586-87 (citation omitted) (alterations in original).

Plaintiff again sought review of the BCNR's denial of his application in the Court of Federal Claims. Id. at 588. Defendant moved "for judgment upon the AR that 'the decision of the [BCNR] that plaintiff . . . failed to demonstrate that he was entitled to the correction of his military records to reflect a disability discharge was [not] arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" Id. at 582 (quoting Defendant's Second Motion for Judgment Upon the Administrative Record 1) (alterations in original). Plaintiff moved for judgment on the AR "that 'the [BCNR's] decision denying him correction of his navy record to establish his 10 U.S.C. [§] 1201 disability retirement rights [was] arbitrary, capricious and contrary to the record evidence.'" Id. (quoting Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record 7) (alterations in original). The court noted that it "'will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'" Id. at 588 (quoting Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)) (citations omitted). The core of the court's opinion "concern[ed] the Board's consideration of whether a silencing order exists or not." Id. at 589. The court held that "[b]ecause the BCNR considered the substantive aspects of plaintiff's application, and because the BCNR's explanations are supported by substantial evidence contained in the AR, the decision of the BCNR was not 'arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'" Id. (citation omitted).

The court "found that the reports relating to the alleged silencing order were not credible." Id. (citation omitted).

> Given that plaintiff failed to raise the issue of the silencing order in his initial application, given the evidence before the Board of plaintiff's prior untruthful statements, given that two other applicants also failed to raise the silencing order in their initial applications and that one of those two applicants admitted to discussing the incident with his fellow Marines and that the second asserted a claim against the State of Israel, - both actions that appear to violate the alleged silencing order - given that plaintiff's record contains multiple references to the Liberty attack, and given the Board's adverse credibility determinations with respect to the various statements, declarations and affidavits submitted by others on plaintiff's behalf, the BCNR's finding that plaintiff's allegations concerning the alleged silencing order are not credible is supported by substantial evidence.

Id. at 594. Furthermore, the court stated that "[g]iven the Board's finding that a silencing order did not exist and given the numerous disclosures made by plaintiff and other survivors of the attack on the Liberty, the BCNR's determination that the alleged silencing order was not the cause of plaintiff's failure to report his alleged symptoms of PTSD is supported by substantial evidence." Id. at 595. The court then addressed the Board's consideration of "supplemental evidence contained in the [AR] to determine whether plaintiff suffered from PTSD at the time of his discharge." Id. (citation omitted).

> The court agree[d] with defendant that, given the Board's credibility determinations of those claiming to diagnose plaintiff with PTSD, plaintiff's Enlistment Performance Record, and plaintiff's failure to report any PTSD symptoms, "[t]he BCNR's finding that Mr. Six failed to demonstrate that he suffered from PTSD while serving in the Navy, or that he was unfit to serve, at the time of his discharge is supported by substantial evidence."

Id. at 597 (quoting Defendant's Second Motion for Judgment Upon the Administrative Record 16).

## II. Standard of Review

Pursuant to Rule 59 of the Rules of the United States Court of Federal Claims (RCFC), "rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The court is afforded a certain amount of discretion in determining whether to grant reconsideration. Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); Matthews v. United States, 73 Fed. Cl. 524, 525 (2006). "A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional

chance to sway' the court." Matthews, 73 Fed. Cl. at 525 (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)). A party may not prevail on a motion for reconsideration "by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." Id. at 526 (citing Lamle v. Mattel, Inc., 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005); Abbott Labs. v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1355 (Fed. Cir. 2003); Corrigan v. United States, 70 Fed. Cl. 665, 668 (2006); Seldovia Native Ass'n. v. United States, 36 Fed. Cl. 593, 594 (1996)). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000) (table)). "To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact." Pac. Gas & Elec. Co. v. United States, 58 Fed. Cl. 1, 2 (2003). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews, 73 Fed. Cl. at 526 (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)).

## III. Discussion

Plaintiff argues "that the Court extended undue deference to the Board and undue deference to the presumption of the regularity of actions of government officers in the performance of their assigned duties." Pl.'s Mot. 1. According to plaintiff, the court failed to "address the fact that the Board acted in clear and substantial violation of 10 U.S.C. 1556 in its reliance on Ex Parte materials in reaching its action on remand denying plaintiff his rightful entitlements." Pl.'s Mem. 2. Plaintiff further argues that the "Court's Opinion extends, indeed perpetuates the actions of the U.S. Navy and the U.S. Government to conceal the fact that the U.S. Navy stood silent while Israeli forces willfully and skillfully slaughtered crew members of [the Liberty], and civilian employees of the National Security Agency assigned to [the Liberty]." Pl.'s Mot. 1. According to plaintiff, "[t]he effect of the Court's opinion is to impose new and additional injustices upon the unfortunate crew members assigned to the Liberty on that fateful day." Pl.'s Mot. 2. Defendant argues that the "Court should deny Mr. Six's motion for rehearing and reconsideration because it is fundamentally flawed, both legally and factually" and because "Mr. Six has failed to even allege any of the factual prerequisites that must exist before this Court may consider the merits of a motion for reconsideration." Def.'s Resp. 1. Plaintiff has not alleged "the occurrence of an intervening change in the controlling law," the allegations in plaintiff's Motion do not constitute "previously unavailable evidence," and plaintiff has failed to show that it is necessary to allow the motion "to prevent manifest injustice." Matthews, 73 Fed. Cl. at 526; see Pl.'s Mot. passim; Pl.'s Mem. passim.

Plaintiff argues that "[t]he Board relied on extra record material and ex parte communications in its deliberations without notice to plaintiff and without according plaintiff an opportunity to comment on and rebut the material utilized by the Board." Pl.'s Mem. 2. Specifically, plaintiff points to "an 'electronic message' dated May, 1972[,] wherein plaintiff's then Command requested he be transferred from the Command, discussing plaintiff's misconduct at the command, and the inappropriate behavior of his then wife, which allegedly undermined morale at the command" and "correspondence from BUPERS [Bureau of Navy Personnel] to NAVSTA [Naval Station] San Francisco concerning the need for additional psychiatric evaluation in processing plaintiff's then pending discharge." Pl.'s Mem. 3 (citations omitted). Plaintiff also pointed to "the use and reliance on the Cristal paper relating to the Israeli attack on the Liberty and the other non record material" as "the most egregious ex parte materials utilized by the Board." Pl.'s Mem. 5. Plaintiff claims "he had never seen those documents prior to [plaintiff's counsel] forwarding him a copy of the [AR] as filed by defendants herein incident to this appeal." Pl.'s Mem. 3. As defendant asserts, however, "there is no credible evidentiary support for the bald statement that Mr. Six told his attorney that he had not seen those documents prior to reviewing the administrative record compiled in this case" and "the assertions regarding this issue set forth in Mr. Six's motion were known to Mr. Six and his attorney prior to this matter being fully briefed, argued, and decided." Def.'s Resp. 2. Plaintiff had ample opportunity to raise these arguments in his previous motions for summary judgment. Furthermore, these documents are relevant to plaintiff's psychiatric status at the time of his discharge, see Pl.'s Mem. 4, and not to whether plaintiff was issued a silencing order, which was the core of the court's opinion, Six II, 79 Fed. Cl. at 589.

Plaintiff argues that the Board dismissed Dr. Estrov's opinion, that plaintiff suffered from PTSD, Six II, 79 Fed. Cl. at 583 (citing AR 109), because he had failed to address the "electronic message." Pl.'s Mem. 4. The Board noted that Dr. Estrov failed to discuss the "electronic message," however, this was not the Board's only reason for dismissing Dr. Estrov's report. See Six II, 79 Fed. Cl. at 587. "The Board . . . determined that 'Dr. Estrov's findings and opinion do not demonstrate that [plaintiff] suffered from [PTSD] at any time during the 1967-1973 period.'" Id. (quoting AR 153) (alterations in original). The Board rejected the possibility that plaintiff's problems are related to PTSD and "found that 'Dr. Estrov glossed over, failed to consider, and/or ignored many significant aspects of [plaintiff's] personal history that might have caused or contributed to the development of those problems.'" Id. (quoting AR 153-54) (alteration in original). The Board also found that Dr. Estrov's discussion of another psychiatrist's report was misleading and "that Dr. Estrov failed to note that plaintiff's performance of duty, as measured by his Enlistment Performance Record, was slightly better after the attack on the Liberty than before." Id. at 587-88 (citing AR 154).

Plaintiff takes issue with the court's acceptance of the Board's failure to credit the affidavits of plaintiff's children as probative evidence. Pl.'s Mem. 5. The court stated that it did "not believe that the BCNR was required to credit childhood memories as probative evidence of plaintiff's medical condition several decades in the past, especially when the distant memories of various individuals are now expressed in nearly identical language." Six II, 79 Fed. Cl. at 597 n.9 (citation omitted). Plaintiff asserts that "a child well remembers the traumatizing experiences of Police coming to their home, of constant fights between their parents, of the fact their parents are constantly drunk, and, the embarrassment such experiences cause" and argues that "[t]he identical nature of the language in the statements is the result of counsel's efforts to summarize the telephone interviews counsel had with each child, establish the pertinent facts discussed by each, and, to minimize the anger each child expressed toward Mr. Six and the sad realities of their youth." Pl.'s Mem. 5. This argument does not articulate "an intervening change in the controlling law," it does not address "the availability of previously unavailable evidence," and it does not demonstrate "the necessity of allowing the motion to prevent manifest injustice." Matthews, 73 Fed. Cl. at 526. The Board made a credibility determination with respect to the affidavits of plaintiff's children and the court accepted the Board's determination. Six II, 79 Fed. Cl. at 597 n.9.

Plaintiff also takes issue with the Board's consideration of plaintiff's childhood experiences, the effect his wife had on his service, Pl.'s Mem. 8, and the Board's credibility determination concerning Dr. Kiepfer's testimony, id. at 6. Dr. Kiepfer stated that "'PTSD could contribute to plaintiff's physical pain.'" Six II, 79 Fed. Cl. at 582 (quoting Six I, 71 Fed. Cl. at 675). These considerations, however, are relevant to plaintiff's psychiatric status at the time of his discharge to whether plaintiff was suffering from PTSD; they are not relevant to whether plaintiff was issued a silencing order, which was the core of the court's opinion, Six II, 79 Fed. Cl. at 589. Plaintiff states that "the Board's justifications for its repeated rejection of evidence as lacking credibility are frivolous, rejecting evidence elsewhere established in the record." Pl.'s Mem. 7. Plaintiff points out that "the VA based its findings on personal evaluation[s] of Mr. Six by numerous members of its medical staff over an extended period of time, and the identical evidence presented in this proceeding." Id. Here, plaintiff provides his only piece of new information, stating that on December 26, 2007, "the VA diagnosed the plaintiff was in fact suffering from service incurred PTSD, with a 70% rating." Id. Plaintiff asserts that "[c]learly, the VA carefully and thoroughly scrutinized the evidence and diligently evaluated the plaintiff in reaching its findings in the proceeding," id., but plaintiff offers no evidence to support this assertion, see id. passim; Pl.'s Mot. passim. As defendant correctly points out, Def.'s Resp. 2 n.1, "[t]he Board did not find probative the fact that the VA had, in its July 21, 1999 decision, granted plaintiff a ten percent rating for [PTSD] because 'the military departments assign disability ratings only in those cases where a service member has been found unfit for duty by reason of physical disability, whereas the VA rates all conditions it classifies as "service connected," without regard to the issue

of fitness for military duty.'" Six II, 79 Fed. Cl. 583. Therefore, the VA's recent diagnosis that plaintiff was suffering from PTSD with a 70% rating would not have affected the Board's or the court's ultimate determination.

In his motion for reconsideration plaintiff summarizes his experience aboard the Liberty at the time of the attack and asserts that "[t]hese are exposures that are of a nature to induce PTSD" and that "[i]t borders on the obscene to attack the credibility of the survivors, without according those brave men the opportunity of testifying before the Board so as to give the Board members a genuine opportunity to evaluate credibility." Pl.'s Mem. 7-8. According to plaintiff, "[t]he Diagnostic Evaluation by Dr. Estrov, based on his personal conferences with Six, plus his review of Six's then available Medical and Naval Records, and the doctors review of pertinent professional journals, coupled with . . . Dr[.] Kiepfer's statement to the VA . . . , coupled with the statements and declarations of Six, his children, and his shipmates present factually undisputed evidence that Six was suffering from PTSD at the time of his discharge." Pl.'s Mem. 9. Plaintiff is simply restating previous arguments made to the court in his motion for summary judgment. See Six II, 79 Fed. Cl. at 589-97. Plaintiff does not articulate "an intervening change in the controlling law," does not address "the availability of previously unavailable evidence," and does not demonstrate "the necessity of allowing the motion to prevent manifest injustice" as required for a motion for reconsideration. Matthews, 73 Fed. Cl. at 526. The court does not find in plaintiff's arguments a basis for disturbing its conclusion in Six II that "in the absence of a silencing order explaining the lack of evidence of PTSD in the record, the Board's finding that plaintiff failed to demonstrate that he suffered from PTSD at the time of his discharge is . . . supported by substantial evidence." Six II, 79 Fed. Cl. at 594.

## IV. Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge